MICHAEL N. FEUER, City Attorney (SBN 111529x)
SCOTT MARCUS, Senior Assistant City Attorney (SBN 184980)
GABRIEL S. DERMER, Supervising City Attorney (SBN 229424)
BENJAMIN CHAPMAN, Deputy City Attorney (SBN 234436)
benjamin.chapman@lacity.org
200 North Main Street, 6th Floor, City Hall East
Los Angeles, California 90012
Telephone Number:  213.978.7556
Facsimile Number: 213.978.8214

Attorneys for Defendants,
CITY OF LOS ANGELES,
LOS ANGELES POLICE DEPARTMENT, and
LOS ANGELES BOARD OF POLICE COMMISSIONERS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GARRY MATTHEWS and DOMINIC ROSS HUNN, individually and as class representatives,<br><br>　　　　　　　　Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, AND LOS ANGELES BOARD OF POLICE COMMISSIONERS,<br><br>　　　　　　　　Defendants. | Case No.: 22-cv-02944-FLA-PD<br><br>**THE CITY DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:　　　July 29, 2022<br>Time:　　　1:30 p.m.<br>Ctrm:　　　6B-First Street Courthouse<br>Judge:　　Hon. Fernando L. Aenlle-Rocha<br><br>Action Filed: 05/03/2022 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 29, 2022, at 1:30 p.m., or as soon thereafter as this motion may be heard in Courtroom 6B, 6th Floor of the above-titled Court, located at 350 W. 1st Street, Los Angeles, California 90012, defendants City of Los Angeles, the Los Angeles Police Department, and the Los Angeles Board of Police Commissioners (collectively, the "City") will and hereby does move this Court for an order dismissing Plaintiffs' Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the accompanying declaration of Benjamin Chapman and the exhibits attached thereto, all records and papers on file in this action, and any evidence or oral argument offered at any hearing on this motion. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on June 9, 2022. (Declaration of Benjamin Chapman, ¶ 3.)

Dated:  June 16, 2022

OFFICE OF THE CITY ATTORNEY OF LOS ANGELES

By:

*/s/ Benjamin Chapman*

Benjamin Chapman

Attorneys for Defendants
CITY OF LOS ANGELES,
LOS ANGELES POLICE DEPARTMENT,
and LOS ANGELES BOARD OF POLICE
COMMISSIONERS

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................ 2

    A.   California State Gun Laws. ................................................................. 2

    B.   Plaintiffs' Lawsuit. ............................................................................. 2

III.  LEGAL STANDARD ...................................................................................... 4

    A.   Rule 12(b)(6) Motion to Dismiss. ..................................................... 4

IV.   AS A THRESHOLD MATTER, PLAINTIFF MATTHEWS' CLAIMS ARE TIME-BARRED.. 5

V.    PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW ..................... 5

    A.   Plaintiffs' Second Amendment Claim (Claim One) is Subject to Dismissal. ........................................................................................... 5

        1.   Both Plaintiffs lack standing to sue the City over its CCW licensing scheme…………………………………………………………...6

        2.   Even if Plaintiffs could assert a Second Amendment challenge to the City's CCW licensing policy, it fails as a matter of law………………..9

    C.   Matthews' Fourteenth Amendment Right to Travel Claim (the Second Claim) is Barred as a Matter of Law. ............................................... 9

        1.   The City did not, and does not require anyone, resident or non-resident, to register their handguns, so there is no right to travel violation…………………………………………………………..11

        2.   There is no claim against the City for non-issuance of CCW licenses to non-residents because non-residents are ineligible to receive licenses under *State law*, not City law; however, even if the Court considers this claim, it still fails as a matter o flaw………………… 11

VI.   CONCLUSION ............................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albright v. Oliver*,
   510 U.S. 266 (1994) ............................................................................ 5

*Alfred v. Walt Disney Co.*,
   388 F. Supp. 3d 1174 (C.D. Cal. 2019) ..................................................... 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................ 5

*Attorney Gen. of New York v. Soto-Lopez*,
   476 U.S. 898 (1986) ........................................................................... 10

*Bach v. Pataki*,
   408 F.3d 75 (2d Cir. 2005) .............................................................. 14, 16

*Brown v. City of Chicago*,
   No. 21-1433, 2021 WL 6102980, 2021 U.S. App. LEXIS 37984 (7th Cir. Dec. 22,
   2021) ............................................................................................ 13

*Canatella v. Van De Kamp*,
   486 F.3d 1128 (9th Cir. 2007) ................................................................. 5

*Cholla Ready Mix, Inc. v. Civish*,
   382 F.3d 969 (9th Cir. 2004) .................................................................. 7

*Cupp v. Harris*,
   No. 2:16-cv-00523-TLN-KJN, 2018 U.S. Dist. LEXIS 162198 (E.D. Cal. Sep. 20,
   2018) ............................................................................................ 13

*Deanco Healthcare, LLC v. Becerra*,
   365 F. Supp. 3d 1029 (C.D. Cal. 2019) ..................................................... 18

*Doby v. DeCrescenzo*,
   171 F.3d 858 (3d Cir. 1999) .................................................................. 13

*Dougherty v. City of Covina*,
   654 F.3d 892 (9th Cir. 2011) ................................................................. 13

*Durham v. Prudential Ins. Co.*,
  236 F. Supp. 3d 1140 (C.D. Cal. 2017) ........................................................ 4

