JOVAN BLACKNELL (SBN 237162)
Email: jovan@fight4justice.com
Attorney for Plaintiffs, Garry Matthews, Dominic Ross Hunn, and Jamar Hearns
LAW OFFICE OF J. BLACKNELL
200 Corporate Pointe, Suite 495
Culver City, CA 90230
Phone: (310) 469-9117; Fax: (310) 388-3765
Attorney for Plaintiffs

WILLIAM CLAIBORNE
*Pro hac vice*
Email: claibornelaw@gmail.com
Attorney for Plaintiffs, Garry Matthews, Dominic Ross Hunn, and Jamar Hearns
ClaiborneLaw
717 D Street N.W., Ste 300
Washington, DC 20004-2815
Phone: (202) 824-0700
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRY MATTHEWS, DOMINIC ROSS HUNN, and JAMAR HEARNS, individually and as class representatives,<br><br>     Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, AND LOS ANGELES BOARD OF POLICE COMMISSIONERS,<br><br>     Defendants. | Case No. **22-cv-02944-FLA-PD**<br><br>**AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>1) DEPRIVATION OF CIVIL RIGHTS BY ENTITY DEFENDANT [CITY OF LOS ANGELES] (42 U.S.C. § 1983, MONELL)<br><br>2) DEPRIVATION OF CIVIL RIGHTS BY ENTITY DEFENDANT [LOS ANGELES BOARD OF POLICE COMMISSIONERS] (42 U.S.C. § 1983, MONELL)<br><br>3) DEPRIVATION OF CIVIL RIGHTS BY ENTITY DEFENDANT [LOS ANGELES POLICE DEPARTMENT] (42 U.S.C. § 1983, MONELL)<br><br><br>**DEMAND FOR JURY TRIAL** |

1.    Garry Matthews, Dominic Ross Hunn, and Jamar Hearns, on behalf of themselves and the Arrest Class and the Nonresident Class (both defined below), bring this action against the City of Los Angeles (sometimes the "City" or the "LA") and the Los Angeles Board of Police Commissioners (sometimes the "Board of Police Commissioners" or the "Board") and the Los Angeles Police Department (sometimes "LAPD" or the "Department") under 42 U.S.C.A. § 1983 for injuries they suffered during the Class Period because the City's and the Board's and LAPD's unconstitutional "no-issue" CCW policies (concealed weapons permit) and other

unconstitutional gun control laws, which were officially adopted and promulgated by the City's policymakers, caused them and the other members of the Arrest Class and the Nonresident Class to be arrested and detained merely for the permissible Second Amendment conduct of carrying a handgun for general self-defense outside the home or place of business.

2.      A concealed weapons permit (or "CCW") issued by the sheriff of a county or the police chief of a municipality is the only means by which ordinary citizens may legally carry firearms in public in California. Absent a CCW, it is a crime for ordinary citizens to carry either a loaded or an unloaded handgun in public, regardless of whether the weapon is concealed or openly carried, with certain exceptions not relevant here.

3.      The two key, undisputed facts in this case are that there were no actions that the Plaintiffs or the other class members could have taken during the relevant time period that would have allowed them to carry a handgun for general self-defense in the City of Los Angeles because: (1) the City's Police Chief refuses to issue CCWs for the lawful Second Amendment purpose of general self-defense; and (2) the City's Police Chief vigorously enforces laws criminalizing carrying a handgun outside the home without a CCW.

4.      By adopting and following a City policy of refusing to issue CCWs for general self-defense and then by adopting and following a City policy of adopting and strictly enforcing State laws prohibiting carrying a handgun outside the home without a CCW, the City violated their Second Amendment rights, and, in the case of Mr. Matthews and the Nonresident Class, the City violated their Fourteenth Amendment rights.

///

///

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the Named Plaintiffs' § 1983 claims under 28 U.S.C.A. §1331 and 28 U.S.C.A. §1343(3)-(4).

-3-

6.      Venue is proper in this jurisdiction pursuant to 28 U.S.CA. §1391(b) because the events or omissions underlying the claims occurred in this judicial district.

### Parties

7.      Garry Matthews, Dominic Ross Hunn, and Jamar Hearns are adult natural persons.

8.      Plaintiff Garry Matthews was at the time of his arrest and detention a resident of the State of Tennessee.

9.       Plaintiff Dominic Hunn was at the time of his arrest and detention a resident of the City of Los Angeles.

10.      In the alternative, Plaintiff Dominic Hunn was at the time of his arrest and detention a resident of the County of Los Angeles

11.      Jamar Hearns was at the time of his arrest and detention a resident of the City of Los Angeles.

12.      Defendant City of Los Angeles is a municipal corporation organized and existing under the laws of the State of California.