*Flanagan v. Harris*,
  No. LA CV16-06164 ....................................................................... 9, 12

*Friery v. L.A. Unified Sch. Dist.*,
  448 F.3d 1146 (9th Cir. 2006) ............................................................. 6

*Houston v. Medtronic, Inc.*,
  957 F. Supp. 2d 1166 (C.D. Cal. 2013) ................................................. 4, 5

*Libertarian Party v. Cuomo*,
  300 F. Supp. 3d 424 (W.D.N.Y. 2018) ...................................................... 8

*Madsen v. Boise State Univ.*,
  976 F.2d 1219 (9th Cir. 1992) (per curiam) ............................................... 7

*Marilley v. Bonham*,
  844 F.3d 841 (9th Cir. 2016) ............................................................. 15

*Mayfield v. United States*,
  599 F.3d 964 (9th Cir. 2010) .............................................................. 8

*Mehl v. Blanas*,
  532 Fed. Appx. 752 (9th Cir. 2013) ....................................................... 7

*Monell v. Dept. of Soc. Servs. Of the City of New York*,
  436 U.S. 658 (1978) ............................................................ 2, 12, 13, 14

*New York State Rifle & Pistol Ass'n, Inc. v. Beach*,
  354 F. Supp. 3d 143 (N.D.N.Y. 2018), *aff'd*, 818 Fed. Appx. 99 (2d Cir. 2020), *cert.
  granted*, 141 S. Ct. 2566, 209 L. Ed. 2d 590, 2021 WL 1602643 ........................... 9

*Nichols v. Brown*,
  859 F. Supp. 2d 1118 (C.D. Cal. 2012) ................................................... 13

*People v. Brown*,
  2007 WL 1031676 ....................................................................... 11

*Peruta v. County of San Diego*,
  758 F. Supp. 2d 1106 (S.D. Cal. 2010) ................................................... 16

*Peruta v. County of San Diego*,
   824 F.3d 919 (9th Cir. 2016) (en banc) ................................................................ 9, 16

*Peterson v. LaCabe*,
   783 F. Supp. 2d 1167 (D. Colo. 2011) .................................................................... 15

*Peterson v. Martinez*,
   707 F.3d 1197 (10th Cir. 2013) ........................................................................ 15, 16

*Pizzo v. City & County of San Francisco*,
   No C 09-4493 CW, 2012 WL 6044837, 2012 U.S. Dist. LEXIS 173370 (N.D. Cal.
   Dec. 5, 2012) ........................................................................................................ 7, 8

*Raulinaitis v. Ventura County Sheriffs Dept.*,
   No. CV 13-2605-MAN, 2014 U.S. Dist. LEXIS 140874 (C.D. Cal. Sep. 30,
   2014) ........................................................................................................................ 17

*Rupp v. Becerra*,
   No. 8:17-cv-00746-JLS-JDE, 2018 WL 2138452, 2018 U.S. Dist. LEXIS 80388
   (C.D. Cal. May 9, 2018) .............................................................................................. 8

*Saenz v. Roe*,
   526 U.S. 489 (1999) ............................................................................................ 10, 11

*Surplus Store & Exchange, Inc. v. City of Delphi*,
   928 F.2d 788 (7th Cir. 1991) .................................................................................... 14

*Taniguchi v. Schultz*,
   303 F.3d 950 (9th Cir. 2002) .................................................................................. 7, 8

*Torosian v. City of Fresno*,
   No. 1:14-cv-00128-LJO-SKO, 2014 U.S. Dist. LEXIS 64037 (E.D. Cal. May 7,
   2014) .......................................................................................................................... 7

*Young v. Hawaii*,
   992 F.3d 765 (9th Cir. 2021) (en banc) ...................................................................... 9

**Statutes**

42 U.S.C. § 1983 ................................................................................ 3, 5, 13, 14

California Penal Code section 25400(a)(1) ...................................................... 1, 3

Pen. Code §§ 25400, 25605 ............................................................................. 1, 2

iv

Pen. Code § 26155(a) ................................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure Rule 5.1 ....................................................... 12

https://oag.ca.gov/firearms/pubfaqs#26 ........................................................ 11

U.S. Const. amend. II .................................................................................... 6

U.S. Const. amend. XIV, § 1 ............................................................. 10, 14, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants City of Los Angeles, the Los Angeles Police Department ("LAPD"), and the Los Angeles Board of Police Commissioners (the "Board") (collectively, the "City") file this motion to dismiss Plaintiffs' Complaint.

## I. INTRODUCTION

This lawsuit is a challenge to the City's licensing scheme regarding the carrying of concealed weapons. While **California law** generally prohibits a person from carrying a concealed weapon in public (Pen. Code §§ 25400, 25605), a person may obtain a license to carry a concealed weapon from their local county sheriff or city police chief. (*Id*. §§ 26150 and 26155.) Pursuant to California law, a city police chief "may issue" a license to carry a concealed weapon upon proof of certain qualifications, including that the applicant is of "good moral character," that "good cause exists for issuance of the license," and that the applicant "is a resident of that city." (*Id*. §§ 26155(a)(1)-(3).) According to Plaintiffs, the City uses an overly restrictive definition of what constitutes "good cause" to obtain a license to essentially prevent City residents from obtaining licenses to carry concealed handguns. (Compl. ¶¶ 91-92, 95.)