13.      Defendant Los Angeles Board of Police Commissioners, also known as the Police Commission, is a five-member civilian body that oversees the City of Los Angeles Police Department pursuant to the powers granted it by the City of Los Angeles in the City Charter.

14.      Defendant Los Angeles Police Department, officially known as the City of Los Angeles Police Department, is the municipal police department of the City of Los Angeles, California.

### FACTUAL ALLEGATIONS

**The City of Los Angeles' Handgun Regulation Policies Caused the Arrest and Detention of Otherwise Law Abiding Ordinary People like Named Plaintiffs and the Other Class Members**

15.     For years the City of Los Angeles has maintained some of the most restrictive gun laws in the State, and in fact in the nation, pursuant to a comprehensive set of municipal ordinances setting forth its own handgun policies that regulate the sale, possession and use and licensing of firearms and ammunition within its boundaries that is much more restrictive than the State statutory scheme requires. Los Angeles Municipal Code Sec. 55.00 *et seq.* (Firearms – Dangerous Weapons).

16.     The Board of Police Commissioners has opted to exercise a grant of authority to issue CCWs on behalf of the City.

17.     The Board has unfettered discretion in the definition of "good cause" it adopts and enforces and implements for issuing CCWs.

18.     But, the Board of Police Commissioners has elected to promulgate and to follow an official written policy on issuing CCWs that is tantamount to a total ban on the carriage of handguns outside the home for the general purpose of self-defense in violation of the Second Amendment because issuance of CCWs is conditioned on a finding of "good cause," and the Board defines good cause as a special need to defend against threats specific to themselves.

19.     The definition of good cause the LAPD has adopted as its official policy is so restrictive that it acts as a total ban on the carriage of handguns outside the home for the general purpose of self-defense in violation of the Second Amendment. LAPD Carry Concealed Weapon License Policy, promulgated by the Chief of Police of the Los Angeles Police Department.[1]

20.     The definition of good cause the LAPD has adopted as its official policy violates the Second Amendment by inverting the burden of proof established by the Second Amendment by requiring applicants for CCWs to prove that they are entitled to carry a pistol outside the home for self-defense by demonstrating a need for self-

---

[1] https://lapdonlinestrgeacc.blob.core.usgovcloudapi.net/lapdonlinemedia/2022/02/Updated-2021-CCW-concealed-weapons-Policy.pdf

AMENDED CLASS ACTION COMPLAINT

defense greater than that of the general public, such as being the target of personal threats, rather than treating applicants as entitled to carry a pistol outside the home for self-defense unless the Chief establishes that applicants have a disability such as insanity.

21.     The City's policies expressed in the City Council's expression of its restrictive firearms policy in the municipal code and the Board of Police Commissioner's narrow definition of good cause expressing that City policy creates a Catch 22 for residents and non-residents alike.

22.     Even though the Chief will not issue CCWs for the general purpose of self-defense, and the Chief will not issue CCWs to non-residents for any purpose, the Chief vigorously enforces the City and State bans on carriage of a handgun outside the home for the constitutional general purpose of self-defense.

23.      The licensing scheme simultaneously precludes the People from obtaining a license to carry their handguns outside of the home or place of business for self-defense while subjecting the People to criminal sanctions for the constitutional conduct of possessing or carrying a handgun outside the home even when carried for the constitutionally permissible purpose of self-defense.

24.     The City's licensing scheme also specifically excludes individuals who do not reside in the City or another jurisdiction in California from possessing or carrying a pistol because the gun control regime requires gun registration applicants to submit proof of residency in the City.

25.     Many Americans visit the City every year because it is one of the premiere tourist destinations in the country.

26.     Venice Beach is the second largest tourist attraction in California, after Disneyland.

27.     Many states which allow their citizens to carry pistols actually have places at their tourist sites and legislative assemblies and high courts where citizens can check their guns.

28.     Moreover, the City placed no warnings or notifications of its draconian gun laws to persons entering the City.

29.     As a result each year the City's unconstitutional gun control laws subjected hundreds of otherwise law abiding citizens to misdemeanor or felony arrests and convictions and the attendant disabilities following a conviction (*e.g.*, loss of access to federal jobs) because of what were regulatory violations.

**Mr. Matthews, Mr. Hunn and Mr. Hearns Typify the Type of Law Abiding Citizen Who Ran afoul of the City's Unconstitutional Handgun Laws**

30.     Mr. Matthews, Mr. Hunn and Mr. Hearns typify the type of law abiding citizen who ran afoul of the City's unconstitutional handgun laws.