Plaintiffs Dominic Hunn, a City resident, and Garry Matthews, a resident of Tennessee, were arrested by the City for carrying concealed handguns in violation of California Penal Code section 25400(a)(1). (Compl. ¶¶ 30, 38, 99, 110.) Both Plaintiffs allege their arrests violated the Second Amendment, while Matthews also alleges his arrest violated his right to travel under the Fourteenth Amendment's Privileges and Immunities Clause. Notwithstanding their challenge to the City's concealed carry licensing scheme, neither plaintiff alleges they applied to the City for a license in the first place. In fact, Matthews, as a Tennessee resident, was ineligible to apply for a license from the City under **California** law. (Pen. Code § 26155(a)(3).)

As discussed herein, the Complaint fails as a matter of law for a variety of reasons—statute of limitations, lack of standing, inability to succeed on the merits, inability to hold

the City liable under *Monell*, etc.  These deficiencies are all, individually, fatal.  The Complaint should be dismissed with prejudice.

## II.  FACTUAL BACKGROUND

### A.  California State Gun Laws.

California law generally prohibits a person from carrying a concealed handgun in public; i.e., in any place outside his or her residence, place of business, or other private property.  (Pen. Code §§ 25400, 25605.)  However, there are a number of exceptions to these rules; for example, there are statutes allowing persons who work in certain occupations to carry loaded firearms in public.  (*Id.* §§ 25450, 25620, 25630, 25900, 26030, 26405.)  There are also exceptions for carrying firearms in public for certain specified purposes, like hunting; transporting unloaded handguns in the locked trunk of, or inside a locked container in a vehicle; and carrying a firearm in public when a person believes that any person or the property of any person is in immediate, grave danger, which can be addressed by the carrying of the weapon.  (*Id.* §§ 25610, 25640, 26045, 26389, 26405.)

The exception at issue here is Penal Code section 26155, which allows a person to carry a concealed weapon (a "CCW") in public if they have a license, which can be obtained from their local county sheriff or city police chief.  (*Id.* §§ 26150 and 26155.)  Pursuant to California law, a city police chief "may issue" a CCW license upon proof of certain qualifications, including that the applicant is of "good moral character," that "good cause exists for issuance of the license," and that the applicant "is a resident of that city."  (*Id.* §§ 26155(a)(1)-(3).)  What constitutes "good cause for issuance of the license" is left to the discretion of the police chief.  (Compl. ¶ 64.)

### B.  Plaintiffs' Lawsuit.

Plaintiffs allege that the City has adopted a policy not to issue CCW licenses, by restricting licenses to applicants who can show a special need for self-defense based on the City's definition of the term "good cause."  (Compl. ¶¶ 91-92.)  Plaintiffs allege that "the City's refusal to issue CCWs or licenses to openly carry based on the City and the

Board and the LAPD's definition of 'good case' [sic] violate[s] the Second Amendment." (*Id.* ¶ 124(1).)  Plaintiffs do not set forth any evidence in their Complaint to support their conclusory allegation that the City refuses to issue CCW licenses.  (*E.g.*, *id.* ¶ 95.)

Both Plaintiffs allege they were wrongfully arrested for carrying concealed handguns in violation of California Penal Code section 25400(a)(1).  (Compl. ¶¶ 30, 38, 99, 110.)

Plaintiff Hunn, a City resident, was arrested for carrying a concealed weapon in his vehicle.  (*Id.* ¶ 30.)  Hunn concedes he did not have a CCW license at the time of his arrest.  (*Id.*)  He does not allege he has ever applied for a CCW license.  (*Id.* ¶¶ 27-34.)

On September 27, 2019, Matthews was arrested for carrying a concealed weapon in the pocket of his vehicle's driver side door.  (Compl. ¶¶ 38, 48.)  At the time of his arrest, Matthews was driving home a kid who was on a youth football team he coached. (*Id.* ¶ 40.)  Matthews was a resident of Tennessee at the time of his arrest.  (*Id.* ¶ 8.) Because he was not a City resident, Matthews could not apply for a CCW license under California state law.  (Pen. Code § 26155(a)(3).)

Based on these allegations, Plaintiffs assert two claims under Section 1983.  The first claim, which is brought by both Plaintiffs, alleges that their arrests violated the Second Amendment.  (Compl. ¶¶ 96-107.)  The second claim, which is only brought by Matthews, alleges that his arrest violated his right to travel under the Fourteenth Amendment's Privileges and Immunities Clause.  (*Id.* ¶¶ 108-115.)

Plaintiffs also seek to represent two putative classes, a Second Amendment class, and a Non-resident Arrest class.  For the first, Plaintiffs seek to represent a class of people who "in the period beginning two years before the date of filing of the original complaint" were arrested by the City "for violation of any of the California laws regarding carrying a handgun or ammunition without a CCW."  (*Id.* ¶ 117.)  On the second, Matthews seeks to represent a class of "nonresident[s] of the State of California at the time of the[ir] arrest" who "in the period beginning two years before the date of filing of the original complaint"

were arrested "in the City for violation for violation [sic] of any of the California laws regarding carrying a handgun or ammunition without a CCW." (*Id*. ¶ 118.)

Plaintiffs seek unspecified compensatory and consequential damages. (*Id*. <u>Prayer for Relief</u>, ¶ I.) Plaintiffs also seek injunctive relief "in the form of sealing their arrest records and prosecution records and declaring their arrests legal nullities." (*Id*. ¶ H.)