### Dominic Ross Hunn's Arrest and Detention

31.     Mr. Hunn typifies the type of law abiding citizen who ran afoul of the City's unconstitutional handgun gun regulation laws.

32.     Mr. Hunn is an entertainer of national repute. Better known by his stage name, Dom Kennedy, Mr. Hunn is a rapper from Leimert Park, Los Angeles, California.

33.     Since 2008, Mr. Hunn has released 5 independent mixtapes, most notably his 2010 critically acclaimed mixtape From the Westside with Love.

34.     Mr. Hunn was arrested by Los Angeles City Police Department for carrying a handgun outside the home in his vehicle without a CCW on about November 24, 2020.

35.     Mr. Hunn had no prior arrests.

36.     Mr. Hunn was arrested for felony possession of a concealed weapon without a CCW.

37.     The City caused him to be held in the LA County jail and on information and belief the City referred his case for prosecution.

38.     Mr. Hunn was in jail overnight until about 2:00 a.m.

39.      Mr. Hunn bailed out on $35,000 bail for which he had to pay approximately $3,500.

**Jamar Hearns' Arrest and Detention**

40.      Mr. Hearns typifies the type of law abiding citizen who ran afoul of the City's unconstitutional handgun gun regulation laws.

41.      Mr. Hearns was arrested by Los Angeles City Police Department for carrying a handgun outside the home on his person without a CCW a few feet from his home on about June 22, 2022.

42.      Mr. Hearns had no prior arrests.

43.      Mr. Hearns was arrested for felony possession of a concealed weapon without a CCW.

44.      Mr. Hearns was in jail overnight.

45.      Mr. Hearns bailed out on bail or was released on personal recognizance.

46.      The City caused him to be held in the LA County jail and the City referred his case for prosecution.

47.      A few weeks after the arrest the prosecutor sent Mr. Hearns a letter informing him that the prosecutor had nolle prosequi the prosecution.

**Garry Matthews' Arrest and Detention**

48.      Mr. Matthews, a Tennessean, who lawfully owned a gun there, was arrested for unlicensed carriage while visiting family in California on 9/27/2019.

49.      Mr. Matthews was a resident of Tennessee at the time of his arrest and detention.

50.      Mr. Matthews had a license issued in Tennessee to carry a handgun concealed outside the home at the time of his arrest and detention.

51.      While driving his car in LA Mr. Matthews was arrested by the LAPD after LAPD stopped his car and found a loaded handgun in a pocket in the driver's side door.

52.     Mr. Matthews had been in California for a couple weeks living with his in-laws while he found a place for his wife and himself to live in the City of Los Angeles.

53.     He was doing some volunteer work with a youth football team.  After an event with the team, he gave one of the football players a ride home in his 2006 Chevy Tahoe displaying valid Tennessee plates that was insured and validly registered to him.  The football player lived in the city of Los Angeles.

54.     On the way to the football player's house, Mr. Matthews' Chevy Tahoe was stopped by LAPD.

55.     Mr. Matthews can see no reason for the stop.

56.     The officer said that the stop was due to the tint on his windows.  Mr. Matthews does have tint, but it is not a dark tint. (In California the front driver and passenger windows can be tinted but only to a certain level).

57.     The officer ordered Mr. Matthews out of the Chevy Tahoe.

58.     The officer verified license, insurance, and registration.

59.     As was his right Mr. Matthews demanded to know why he was stopped and detained and the officer told him this was protocol.

60.     Once out of the car, the officer searched Mr. Matthew's Chevy Tahoe without Mr. Matthews' consent.

61.     Mr. Matthews had a handgun in a pocket in the driver's door.  The officer discovered the gun.

62.     The gun is registered to Mr. Matthews in Tennessee. Mr. Matthews has a license to carry a concealed weapon in Tennessee.

63.     Mr. Matthews has worked as an armed security guard.

64.     Mr. Matthews was arrested for felony possession of a concealed weapon.

65.     The City caused him to be held in the LA County jail and on information and belief the City referred his case for prosecution.

66.     Mr. Matthews was in jail overnight.

67.     He bailed out on $30,000 bail for which he had to pay approximately $3,500.

68.     He has no prior record.

69.     He eventually entered into a deferred sentencing agreement.

70.     He entered a guilty plea to a misdemeanor gun possession. He successfully completed all the terms of his probation including 100 hours of community service.

71.     Upon completion of all the terms of his probation, he withdrew the plea according to the terms of the deferred sentencing agreement and the case was dismissed.

72.     The injury to Mr. Matthews caused by the defendants' policies continued from the time of his arrest until the dismissal of the prosecution against him.