## III.   LEGAL STANDARD

### A.   Rule 12(b)(6) Motion to Dismiss.

"A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory." *Durham v. Prudential Ins. Co*., 236 F. Supp. 3d 1140, 1150 (C.D. Cal. 2017). "A court may consider the allegations contained in the pleadings, exhibits attached to or referenced in the complaint, matters properly subject to judicial notice, and materials whose contents are alleged in the complaint, in ruling on a motion to dismiss." *Alfred v. Walt Disney Co*., 388 F. Supp. 3d 1174, 1180 (C.D. Cal. 2019).

District courts must engage in a two-step process when considering a Rule 12(b)(6) motion to dismiss. *Houston v. Medtronic, Inc*., 957 F. Supp. 2d 1166, 1172 (C.D. Cal. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). *First*, the court must "'begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id*. (quoting *Iqbal*, 566 U.S. at 679). Those conclusory allegations are to be ignored when evaluating the sufficiency of a pleading. *Id*. *Second*, the court must determine whether the remaining "well-pleaded facts, and reasonable inferences therefrom, give rise to a plausible claim for relief." *Id*. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face…. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Iqbal*,

4

556 U.S. at 678-79 (quotation marks omitted).

**IV.   AS A THRESHOLD MATTER, PLAINTIFF MATTHEWS' CLAIMS ARE TIME-BARRED.**

Claims brought under 42 U.S.C. § 1983 ("Section 1983") are subject to California's two-year statute of limitations applicable to personal injury claims. *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007). Here, the injury which is the basis for both of Matthews' claims is his arrest for violating the City's alleged "unconstitutional gun control regime." (Compl. ¶¶ 99, 110.) He was arrested on September 27, 2019. (Chapman Decl., Exh. A.) Yet, he waited until more than two years after his arrest (May 3, 2022) to file his lawsuit. Accordingly, Matthews' claims are time-barred, and should be dismissed without leave to amend. Moreover, since Matthews is the only plaintiff asserting the second claim for violation of the Fourteenth Amendment right to travel, that claim should also be dismissed with prejudice.

**V.   PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW.[1]**

Plaintiffs assert two causes of action (Compl. ¶¶ 96-115) under Section 1983, which provides that every person who, under color of law, deprives another of rights protected by the Constitution shall be liable to that party. 42 U.S.C. § 1983. "The first step in any such claim [Section 1983] is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiffs assert violations of the Second Amendment (Claim One); and the Fourteenth Amendment's Right to Travel (Claim Two). Both claims fail as a matter of law.

**A.   Plaintiffs' Second Amendment Claim (Claim One) is Subject to Dismissal.**

Plaintiffs' first claim alleges that their arrests for carrying concealed handguns violates the Second Amendment.[2] (Compl. ¶¶ 96-107.) This claim is brought by both

---

[1] As discussed above, all of Matthews' claims are time-barred. However, for completeness, the City addresses the merits of Matthews' two claims.

[2] The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

plaintiffs—Hunn, who is a resident of the City (*id*. ¶ 9), and Matthews, who at the time of his arrest, was a resident of Tennessee. (*Id*. ¶¶ 8, 36.)

Plaintiffs allege that "[t]he City's gun control regime during the Class Period (including its laws, customs, practices and policies banning the carrying and transporting of handguns in public) violated the Second Amendment because it effected a total ban on carrying handguns outside the home." (*Id*. ¶ 97.)[3]  Plaintiffs later allege that the issue raised in this claim is "whether the City's refusal to issue CCWs or licenses to openly carry based on the City and the Board and the LAPD's definition of 'good case' [sic] violated the Second Amendment." (*Id*. ¶ 124.)

Plaintiffs' Second Amendment claim is subject to dismissal for two reasons. First, both Plaintiffs lack standing to assert this claim. Second, even assuming the Court were to reach the merits of the claim, it fails as a matter of law.

### 1. Both Plaintiffs lack standing[4] to sue the City over its CCW licensing scheme.

***Hunn:*** Hunn does not allege that he actually applied for a CCW license from the City. Thus, he lacks standing to assert a challenge to the City's CCW licensing scheme.

"There is a long line of cases, … which hold that a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit." *Madsen v. Boise State Univ*., 976 F.2d 1219, 1220 (9th Cir. 1992) (per curiam) (plaintiff who failed to apply for a free handicap parking permit had no standing to challenge university's handicap parking permit scheme).

This rule has been repeatedly applied to challenges to CCW licensing schemes. For example, in *Mehl v. Blanas*, 532 Fed. Appx. 752 (9th Cir. 2013), the Ninth Circuit upheld the district court's dismissal of the plaintiff's challenge to Sacramento County's concealed-carry policies for lack of standing "because he failed fully to complete the

---

[3] As discussed in Section II-A, <u>supra</u>, this is simply not true. Rather, State and City law allows for a number of exceptions for carrying handguns in public.

[4] "As standing implicates Article III limitations on our power to decide a case, we must address it before proceeding to the merits." *Friery v. L.A. Unified Sch. Dist*., 448 F.3d 1146, 1148 (9th Cir. 2006).

county's application process." *Id*. at 754. And in *Pizzo v. City & County of San Francisco*, No C 09-4493 CW, 2012 WL 6044837, 2012 U.S. Dist. LEXIS 173370 (N.D. Cal. Dec. 5, 2012), the district court dismissed a challenge to the City and County of San Francisco's CCW licensing process because the plaintiff did not submit a CCW license application to either entity. *Id*. at *40-47; *see also Torosian v. City of Fresno*, No. 1:14-cv-00128-LJO-SKO, 2014 U.S. Dist. LEXIS 64037, at *2, 12-16 (E.D. Cal. May 7, 2014) (no standing to challenge city's "restrictive policy in issuing concealed carry permits for handguns [that] requir[es] 'good cause' for a permit and reject[s] self-defense alone as a reason to issue a permit" because "Plaintiff does not explain whether he has applied for, plans to apply for, or has been denied a handgun permit").