73.     Mr. Matthews had to pay for a lawyer to represent him.

## CCW POLICIES ADOPTED BY THE CITY OF LOS ANGELES ARE UNCONSTITUTIONAL

### General Prohibition of California State Law against Carrying Loaded or Unloaded Concealed Weapons without a CCW issued by the local Chief or Police or Sheriff

74.     California has a statutory scheme regulating firearms.

75.     State law generally prohibits carrying concealed firearms in public, whether loaded or unloaded. Cal. Penal Code § 25400; *Id.* § 25605. State law also generally prohibits carrying loaded firearms on the person or in a vehicle in any public place or on any public street, in either an incorporated city or a "prohibited area" of "unincorporated territory." *Id.* § 25850.

76.     Finally, state law generally prohibits carrying unloaded handguns openly on the person in a public place or on a public street, in either an incorporated city or a "prohibited area" of an "unincorporated area of a county." *Id.* § 26350.

77.     But, all is not lost for handgun owners who want to carry their handguns outside the home or place of business for the Constitutional purpose of self-defense. The prohibition of § 25400 does not apply to those who have been issued licenses to

carry concealed weapons ("CCWs") by their local Sheriff or Police Chief. *Id.* §
26150; *Id.* § 26155.

### California Delegates to Sheriff or Chief of Police Discretion Whether to Issue CCWs

78.    A key provision of the State's licensing regime is that the statute regarding
issuance of licenses to carry outside the home delegates to the unfettered discretion of
the County Sheriff or Police Chief  the decision whether to issue licenses if the
applicant meets the State-imposed requirements regarding residency and course of
training upon a showing that: "[t]he applicant is of good moral character," and
"[g]ood cause exists for issuance of the license". *See* Cal. Penal Code § 26150(a)
("… the sheriff of a county may issue a license to [applicant upon proof that:
applicant is of good moral character, shows good cause, and is a resident of the
county, completes course of training]") (emphasis added); Cal. Penal Code § 26155
(same "may-issue" rule for "the chief or other head of a municipal police
department").

79.    The statutes allow the local Sheriff or Police Chief to establish their own
policy for the issuance of CCWs because the statutes allow them to set the definition
of "good cause exists for issuance of the license." Cal. Penal Code § 26150(a)(2); Cal.
Penal Code § 26155(a)(2).

80.    This provision delegating the State's authority is one of the most important
provisions in the entire statutory regime because it effectively vests authority to
establish policy governing the carriage of handguns outside the home in the local
Sheriff or Chief who acts as the policymaker for the county or municipality
respectively.

81.    A Sheriff's or Chief's policy can range from "no issue" to "shall issue"
depending on how the Sheriff or Chief chooses to define "good cause."

///

///

AMENDED CLASS ACTION COMPLAINT

82.     For example, the Ventura County Sheriff has established a policy of issuing CCWs under which "a [general] need for personal safety or self-defense" satisfies the "good cause" provision of the statute.

83.     Moreover, enforcement of the State laws sometimes varies with rural counties being more lenient and urban counties strictly enforcing all firearms laws. California law also requires all guns to be registered.

84.     A sheriff or a chief of police acts for the county or municipality when they exercise the "may issue" discretion delegated to them by the State under the statute to establish a definition of "good cause."

85.     A sheriff or a chief of police acts for the county or municipality when they decide how strictly or leniently they enforce firearms laws or they implement an enforcement policy set by the county or municipality.

**The Los Angeles Board of Police Commissioners and the LAPD**

86.     The Los Angeles Board of Police Commissioners, also known as the Police Commission, is a five-member civilian body that oversees the LAPD pursuant to the powers granted it by the City of Los Angeles in the City Charter.

87.     The Board's five civilian members are appointed by the Mayor and confirmed by the Los Angeles City Council.[2]

88.     The Police Commission sets overall policy for the LAPD while the Chief of Police manages the daily operations of the Department and implements the Police Commission's policies or policy direction and goals.

///

///

///

---

[2] The Function and Role of the Board of Police Commissioners, L.A. Police.Dep't,http://www.lapdonline.org/police_commission/content_ basic_view/900 [https://perma.cc/BP23-3PPJ]

AMENDED CLASS ACTION COMPLAINT

89.     The Board's five-member civilian body functions "like a corporate board of directors" for the Los Angeles Police Department, taking on roles that include developing and analyzing police policies and monitoring policy implementation.[3]

90.     The Police Commission works in conjunction with the Chief of Police who acts as a chief executive officer and reports to the Board.