Nevertheless, Hunn may try to establish standing through the futility exception—that filing an application for a CCW license with the City would have been an "exercise[] in futility," so this requirement should be excused. *Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir. 2002). While Hunn does not directly allege that it would have been futile for him to apply for a CCW license, he does allege in conclusory fashion that "the City's Police Chief refuses to issue CCWs." (Compl. ¶ 3.) But this allegation, unsupported by any facts to support it, is insufficient to establish futility. *See*, *e.g*., *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged…. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." (internal citation and quotation marks omitted)); *Libertarian Party v. Cuomo*, 300 F. Supp. 3d 424, 433 (W.D.N.Y. 2018) (no standing to challenge New York's "good cause" requirement to obtain a license because the plaintiffs failed to allege they applied for a firearms license, and their "unsupported claims of futility [we]re insufficient to excuse a failure to apply"); *Rupp v. Becerra*, No. 8:17-cv-00746-JLS-JDE, 2018 WL 2138452, 2018 U.S. Dist. LEXIS 80388, at *13-14 (C.D. Cal. May 9, 2018) (no standing to challenge assault weapon registration law where the plaintiffs did not attempt to register

their weapons, and the complaint did not "include facts that would support Plaintiffs' assertion that any such attempt to register the weapons would be futile"); *Pizzo*, 2012 U.S. Dist. LEXIS 173370 at *46-47 (no standing to challenge city and county's CCW licensing scheme since the plaintiff did not apply for a license and the plaintiff submitted "no evidence" that it would be futile to apply).

Rather, as the Ninth Circuit held in *Taniguchi*, the futility exception only applies where futility is "unambiguous." *See* 303 F.3d at 957 (concluding that the face of the challenged statute established futility because "the statute in question unambiguously precludes Taniguchi … from the discretionary waiver"). Here, Penal Code section 26155 does not unambiguously preclude Hunn from applying for a CCW license. (Pen. Code § 26155(a)(3) [City resident can apply].)

In sum, Hunn lacks standing to challenge the City's CCW licensing scheme on Second Amendment grounds.

***Matthews:*** There are three constitutional elements to standing. *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010). The second element requires that "the plaintiff must establish a causal connection between the injury and the defendant's conduct." *Id*. Matthews cannot establish this element for his Second Amendment claim.

Here, Matthews' purported injury is his arrest for carrying a concealed weapon without a CCW license. (Compl. ¶ 99.) The conduct raised by the Complaint is the City's alleged policy to refuse to issue CCW licenses by employing a restrictive "good cause" standard. (*Id*. ¶¶ 16, 97, 124.) But there is no "causal connection" between the City's alleged conduct and Matthews' alleged injuries because Matthews was not a resident of the City at the time of his arrest (*id*. ¶¶ 8, 36), so he could not apply for a CCW license. (Pen. Code § 26155(a), (a)(3).) Thus, even if the City had not engaged in the allegedly harmful conduct—i.e., the City had not used the good cause standard to avoid issuing CCW licenses—Matthews was still not eligible to obtain a CCW license from the City under ***State law***. So there is no causal connection between his injury and the City's conduct. Thus, Matthews does not have standing to assert his Second Amendment claim.

### 2. Even if Plaintiffs could assert a Second Amendment challenge to the City's CCW licensing policy, it fails as a matter of law.

In *Peruta v. County of San Diego*, 824 F.3d 919 (9th Cir. 2016) (en banc), the Ninth Circuit held that "[b]ecause the Second Amendment does not protect in any degree the right to carry concealed firearms in public, any prohibition or restriction a state may choose to impose on concealed carry – including a requirement of 'good cause,' however defined – is necessarily allowed by the amendment." *Id*. at 939.[5]  Accordingly, Plaintiffs' challenge to the City's policy of issuing CCW licenses based on its definition of "good cause" is necessarily barred as a matter of law.  *See, e.g.*, *Flanagan v. Harris*, No. LA CV16-06164 JAK (ASx), 2017 WL 729788, 2017 U.S. Dist. LEXIS 28503, at *5-6, 8-13 (C.D. Cal. Feb. 23, 2017) (dismissing Second Amendment claims challenging the "policies of the [Los Angeles Sherriff's Department] regarding the issuance of a license for the carry of a concealed weapon" based on *Peruta*).[6]

### C. Matthews' Fourteenth Amendment Right to Travel Claim (the Second Claim) is Barred as a Matter of Law.

The Complaint's second claim, which is only asserted by Matthews as a non-California resident,[7] is for a purported violation of the "Fourteenth Amendment Right to Travel." (Compl. ¶¶ 108-115.)  The right to travel is considered to be a right guaranteed by the Privileges and Immunities Clause of the Fourteenth Amendment,[8] which provides that "[n]o State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States."  U.S. Const. amend. XIV, § 1.