91.     Under the City Charter, the Board of Police Commissioners shall have the power to issue instructions to the Chief of Police concerning the exercise of the authority conferred on the Chief of Police by the City Charter.

92.     The Chief of Police reports to the board and the rest of the department reports to the Chief.

93.     The Chief of Police exercises their duties subject to the City, the provisions of the Charter, the rules of the Police Department, and the instruction of the Board of Police Commissioners.

**The City of Los Angeles Adopted a "No Issue" CCW policy to Impose a Total Ban on Carriage of Handguns outside the Home for Self-Defense**

94.     The Los Angeles City Council expresses its policy on CCWs for handguns as follows:

> The Board of Police Commissioners shall have power to issue to any person*, who in the judgment of said board, shall have such privilege*, a written permit to carry concealed any of the weapons [such as a pistol] specified in the preceding section. (emphasis added)

---

[3] Police Commission, L.A. Police Dep't, http://www.lapdonline.org/police_commission [https://perma.cc/C7EZ-WPTE]. The Board's five civilian members are appointed by the Mayor and confirmed by the Los Angeles City Council. The Function and Role of the Board of Police Commissioners, L.A. Police Dep't,http://www.lapdonline.org/police_commission/content_ basic_view/900 [https://perma.cc/BP23-3PPJ].

95.     Los Angeles Municipal Code Secs. SEC. 55.01 (Concealed Weapons –

Permit); 55.02 (Concealed Weapons – Permit – Record).

96.     The City of Los Angeles also has adopted a comprehensive set of municipal

ordinances that regulate the sale, possession and use of firearms and ammunition

within its boundaries. Los Angeles Municipal Code Sec. 55.00 *et seq.* (Firearms –

Dangerous Weapons) (prohibiting discharging pistol without written permit from

Board of Police Commissioners).

97.     For example, Section 55.00 provides that:

> No person shall fire, shoot or discharge any gun, rifle, pistol or other
>
> firearm, or any air-gun, air-rifle or air-pistol, or any spring-gun, spring-
>
> rifle or spring-pistol, or any carbon dioxide or other gas operated gun,
>
> rifle or pistol without having first obtained a written permit from the
>
> Board of Police Commissioners.

98.     Los Angeles Municipal Code Sec. 55.00 *et seq.* (prohibiting discharging pistol

without written permit from Board of Police Commissioners).

99.     Some of the City's laws are more restrictive than the corresponding State

provisions.

100.     For example, the Los Angeles Municipal Code provides that:

> No person shall fire, shoot or discharge any gun, rifle, pistol or other
>
> firearm, or any air-gun, air-rifle or air-pistol, or any spring-gun, spring-
>
> rifle or spring-pistol, or any carbon dioxide or other gas operated gun,
>
> rifle or pistol without having first obtained a written permit [CCW] from
>
> the Board of Police Commissioners.

Los Angeles Municipal Code Sec. 55.00 (prohibiting discharging pistol without

written permit from Board of Police Commissioners).

101.     Los Angeles Municipal Code Sec. 55.00 is more restrictive than any provision

in State law because it does not have any type of immediate danger" exception for

self-defense. Cal. Penal Code § 26045(a) (West 2012). The State law immediate

danger exception is also incorporated into the unloaded open carry bans. See Cal. Penal Code §§26362, 26405(f) (West 2012).

### The Board of Police Commissioners Has Authority to Issue CCW Licenses to Residents of the City.

102.    The City has empowered the Los Angeles Board of Police Commissioners to issue CCW licenses to residents of the City "who in the judgment of [the Board of Police Commissioners], shall

have such privilege." Los Angeles Municipal Code Secs. SEC. 55.01 (Concealed Weapons – Permit).[4]

103.    The Board is subject to the City but the Board is the policymaker for the Chief and the LAPD.

104.     The Board's five civilian members are appointed by the Mayor and confirmed by the Los Angeles City Council.[5]

105.    The Board's five-member civilian body functions "like a corporate board of directors" for the Los Angeles Police Department, taking on roles that include developing and analyzing police policies and monitoring policy implementation.[6]

---

[4] Pursuant to California Penal Code section 26155, in the City of Los Angeles, the Chief of Police of the Los Angeles Police Department ("LAPD" or "Department") may issue a license to a person to carry a pistol, revolver, or other firearm capable of being concealed upon the person upon proof that the person applying for the license is of good moral character, that good cause exists for the issuance of the license, that the person is a resident of the City of Los Angeles, and the person has completed a required course of training.