---

[5] In *Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021) (en banc), the Ninth Circuit held that the Second Amendment does not guarantee the unfettered, general right to openly carry arms in public.  *Id*. at 826.

[6] Recently, the United States Supreme Court agreed to consider whether New York violated the Second Amendment by denying a request for a concealed-carry license.  *New York State Rifle & Pistol Ass'n, Inc. v. Beach*, 354 F. Supp. 3d 143 (N.D.N.Y. 2018), *aff'd*, 818 Fed. Appx. 99 (2d Cir. 2020), *cert. granted*, 141 S. Ct. 2566, 209 L. Ed. 2d 590, 2021 WL 1602643, 2021 LEXIS 2144 (U.S. 2021) (renumbered No. 20-843).

[7] This claim is only asserted on behalf of non-California residents.  (Compl. ¶ 118(iv).)

[8] *E.g.*, *Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 902 (1986).

The "right to travel" encompasses three aspects: (1) "the right of a citizen of one State to enter and leave another State" — that is, the ability of citizens "to cross state borders;" (2) the right to enjoy the privileges and immunities that the destination state confers on its own citizens; and (3) the right of newly-arrived citizens "to be treated equally in her new state of residence." *Saenz v. Roe*, 526 U.S. 489, 500-05 (1999). The right to travel is "not absolute." *Id.* at 502 (quotation marks omitted). Rather, the right to travel "bar[s] discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Id.* (quotation marks omitted).

Of the three types of right to travel claims, Matthews does not assert that he is prevented from entering or leaving California (the first type) or that he elected to become a permanent resident, yet was treated differently than other California citizens (the third type). Thus, only the second component of the right to travel is at issue here, *i.e.*, the right to enjoy the privileges and immunities that the destination state confers on its own citizens when temporarily in California.

Matthews alleges that the City maintains an "unconstitutional gun control regime" in violation of his Fourteenth Amendment right to travel "because [the City] effected a total ban on carrying pistols in the City for non-residents because the gun control regime prevented registering their handguns and licensing them and the LAPD police Chief refused to register their handguns or issue them licenses." (Compl. ¶ 109.) Matthews later alleges that his Fourteenth Amendment claim raises two issues:

- whether the City has or had a policy, custom, or practice of never allowing nonresidents to register pistols for carrying outside the home during the class period; and
- whether the City's refusal to issue CCWs to non-residents violated the Fourteenth Amendment.

(Compl. ¶ 124.) These claims fail as a matter of law.

1.   **The City did not, and does not require anyone, resident or non-resident, to register their handguns, so there is no right to travel violation.**

Matthews alleges the City has a "gun control regime" and policy that prevents non-residents from registering and licensing their handguns. (Compl. ¶¶ 109, 124.) Plaintiffs appear to be mistaken about California law, which does not require anyone—resident or non-resident—to register handguns. https://oag.ca.gov/firearms/pubfaqs#26 ("There is no firearm registration requirement in California except for assault weapon owners and personal handgun importers."); *see also People v. Brown*, 2007 WL 1031676, 2007 Cal.App.Unpub. LEXIS 2805 at *608 (Cal. Ct. App. Apr. 6, 2007) ("There is no requirement under these statutes for an individual gun owner to register his or her handgun with the Department [of Justice]. More particularly, there is no general requirement that a person entering California register his or her handgun upon arrival in California."). Matthews does not cite a City law that requires residents or non-residents to register their handguns either. Accordingly, residents and non-residents are treated alike, so there is no right to travel violation. *See, e.g.*, *Saenz*, 526 U.S. at 500-02 (right to travel implicates the right to enjoy the privileges and immunities that California confers on its own citizens when temporarily in California).

2.   **There is no claim against the City for non-issuance of CCW licenses to non-residents because non-residents are ineligible to receive licenses under *State law*, not City law; however, even if the Court considers this claim, it still fails as a matter of law.**

Matthews alleges that the City's "refusal to issue CCWs to non-residents violate[s] the Fourteenth Amendment." (Compl. ¶ 124.) This is the gravamen of his "right to travel" claim—that non-residents are totally banned from carrying handguns in the City because they, unlike City residents, cannot obtain a CCW license. (*Id*. ¶ 109.) This claim fails for three reasons:  (1) it should be directed at the State, not the City; (2) there is no *Monell*

claim against the City for its mere enforcement of State law; and (3) California's CCW license residency requirement does not violate his right to travel.

*First*, only City residents can apply for CCW licenses.  This is a California state law, not a City requirement.  (Pen. Code §§ 26155(a), (a)(3).)  Thus, Matthews' challenge to the City's supposed refusal to issue CCW licenses to non-residents is directed at the wrong entity; the State of California is the proper defendant.[9]  This claim should be dismissed against the City on this basis alone.  *See*, *e.g*., *Flanagan*, 2017 U.S. Dist. LEXIS 28503, at *8-13 (dismissing Second Amendment claims that were brought against a County Sheriff challenging State open carry laws because the Sheriff "has no responsibility for the enactment of the restrictions on open carry, [so] it is not a proper party to this action").

*Second*, because *State law* precludes the City from issuing CCW licenses to non-residents, Matthews cannot maintain a *Monell* claim against the City.

"A government entity may not be held liable under 42 U.S.C. § 1983 unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dept. of Soc. Servs. Of the City of New York*, 436 U.S. 658, 694 (1978)). Thus, "to establish liability for governmental entities under *Monell*, a plaintiff must prove (1) that [the plaintiff] possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation."  *Id*. (emphasis added) (quotation marks omitted).