[5] The Function and Role of the Board of Police Commissioners, L.A. Police.Dep't,http://www.lapdonline.org/police_commission/content_ basic_view/900 [https://perma.cc/BP23-3PPJ]

[6] Police Commission, L.A. Police Dep't, http://www.lapdonline.org/police_commission [https://perma.cc/C7EZ-WPTE]. The Board's five civilian members are appointed by the Mayor and confirmed by the Los Angeles City Council. The

106.    The Board adopted policies setting forth the criteria they consider when deciding when to issue a CCW license which allows issuance of a CCW only if the applicant can prove a special need for self-defense.

107.    The LAPD's current policy defines "good case" as follows:

> GOOD CAUSE: The policy LAPD has adopted is that good cause exists if there is convincing evidence of a clear and present danger to life or of great bodily injury to the applicant, his (or her) spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm.

LAPD Carry Concealed Weapon License Policy.[7]

108.   Pursuant to the Judgment of Declaratory Relief in *Anthony Assenza, et al. v. City of Los Angeles*, et al., certain other rules and guidelines apply to the interpretation and implementation of the Department's good cause policy. *Id.*

**The City of Los Angeles Uses the "good cause" Provision and its "may issue" Discretion to Impose a Total Ban on Carriage of Handguns outside the Home for Self-Defense**

109.   The City of Los Angeles uses the "good cause" provision and its "may issue" discretion to impose what amounts to a total ban on carriage of handguns outside the home for self-defense.

---

Function and Role of the Board of Police Commissioners, L.A. Police

Dep't,http://www.lapdonline.org/police_commission/content_ basic_view/900 [https://perma.cc/BP23-3PPJ].

[7] https://lapdonlinestrgeacc.blob.core.usgovcloudapi.net/lapdonlinemedia/2022/02/Updated-2021-CCW-concealed-weapons-Policy.pdf

AMENDED CLASS ACTION COMPLAINT

110.    The polices of the City, the Board and the LAPD establish the meaning of "good cause" as a Catch 22 to totally ban carriage of handguns outside the home and place of business: you are free to carry a concealed handgun outside the home if you get a license from us, but, we will not give you a license; and if you carry a handgun outside the home or place of business without a license, we will arrest you, charge you with a crime, and detain you.

111.    The only persons who satisfy the Board's definition of "good cause" are people such as Judges and law enforcement officers.

## SUBSTANTIVE ALLEGATIONS FOR CLAIMS
## FIRST CAUSE OF ACTION
### (Second Amendment Arrest/ Detention Claim)

112.    The preceding paragraphs are incorporated as though fully stated herein.

///

///

113.    the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.

114.    The City's gun control regime during the Class Period (including its laws, customs, practices and policies banning the carrying and transporting of handguns in public) violated the Second and Fourteenth Amendments because it effected a total ban on carrying handguns outside the home.

115.    An applicant for a CCW under the defendants' definition of "good cause" shows "good cause" only if they can demonstrate a special need for self-protection distinguishable from that of the general community and satisfy the City, the Board, and LAPD's unfettered discretion.

116.    Defendants' definition of "good cause" does not contain only "narrow, objective, and definite standards" guiding licensing officials, but instead requires the

"appraisal of facts, the exercise of judgment, and the formation of an opinion," by licensing officials.

117.    Criminalizing conduct protected by the Second Amendment through the Fourteenth Amendments violates the Amendments.

118.    The City enforced its unconstitutional gun control regime against the Second Amendment Named Plaintiffs Dominic Hunn, Garry Matthews, and Jamar Hearns and the other Second Amendment Arrest Class members in violation of their Second and Fourteenth Amendment rights by arresting and detaining them.

119.    The City enforced its unconstitutional gun control regime against Named Plaintiffs' and the other Second Amendment Arrest Class members directly through its LAPD which arrested and detained or caused to be detained people pursuant to its unconstitutional gun control regime.

120.    The City also enforced its unconstitutional gun control regime against other Second Amendment Arrest Class members indirectly through other police forces by enabling other police forces in the City to arrest and detain them pursuant to its unconstitutional gun control regime. The City received into custody, processed, and detained, or processed and or caused to be detained persons arrested by other law enforcement agencies in the City. The City is liable for arresting and detaining such persons. Alternatively, the City is liable for detaining such persons even if it is not liable for the actual arrests.

121.    The City is also liable for causing such persons to be incarcerated in the LA County Jail.

122.    The moving force of the constitutional violations was the City's enactment and enforcement of its unconstitutional gun control regime and its zero tolerance enforcement policy of arresting and detaining persons for carrying a handgun outside the home without a CCW.

123.    The Second Amendment Named Plaintiffs and the other class members are therefore entitled to monetary compensation and the other relief described herein.