---

[9] Having failed to sue the State of California, Matthews is required to file notice of the constitutional challenge to Penal Code section 26155(a)(3) with this Court pursuant to Federal Rule of Civil Procedure Rule 5.1, which states that where a party files a pleading "drawing into question the constitutionality of a … state statute," and the party "does not include the state," the party "must promptly file a notice of constitutional question stating the question."  Fed. R. Civ. P. 5.1(a)(1)-(2).  The district court is then required to "certify to the appropriate attorney general that a statute has been questioned."  *Id*. at 5.1(b). The attorney general then has 60 days (or longer if set by the court) to intervene.  *Id*. at 5.1(c).  The court cannot "enter a final judgment holding the statute unconstitutional" before "the time to intervene expires."  *Id*.

Here, Matthews seeks to hold the City liable under *Monell* for its supposed refusal to issue CCW licenses to non-residents.  (Compl. ¶ 124.)   But the City cannot issue CCW licenses to non-residents under California state law.  It is well established that "mere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability."  *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1133 (C.D. Cal. 2012); *see also id.* at 1136 ("The Complaint does not identify any specific City policy, as required by Monell, that caused Plaintiff's alleged injuries.  Plaintiff's argument that [the City of Redondo Beach] has a 'policy' of enforcing state law is an insufficient ground for municipal liability under section 1983."); *Doby v. DeCrescenzo*, 171 F.3d 858, 868 (3d Cir. 1999) ("[W]hen a county is merely enforcing state law, without adopting any particular policy of its own, it cannot be held liable under the *Monell* line of cases."); *Brown v. City of Chicago*, No. 21-1433, 2021 WL 6102980, 2021 U.S. App. LEXIS 37984, at *4 (7th Cir. Dec. 22, 2021) ("Brown did not plead a proper *Monell* claim against either the City of Chicago or Cook County based on the enforcement of the later-vacated Illinois statute.  Neither entity could be liable based on a policy of enforcing state criminal statutes in effect at the time."); *Cupp v. Harris*, No. 2:16-cv-00523-TLN-KJN, 2018 U.S. Dist. LEXIS 162198, at *11-13 (E.D. Cal. Sep. 20, 2018) (dismissing claims against city where the plaintiff's "opposition demonstrates that his action lies in challenges to state gun laws" because allegations that the city's "wide-spread policy" to "enforce state gun laws" did not satisfy *Monell's* official policy requirement).

As the Seventh Circuit Court of Appeals aptly explained, to hold municipalities liable for merely complying with state law "would render meaningless the entire body of precedent from the Supreme Court and this court that requires culpability on the part of a municipality and/or its policymakers before the municipality can be held liable under § 1983, and would allow municipalities to be nothing more than convenient receptacles of liability for violations caused entirely by state actors -- here, the Indiana legislature."  *Surplus Store & Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791 n.4 (7th Cir. 1991); *see also id.* at 791-92 (holding plaintiff's claim insufficient for *Monell* liability

because "[i]it is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law.").

**Third**, even assuming arguendo Matthews' right to travel claim is viable against the City, it still fails as a matter of law.

The only difference in treatment between California residents and non-residents with respect to carrying handguns is the ability to obtain a CCW license. California law allows City residents to apply for a CCW license, but it does not allow non-City residents to apply. (Pen. Code § 26155(a)(3).) This is the basis for Matthews' right to travel claim. (*See*, *e.g*., Compl. ¶ 124 ["[W]hether the City's refusal to issue CCWs to non-residents violated the Fourteenth Amendment."].) Three different courts have considered, and rejected similar claims.

In *Bach v. Pataki*, 408 F.3d 75 (2d Cir. 2005), the Second Circuit considered a non-resident's claim that New York's prohibition on issuing gun licenses to non-residents violated his right to travel under the Privileges and Immunities Clause of Article IV of the United States Constitution. *Id*. at 77. The district court dismissed the claim, holding that there was a substantial connection between the residency requirement and the purposes of the licensing scheme so the disparate treatment of non-residents was justifiable. *Id*. The Second Circuit affirmed. It applied a two-part test: (1) does the privilege "come within the scope of the [Privileges and Immunities] Clause;" and (2) where a protective privilege is implicated, then the State "may defend its position by demonstrating: (a) a substantial reason for the discrimination, and (b) a reasonable relationship between the degree of discrimination exacted and the danger sought to be averted by enactment of the discriminatory statute." *Id*. at 88 (quotation marks omitted).[10] Assuming, without deciding, that entitlement to a New York carry license was a privilege under the Clause,

---

[10] The Ninth Circuit utilizes a similar "two-step inquiry" in deciding claims arising out of the Privileges and Immunities Clause  First, the plaintiff bears the burden of showing the challenged law fails within the Clause. If yes, then the burden shifts to the state to show that the challenged law is closely related to the advancement of a substantial state interest. *Marilley v. Bonham*, 844 F.3d 841, 846 (9th Cir. 2016).

the Second Circuit held that New York had a substantial interest in monitoring gun licenses and that limiting licenses to residents was sufficiently related to that interest because New York has an interest in the entirety of a licensee's relevant behavior, and the state can only monitor activities that take place in the state. *Id*. at 91-94.