124.    The City had a policy of imposing a total ban on carrying handguns outside the home.

125.    Alternatively, independent of any State licensing regime and independent of any authority delegated to it by the State, the City had a custom of denying virtually all CCW applications which effectively imposed a total ban on carrying handguns outside the home. The City knew or should have known or must have known of the custom or practice, did nothing to stop it, and in fact acquiesced in it.

126.    Named Plaintiff and the other class members suffered humiliation, emotional distress, loss of earnings, general damages, and legal and bail expenses that resulted from being arrested under an unconstitutional policy.

127.    Named Plaintiff and the other class members are therefore entitled to the relief described below.

## SECOND CAUSE OF ACTION

### (Fourteenth Amendment Right to Travel - Nonresident Class Arrest Claim)

128.    The preceding paragraphs are incorporated as though fully stated herein.

129.    The City's gun control regime during the Class Period (including its laws, customs, practices and policies banning the carrying of handguns in public) violated the 14th Amendment rights to travel and equal protection with respect to non-residents because it effected a total ban on carrying pistols in the City for non-residents because the gun control regime prevented registering their handguns and licensing them and the LAPD police Chief refused to register their handguns or issue them licenses and continues to do so.

130.    The City enforced its unconstitutional gun control regime against the Non-resident Named Plaintiffs' and the other Nonresident Class members in violation of their 5th Amendment rights by arresting and detaining them.

131.    The City enforced its unconstitutional gun control regime against the Non-resident Named Plaintiffs' and the other Nonresident Class Arrest Class members

directly through its LAPD which arrested and detained people pursuant to its unconstitutional gun control regime.

132.    The City also enforced its unconstitutional gun control regime against other Nonresident Class Arrest Class members indirectly through other police forces by enabling other police forces in the City to arrest and detain them pursuant to its unconstitutional gun control regime. The City received into custody, processed, and detained persons arrested by other police forces in the City. The City is liable for detaining such persons even if it is not liable for the actual arrests.

133.    The moving force of the constitutional violations was the City's enactment and enforcement of its unconstitutional gun control regime.

///

134.    The Non-resident Named Plaintiffs and the other Nonresident Class Arrest Class members suffered humiliation, emotional distress, physical harm, loss of earnings, general damages, and legal expenses that resulted from being arrested and/or detained because of the City's enactment and enforcement of its unconstitutional gun control regime.

135.    The Non-resident Named Plaintiffs and the other Nonresident Class Arrest Class members are therefore entitled to monetary compensation and the other relief described herein.

## RULE 23 ALLEGATIONS

136.    Named Plaintiffs on behalf of themselves and the Second Amendment Class and the Nonresident Class Arrest Class bring this action under Rules 23(a), 23(b) (2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following two classes consisting of each person who:

137.    **Second Amendment Class**: (i) in the period beginning two years before the date of filing of the original complaint in this case and going forward until the case is resolved; (ii) was arrested by the City's police force; (iii) or booked and detained or caused to be detained by the City's police force even though arrested by another law

enforcement agency; (iv) for violation of any of the California laws regarding carrying a handgun or ammunition without a CCW; (v) while carrying a pistol outside their home or place of business concealed or openly.

138. **Nonresident Class Arrest Class**: (i) in the period beginning two years before the date of filing of the original complaint in this case and going forward and going forward the case is terminated; (ii) was arrested and/or arrested and detained (including subjected to conditions of release) in the City for violation of for violation of any of the California laws regarding carrying a handgun or ammunition without a CCW; (iii) for conduct involving any of, or any combination of, carrying or possessing a pistol or ammunition outside their home or place of business for violation of any of the California laws regarding carrying a handgun or ammunition without a CCW; (v) while carrying a pistol outside their home or place of business concealed or openly; and (iv) while a nonresident of the State of California at the time of the arrest and/or detention.

139. Certification of the class under Federal Rule of Civil Procedure 23(b)(2) is appropriate, because the City has a policy, pattern, and practice for each claim that has uniformly affected all members the class, and injunctive relief and declaratory judgment and a judgment against the City will benefit each and every plaintiff and class member.

140. The classes are entitled to injunctive relief including sealing of their arrest and prosecution records and declaring their arrests as legal nullities.

141. Certification of the classes under Federal Rule of Civil Procedure 23(b)(3) is also appropriate, in that common questions of law and fact predominate over any individual questions, and class action treatment is superior for the fair and efficient adjudication of these class claims as detailed below.

142. The classes are entitled to monetary relief.

143. Regarding Named Plaintiffs and the other members of the Second Amendment Class and the Nonresident Class and the Right to Return Class, there are no individual

questions on the issue of liability, because all members of the Second Amendment Class and the Nonresident Class and the Right to Return Class are injured by the same policy and practices.