In *Peterson v. LaCabe*, 783 F. Supp. 2d 1167 (D. Colo. 2011), the district court considered a non-resident's claim that Colorado's requirement that an applicant for a CCW license be a Colorado resident violated his right to travel under the Privileges and Immunities Clause of Article IV of the United States Constitution. *Id*. at 1170. Under Colorado law, a CCW license can only be issued to a legal resident of the state. *Id*. Colorado justified this distinction by arguing that "it has a greater ability to monitor residents for compliance with the requirements of the concealed handgun licensing scheme than non-residents." *Id*. at 1174. The district court agreed, granting judgment in favor of the state. *Id*. at 1174-76.

The district court's decision was upheld in *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013). There, the Tenth Circuit held that the plaintiff did not satisfy the first part of the Privileges and Immunities Clause test—that the right to carry a concealed weapon came within the scope of the Clause. *Id*. at 1215. However, a separate concurring opinion went on to address the second part of the test, concluding that the residency requirement was substantially related to an important governmental objective. *See id*. at 1216-17 ("As part of its general public safety interest, Colorado has shown that ensuring [CCW] holders are qualified under state law is an important governmental objective. The state also proffered unrefuted evidence demonstrating that much of the information necessary to determine whether an individual is qualified for a [CCW] is kept in locally maintained databases, and that Colorado sheriffs do not have access to such information with respect to non-resident applicants.").

Finally, in *Peruta v. County of San Diego*, 758 F. Supp. 2d 1106 (S.D. Cal. 2010), the plaintiffs challenged San Diego County's policies for obtaining a concealed carry permit. While the "heart" of the lawsuit was whether the plaintiffs had a right to carry a

concealed handgun in public, one plaintiff also claimed that he was denied a CCW license due to his residency, and the County's policy defining residency violated his right to travel under the Privileges and Immunities Clause of the Fourteenth Amendment. *Id*. at 1109-10, 1119-20. The district court ruled in favor of the County, adopting the Second Circuit's analysis in *Bach* to hold that residency requirements for concealed weapon permits did not violate the right to travel under the Privileges and Immunities Clause of the Fourteenth Amendment. *Id*. at 1119-1120.

In light of these three decisions, Matthews' right to travel claim fails as a matter of law. With respect to the first part of the Privileges and Immunities Clause test, it is established in the Ninth Circuit that "the Second Amendment does not protect, in any degree, the carrying of concealed firearms by members of the general public. This holding … also necessarily resolves, adversely to Plaintiffs, their derivative claims of … privileges and immunities." *Peruta*, 824 F.3d at 942. Thus, Matthews' right to travel claim fails on this basis alone.

Matthews' right to travel claim also fails the second part of the test because the State's CCW residency requirement is closely related to the advancement of a substantial State interest—ensuring that CCW license holders are qualified under State law. California's CCW residency requirement enables local licensing officers to make informed decisions about the suitability of CCW license applicants. Indeed, this was one of the rationales for adding the residency requirement, as the district court recognized in *Raulinaitis v. Ventura County Sheriffs Dept*., No. CV 13-2605-MAN, 2014 U.S. Dist. LEXIS 140874 (C.D. Cal. Sep. 30, 2014). There, the district court analyzed the legislative history behind the Senate Bill adding the residency requirement for CCW licenses, finding that "[t]he addition of a residency requirement to the CCW licensing statute … was motivated by a desire to ensure that CCWs were issued only to persons who actually lived within the counties in which the permits were sought. The bill's proponents believed that an adequate assessment of the good moral character and good cause requirements, as well

as the need for imposing any restrictions, was possible only if an applicant resided within the county of application." *Id*. at *43.

This conclusion is buttressed by a 1979 California Attorney General Opinion, which opined that the residency requirement was rationally related to a legitimate state objective because it was "based upon the assumption that a local police agency would be best equipped to determine the good moral character of the applicant, the necessity for the license, and the restrictions, if any, that should be placed on it."  62 Ops. Cal. Atty. Gen 508, 1979 WL 29270, 1979 Cal. AG LEXIS 54, at *9 (Sep. 18, 1979).  And of considerable note here, the California Attorney General further opined:  "The Legislature apparently decided that the interest of a nonresident temporarily in the state who is not otherwise exempt from the concealed weapon prohibition … in carrying a concealed weapon is clearly outweighed by the burden imposed upon a local police agency in determining the good moral character of the applicant, the good cause for issuing the license, and the conditions and restrictions, if any, which should be placed on it."  *Id*. at *9-10.

In sum, because local law enforcement officers are in the best position to assess the moral character and good cause of local applicants, California's CCW license residency requirement is closely related to California's interest in ensuring that CCW license holders are qualified under State law.

## VI.   CONCLUSION

"[A] court may deny leave to amend when the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Deanco Healthcare, LLC v. Becerra*, 365 F. Supp. 3d 1029, 1039 (C.D. Cal. 2019) (quotation marks omitted) (granting motion to dismiss without leave to amend where "[a]mendment would be futile").  Here, the numerous deficiencies identified in the Complaint cannot be fixed.  Accordingly, amendment is futile, and the Complaint should be dismissed with prejudice.

Dated:  June 16, 2022

OFFICE OF THE CITY ATTORNEY OF LOS ANGELES

By:
    */s/ Benjamin Chapman*

Benjamin Chapman

Attorneys for Defendant
CITY OF LOS ANGELES,
LOS ANGELES POLICE DEPARTMENT, and
LOS ANGELES BOARD OF POLICE
COMMISSIONERS