144.    Among the questions of law and fact common to the classes are:

1)    whether the City's refusal to issue CCWs or licenses to openly carry based on the City and the Board and the LAPD's definition of "good case" violated the Second Amendment;

2)    whether the City's refusal to issue CCWs to non-residents violated the Fourteenth Amendment;

3)    whether the City has or had a policy, custom, or practice of never allowing nonresidents to register pistols for carrying outside the home during the class period;

4)    whether Named Plaintiffs and the members of the classes are entitled to equitable relief, and, if so, what is the nature of that relief; and

5)    whether a jury can determine the general damages for an entire class using a damages matrix on the basis of a trial using a non-random sample of the class members.

145.    The Second Amendment Class and the Nonresident Class are both so numerous that joinder of all members is impracticable. The exact number of Second Amendment Class and the Nonresident Class members is unknown to plaintiffs at this time but each year over the last 3 years hundreds of people were arrested violations of the City's unconstitutional gun licensing scheme.

146.    Mr. Matthews', Mr. Hunn's, and Mr. Hearns' claims are typical of the claims of the other members of the Second Amendment Class and the Nonresident Class because Mr. Matthews, Mr. Hunn, and Mr. Hearns and all other members of the Second Amendment Class and the Nonresident Class were injured by exactly the same means, that is, by City's enforcement of its unconstitutional gun licensing scheme.

147.    Mr. Matthews, Mr. Hunn, and Mr. Hearns on behalf of themselves and the Second Amendment Class and the Nonresident Class will fairly and adequately

protect the interests of the members of the Second Amendment Class and the Nonresident Class and have retained counsel who are competent and experienced in complex federal civil rights class action litigation and criminal defense law including the City's unconstitutional gun licensing scheme.

148.    Mr. Matthews, Mr. Hunn, and Mr. Hearns on behalf of themselves and Second Amendment Class and the Nonresident Class have no interests that are contrary to or in conflict with those of the class or Second Amendment Class and the Nonresident Class.

## CLASS RELIEF DEMANDS

A.    Mr. Matthews, Mr. Hunn, and Mr. Hearns as Named Plaintiffs on behalf of themselves and all other members of the Second Amendment Class and the Nonresident Class respectfully request that this Court grant the following relief:

B.    Enter judgment in their favor on all of their claims;

C.    Declare the City's definition of "good cause" and its licensing policies are unconstitutional.

D.    Award Mr. Matthews, Mr. Hunn, and Mr. Hearns and the other members of the proposed classes nominal damages in connection with any declaration that the City's definition of "good cause" and its licensing policies unconstitutional.

E.    Grant a jury trial on all claims so triable.

F.    Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) and certifying the Second Amendment Class and the Nonresident Class, and designating Mr. Matthews, Mr. Hunn, and Mr. Hearns as the proper representatives of the Second Amendment Class, and Mr. Matthews as the proper representative of the Nonresident Class and appointing William Claiborne as class counsel.

G.    Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b) (2) and 23(b)(3).

H.   Award Mr. Matthews, Mr. Hunn, and Mr. Hearns and all other members of the Second Amendment Class and Nonresident Class injunctive relief in the form of sealing their arrest records and prosecution records and declaring their arrests legal nullities;

I.   Award all Mr. Matthews, Mr. Hunn, and Mr. Hearns and class members compensatory and consequential damages in an amount to be determined at trial;

J.   Award plaintiffs attorneys' fees and costs incurred in bringing this action under 42 U.S.C. § 1988 or as determined under the "common fund" rule; and

K.   Grant such other relief as this Court deems just and proper.

Respectfully submitted,


/s/ Jovan Blacknell
JOVAN BLACKNELL (SBN 237162)
Counsel for Mr. Matthews, Mr. Hunn, and Mr. Hearns on behalf of themselves and the putative class members



Respectfully submitted,


/s/ William Claiborne
WILLIAM CLAIBORNE

*Pro hac vice* granted

Counsel for Mr. Matthews, Mr. Hunn, and Mr. Hearns on behalf of themselves and the putative class members

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AMENDED CLASS ACTION COMPLAINT

1

## JURY DEMAND

2

Plaintiffs demand a jury of six as to all claims so triable.

3

4

<u>/s/ Jovan Blacknell</u>

5

JOVAN BLACKNELL (SBN 237162)

Counsel for Plaintiffs Mr. Matthews, Mr. Hunn,

6

and Mr. Hearns and the classes

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED CLASS ACTION COMPLAINT