1  MICHAEL N. FEUER, City Attorney (SBN 111529x)
2  SCOTT MARCUS, Senior Assistant City Attorney (SBN 184980)
   GABRIEL S. DERMER, Supervising City Attorney (SBN 229424)
3  BENJAMIN CHAPMAN, Deputy City Attorney (SBN 234436)
4  benjamin.chapman@lacity.org
   200 North Main Street, 6th Floor, City Hall East
5  Los Angeles, California 90012
6  Telephone Number:  213.978.7556
   Facsimile Number: 213.978.8214
7
8  Attorneys for Defendants,
   CITY OF LOS ANGELES,
9  LOS ANGELES POLICE DEPARTMENT, and
10 LOS ANGELES BOARD OF POLICE COMMISSIONERS
11
12              **UNITED STATES DISTRICT COURT**
13      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
14
15 GARRY MATTHEWS, DOMINIC ROSS )   Case No.: 22-cv-02944-FLA-PD
   HUNN, and JAMAR HEARNS,                      )
16 individually and as class representatives,   )   **THE CITY DEFENDANTS NOTICE OF**
                                                )   **MOTION AND MOTION TO DISMISS THE**
17                          Plaintiffs,          )   **FIRST AMENDED COMPLAINT;**
                                                )   **MEMORANDUM OF POINTS AND**
18 vs.                                          )   **AUTHORITIES IN SUPPORT**
                                                )
19 CITY OF LOS ANGELES, LOS                     )
20 ANGELES POLICE DEPARTMENT,                   )   Date:      December 2, 2022
   AND LOS ANGELES BOARD OF                     )   Time:      1:30 p.m.
21 POLICE COMMISSIONERS,                        )   Ctrm:      6B-First Street Courthouse
                                                )   Judge:     Hon. Fernando L. Aenlle-Rocha
22                          Defendants.          )
23                                              )
                                                )   Action Filed: 05/03/2022
24                                              )
25                                              )
26 _____ )
27
28

                                            1
**NOTICE OF MOTION AND MTD FAC; MEM. OF PS&AS ISO DEFENDANT'S MTD FAC**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 2, 2022, at 1:30 p.m., or as soon thereafter as this motion may be heard in Courtroom 6B, 6th Floor of the above-titled Court, located at 350 W. 1st Street, Los Angeles, California 90012, defendants City of Los Angeles, the Los Angeles Police Department, and the Los Angeles Board of Police Commissioners (collectively, the "City") will and hereby does move this Court for an order dismissing Plaintiffs' First Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all records and papers on file in this action, and any evidence or oral argument offered at any hearing on this motion. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 30, 2022. (Declaration of Benjamin Chapman, ¶ 4.)

Dated:  October 7, 2022

OFFICE OF THE CITY ATTORNEY OF LOS ANGELES

By:
 */s/ Benjamin Chapman*
Benjamin Chapman

Attorneys for Defendants
CITY OF LOS ANGELES,
LOS ANGELES POLICE DEPARTMENT,
and LOS ANGELES BOARD OF POLICE
COMMISSIONERS

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND ...............................................................................3

    A.  California State Gun Laws. ...................................................................3

    B.  The City's Policy on Issuing Concealed Carry Licenses. ...........................4

    C.  *N.Y. State Rifle & Pistol Ass'n v. Bruen.* ........................................4

    D.  Plaintiffs' Lawsuit. ..............................................................................6

III.  LEGAL STANDARD .........................................................................................8

    A.  Rule 12(b)(6) Motion to Dismiss. .......................................................8

IV.  PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW.....................9

    A.  Plaintiffs' Second Amendment Claim (Claim One) is Subject
        to Dismissal. .......................................................................................9

        1.  The City's enforcement of Penal Code sections 25400(a)(1) and
            25850(a) did not violate Plaintiffs' constitutional rights................10

        2.  *Second*, the City's alleged "official policy on issuing CCWs"
            was not the "moving force" for the alleged constitutional violation
            (the arrests)..................................................................................13

V.  MATTHEWS' FOURTEENTH AMENDMENT RIGHT TO TRAVEL CLAIM
(THE SECOND CLAIM) IS BARRED AS A MATTER OF LAW.........................................16

    A.  Plaintiff Matthews' Right to Travel Claim is Time-Barred........................16

    B.  Even Assuming Arguendo Plaintiff Matthews' Right to Travel
        Claim is not Time-Barred, it Fails as a Matter of Law. ...............................17

        1.  The City did not, and does not require anyone, resident or
            non resident, to *register* their handguns, so there is no right to travel
            violation…...................................................................................18

        2.  There is no claim against the City for non-issuance of CCW licenses
            to non-residents because non-residents are ineligible to receive licenses
            under *State statutory law*, not City ordinances; however, even if the
            Court considers this claim, it still fails as a matter of law…............19

VI.  CONCLUSION ...................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred v. Walt Disney Co.*,
   388 F. Supp. 3d 1174 (C.D. Cal. 2019) ........................................................ 8

*Anderson v. Baseball Club of Seattle*,
   No. C09-0850RAJ, 2010 WL 5463828, 2010 U.S. Dist. LEXIS 138544 (W.D.
   Wash. Dec. 28, 2010) .................................................................................. 12

*Anderson v. Warner*,
   451 F.3d 1063 (9th Cir. 2006) ...................................................................... 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 8

*Attorney Gen. of New York v. Soto-Lopez*,
   476 U.S. 898 (1986) ...................................................................................... 17

*Bach v. Pataki*,
   408 F.3d 75 (2d Cir. 2005) ................................................................ 20, 21, 22

*Best Auto Repar, Inc. v. Travelers Cas. Ins. Co.*,
   No. 2:21-cv-02874-FLA, 2022 WL 2912090, 2022 U.S. Dist. LEXIS 133032 (C.D.
   Cal. July 21, 2022) ....................................................................................... 24

*City of Canton v. Harris*,
   489 U.S. 378 (1989) ...................................................................................... 15

*Colony Cove Props., LLC v. City of Carson*,
   640 F.3d 948 (9th Cir. 2011) ........................................................................ 17

*Cooper v. Dillon*,
   403 F.3d 1208 (11th Cir. 2005) .................................................................... 15

*Dougherty v. City of Covina*,
   654 F.3d 892 (9th Cir. 2011) ............................................................ 2, 10, 13

*Durham v. Prudential Ins. Co.*,
   236 F. Supp. 3d 1140 (C.D. Cal. 2017) .......................................................... 8

ii

*Dykes v. Broomfield*,
  No. 11-cv-04454-SI, 2022 WL 4227241, 2022 U.S. Dist. LEXIS 165189 (N.D. Cal.
  Sept. 13, 2022) ................................................................................... 11

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*,
  713 F.3d 502 (9th Cir. 2013) ................................................................. 24

*Erdman v. Cochise County*,
  926 F.2d 877 (9th Cir. 1991) ................................................................. 10

*Ewing v. City of Stockton*,
  588 F.3d 1218 (9th Cir. 2009) ............................................................... 13

*Fiscal v. City and County of San Francisco*,
  158 Cal.App.4th 895 (2008) ................................................................... 7

*Flanagan v. Harris*,
  No. LA CV16-06164 ............................................................................. 20

*Garmon v. County of L.A.*,
  828 F.3d 837 (9th Cir. 2016)) ............................................................... 14

*Grossman v. City of Portland*,
  33 F.3d 1200 (9th Cir. 1994) ................................................................. 15

*Houston v. Medtronic, Inc.*,
  957 F. Supp. 2d 1166 (C.D. Cal. 2013) .................................................... 8

*Johnson v. Dekalb County*,
  391 F. Supp. 3d 1224 (N.D. Ga. 2019) .................................................. 14

*Marilley v. Bonham*,
  844 F.3d 841 (9th Cir. 2016) ................................................................. 21

*Monell v. Dept. of Soc. Servs. Of the City of New York*,
  436 U.S. 658 (1978) ....................................................................... *passim*

*New York State Rifle Ass'n v. Bruen*,
  No. 20-843, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (June 23, 2022) ......... *passim*

*Nichols v. Brown*,
  859 F. Supp. 2d 1118 (C.D. Cal. 2012) .................................................. 16

*Patton v. Przybylski*,
    822 F.2d 697 (7th Cir. 1987) ....................................................................... 9

*People v. Brown*,
    2007 WL 1031676 ..................................................................................... 19

*People v. Rodriguez*,
    171 N.Y.S.3d 802 (Sup Ct. NY County 2022) .................................... 11, 12

*Peruta v. County of San Diego*,
    758 F. Supp. 2d 1106 (S.D. Cal. 2010) .............................................. 17, 22

*Peruta v. County of San Diego*,
    824 F.3d 919 (9th Cir. 2016) (en banc) ....................................................... 4

*Peterson v. LaCabe*,
    783 F. Supp. 2d 1167 (D. Colo. 2011) ...................................................... 21

*Peterson v. Martinez*,
    707 F.3d 1197 (10th Cir. 2013) ................................................................. 22

*Raulinaitis v. Ventura County Sheriffs Dept.*,
    No. CV 13-2605-MAN, 2014 U.S. Dist. LEXIS 140874 (C.D. Cal. Sep. 30, 2014) 23

*Saenz v. Roe*,
    526 U.S. 489 (1999) ....................................................................... 17, 18, 19

*Shine v. Fuston*,
    No. 20cv2036-LAB-DEB, 2021 WL 4460885, 2021 U.S. Dist. LEXIS 187180 (S.D. Cal. Sep. 29, 2021) ............................................................... 15

*Surplus Store & Exchange, Inc. v. City of Delphi*,
    928 F.2d 788 (7th Cir. 1991) ..................................................................... 16

*Villegas v. Gilroy Garlic Festival Ass'n*,
    541 F.3d 950 (9th Cir. 2008) (en banc) ..................................................... 12

*Waggy v. Spokane County Wash.*,
    594 F.3d 707 (9th Cir. 2010) ..................................................................... 15

*Yang v. Boudreaux*,
    No. 1:21-cv-00148-BAM, 2021 U.S. Dist. LEXIS 169395 (E.D. Cal. Sept. 7, 2021) ..................................................................................................... 9, 12

**Statutes**

18 U.S.C. § 922(g)(1) .................................................................................. 6

42 U.S.C. § 1983 ........................................................................ 1, 9, 13, 16

Cal. Govt. Code § 53071 ........................................................................... 19

California Penal Code section 25400(a)(1) ........................................ *passim*

California Penal Code section 25850(a) ......................................... 1, 2, 6, 11

California Penal Code section 26155 ....................................................... 1, 3

Fla. Stat. § 790.25(5) ............................................................................... 11

Fla. Stat. § 790.053 .................................................................................. 11

Pen. Code § 25610(a) ........................................................................... 3, 19

Pen. Code § 26155(a)(3) .................................................................. 6, 7, 20

Pen. Code § 26185 ........................................................................... 4, 23

Penal Code section 25610 .......................................................................... 3

Penal Code section 25655 .......................................................................... 3

S.C. Code Ann. § 16-23-20(9) ................................................................. 11

S.C. Code Ann. § 16-23-20(12) ............................................................... 11

**Other Authorities**

62 Ops. Cal. Atty. Gen 508, 1979 WL 29270, 1979 Cal. AG LEXIS 54 (Sep. 18, 1979) ........................................................................................... 23

Second Amendment ......................................................................... *passim*

Fourth Amendment .................................................................................... 9

Fourteenth Amendment ..................................................................... *passim*

Federal Rule of Civil Procedure Rule 5.1 ................................................ 20

https://oag.ca.gov/firearms/pubfaqs#26 .................................................. 19

U.S. Const. amend. II ........................................................................................ 9

U.S. Const. amend. XIV, § 1 ......................................................................... 17

United States Constitution Article IV Privileges and Immunities Clause ..................... 21

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants City of Los Angeles, the Los Angeles Police Department ("LAPD"), and the Los Angeles Board of Police Commissioners (the "Board") (collectively, the "City") file this motion to dismiss Plaintiffs' First Amended Complaint ("FAC").

## I.   INTRODUCTION

Plaintiffs Hunn and Matthews were arrested by City police officers for violating California Penal Code section 25400(a)(1), which prohibits carrying a concealed handgun in a vehicle.  (FAC ¶¶ 34, 51; Chapman Decl. Exhs. A-B [arrest pages showing Penal Code charges].)  Several years later, this 42 U.S.C. § 1983 ("Section 1983") lawsuit was filed.  After the lawsuit was filed, Plaintiff Hearns was arrested by City police officers for violating California Penal Code section 25850(a), which prohibits carrying a loaded firearm on a person while in public.  (FAC ¶ 41 Chapman Decl. Exh. C [arrest page showing Penal Code charge].)

Recently, the United States Supreme Court, in *New York State Rifle Ass'n v. Bruen*, No. 20-843, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (June 23, 2022) ("*Bruen*"), declared unconstitutional New York's statutory requirement that applicants for unrestricted concealed carry licenses must demonstrate "proper cause," which required applicants to show a special need for self-protection distinguishable from that of the general community.  142 S. Ct. at 2122-23.  It is true that California had a similar "good cause" requirement for the issuance of concealed carry licenses; under California Penal Code section 26155, a person may obtain a license to carry a concealed weapon from their local county sheriff or city police chief upon proof of certain qualifications, including that "good cause exists for issuance of the license."   (Pen. Code § 26155(a)(2).)  And it is also true that the City had an "official written policy on issuing CCWs [concealed carry licenses] that is … conditioned on a finding of 'good cause,' [which] the Board [of Police Commissioners] defines … as a special need to defend against threats specific to themselves." (FAC ¶ 18.)

But that's as far as it goes.  This lawsuit is actually not about the policy or *Bruen* at all.  Indeed, neither Plaintiff alleges they applied for a concealed carry license and were denied (unlike the plaintiffs in *Bruen*).  Rather, this lawsuit is an attack on Plaintiffs' *arrests* for violating two *State penal code statutes*, Penal Code section 25400(a)(1), which prohibits carrying a concealed firearm in a vehicle, and Penal Code section 25850(a), which prohibits carrying a loaded firearm in public.  (*See*, *e.g.*, FAC ¶ 118 [Plaintiffs "Second and Fourteenth Amendment rights" were "violated" when they were "arrest[ed] and detain[ed]"]; ¶ 119 [rights violated when "LAPD … arrested and detained … people"]; ¶¶ 130-31 [same for Claim 2].)

For example, Plaintiffs' first claim for violation of the Second Amendment seeks to hold the City liable for money damages under *Monell v. Dept. of Soc. Servs. Of the City of New York*, 436 U.S. 658 (1978) ("*Monell*") based on a theory that Plaintiffs were deprived of their constitutional rights when they were *arrested* for violating Penal Code sections 25400(a)(1) and 25850(a).  (*E.g.*, FAC ¶¶ 118-19.)  But there are at least two fatal problems with Plaintiffs' Second Amendment *Monell* claim.

"In order to establish liability for governmental entities under *Monell*, a plaintiff must prove (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

Plaintiffs, however, cannot establish the first element—that they were deprived of a constitutional right—because the statutes that Plaintiffs were arrested under, Penal Code sections 25400(a)(1) and 25850(a) are constitutional!  *Neither has been declared unconstitutional*.  And *Bruen* does not make them unconstitutional.

Moreover, Plaintiffs cannot establish the fourth element because the City's "official written policy on issuing CCWs" (FAC ¶ 18) was not the "moving force" for the alleged

constitutional violation (Plaintiffs' arrests).   Rather, as explained herein, Plaintiffs' violations of constitutional California penal statutes caused their arrests.

The remaining claim, which is only brought by plaintiff Matthews, an alleged non-California resident, is that Matthews' arrest violated his right to travel under the Fourteenth Amendment's Privileges and Immunities Clause.  This claim fails for a number of reasons as discussed in Section V, infra.

In sum, the FAC fails as a matter of law, and it should be dismissed with prejudice.

## II.   FACTUAL BACKGROUND

### A.   California State Gun Laws.

*California* statutes, not City ordinances, generally prohibit a person from carrying a concealed handgun in public.  (FAC ¶ 75, citing Pen. Code §§ 25400, 25605.)  However, there are a number of exceptions to these statutes; for example, there are statutes allowing persons who work in certain occupations to carry loaded firearms in public.  (*Id.* §§ 25450, 25620, 25630, 25900, 26030, 26405.)  There are also exceptions for carrying firearms in public for certain specified purposes, like hunting; transporting handguns in the locked trunk of, or inside a locked container in a vehicle; and carrying a firearm in public when a person believes that any person or the property of any person is in immediate, grave danger, which can be addressed by the carrying of the weapon.  (*Id.* §§ 25610,[1] 25640, 26045, 26389, 26405.)

The FAC focuses on another exception, Penal Code section 26155, which allows a person to carry a concealed weapon (a "CCW") in public if they have a license, which can

---

[1] For example, Penal Code section 25610 provides that "Section 25400 [the law prohibiting concealed carry in public] shall not be construed to prohibit any citizen of the United States over the age of 18 years who resides *or is temporarily within this state*, and who is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, from transporting or carrying any pistol, revolver, or other firearm capable of being concealed upon the person, provided that the following applies to the firearm:  [¶] (1) The firearm is within a motor vehicle and it is locked in the vehicle's trunk or in a locked container in the vehicle."  (Pen. Code § 25610(a) [emphasis added].)

be obtained from their local county sheriff or city police chief.  (*Id*. §§ 26150 and 26155.)[2] Under the California Penal Code, a city police chief "may issue" a CCW license upon proof of certain qualifications, including that the applicant is of "good moral character," that "good cause exists for issuance of the license," that the applicant "is a resident of that city," and that the applicant has "completed a course of training."  (*Id*. §§ 26155(a)(1)-(4).)

Good moral character generally refers to issues that are revealed in the required fingerprint check (*see* Pen. Code § 26185), like criminal convictions and warrants, as well as other issues like domestic violence restraining orders (or other protective orders), and mental health issues.

On the other hand, what constitutes "good cause for issuance of the license" is left to the discretion of the police chief.  (FAC ¶ 78.)

## B.   The City's Policy on Issuing Concealed Carry Licenses.

Plaintiffs allege that the City adopted "an official written policy on issuing CCWs [concealed carry licenses] that is … conditioned on a finding of 'good cause,' and the Board [of Police Commissioners] defines good cause as a special need to defend against threats specific to themselves."  (FAC ¶ 18.)

## C.   *N.Y. State Rifle & Pistol Ass'n v. Bruen.*

Although Plaintiffs' lawsuit was filed before *Bruen*, Plaintiffs' theory of the lawsuit depends entirely on *Bruen*.  There, the United States Supreme Court recently declared unconstitutional New York's statutory requirement that applicants for unrestricted concealed carry licenses must demonstrate "proper cause," which New York courts have held requires an applicant to show a special need for self-protection distinguishable from that of the general community.  *Bruen*, 142 S. Ct. at 2122-23; *see also id*. at 2156 ("New York's proper-cause requirement violates the [Second] Amendment.").  Prior to *Bruen*,

---

[2] Technically, Penal Code section 25655 provides the CCW license exception:  "Section 25400 does not apply to, or affect, the carrying of a pistol, revolver, or other firearm capable of being concealed upon the person by a person who is authorized to carry that weapon in a concealed manner pursuant to Chapter 4 (commencing with Section 26150)."  (Pen. Code § 25655.)

the law in the Ninth Circuit was that California's similar "good cause" requirement for the issuance of a CCW license was constitutional. *Peruta v. County of San Diego*, 824 F.3d 919, 939 (9th Cir. 2016) (en banc). *Bruen* overrules *Peruta*; California's "good cause" requirement is now unconstitutional, and the City is not enforcing it.

*Bruen's* holding, however, is limited; the Court clearly held that States may continue to impose licensing requirements for carrying concealed weapons. For example, the Court noted that "the vast majority of States—43 by our count—are 'shall issue' jurisdictions, where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." *Bruen*, 142 S. Ct. at 2123. The Court then held with respect to these States: "To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes…. [I]t appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." *Id*. at 2138 n.9.

Indeed, Justice Kavanaugh's concurrence (which was joined by Chief Justice Roberts) confirms this. There, Justice Kavanaugh notes "the limits of the Court's decision," specifically, that it "does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense." *Id*. at 2161 (Kavanaugh, J., concurring). Moreover, Justice Kavanaugh went on to state: "43 States employ objective shall-issue licensing regimes. Those shall-issue regimes may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling an in laws regarding use of force, among other possible requirements…. [G]oing forward, … the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so. Likewise, the 6 States including New York potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense so long as those States employ

objective licensing requirements like those used by the 43 shall-issue States." *Id*. at 2162. Thus, California's other requirements for a CCW license (good moral character, and the residency and training requirements) remain presumptively valid.[3]

### D.   Plaintiffs' Lawsuit.

Plaintiffs Hunn and Matthews allege they were wrongfully arrested for carrying concealed firearms in their vehicles in violation of California Penal Code section 25400(a)(1), which states that "[a] person is guilty of carrying a concealed firearm when the person does any of the following:  [¶] (1) Carries concealed within any vehicle that is under the person's control or direction any … firearm capable of being concealed upon the person."  (FAC ¶¶ 34, 51.)  After the lawsuit was filed, Plaintiff Hearns alleges he was arrested by City police officers for violating California Penal Code section 25850(a), which states that "[a] person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or any public street."  (*Id*. ¶ 41.)

Plaintiffs Hunn and Hearns, both City residents, do not allege they ever applied for a CCW license.  (*Id*. ¶¶ 31-47.)

On September 27, 2019, plaintiff Matthews was arrested for carrying a concealed weapon in the pocket of his vehicle's driver side door while he was driving with a minor.  (*Id*. ¶¶ 48, 51, 53.)  Matthews alleges he was a resident of Tennessee at the time of his arrest.  (*Id*. ¶ 8.)  Because he was not a City resident, Matthews could not apply for a CCW license under California statutory law.  (Pen. Code § 26155(a)(3).)

Based on these allegations, Plaintiffs assert two claims under Section 1983.  The first claim, which is brought by all Plaintiffs, alleges that their arrests violated the Second Amendment.  (FAC ¶¶ 112-27.)  This is a *Monell* claim against the City.  Plaintiffs allege that the City adopted a "an official written policy on issuing CCWs" that restricts licenses

---

[3] For example, post-*Bruen*, numerous district courts have upheld the constitutionality of 18 U.S.C. § 922(g)(1), which makes it unlawful for a felon to possess a firearm.  *See*, *e.g*., *United States v. Cockerham*, Criminal No. 5:21-CR-6-DCB-FKB, 2022 WL 4229314, 2022 U.S. Dist. LEXIS 164702, at *4 (S.D. Miss. Sept. 13, 2022) (collecting cases).

to applicants who can show a special need for self-defense based on the City's definition of the term "good cause." (*Id*. ¶¶ 18, 106-07.) Plaintiffs allege that the City used this policy to refuse to issue any CCW licenses (*e.g.*, *id*. ¶ 110), and that "the City's refusal to issue CCWs or licenses to openly carry based on the City and the Board and the LAPD's definition of 'good case' [sic] violate[s] the Second Amendment." (*Id*. ¶ 144(1).)

Despite the FAC's focus on the City's "official written policy on issuing CCWs," as well as Plaintiffs' reliance on the Supreme Court's recent *Bruen* decision, Plaintiffs at various points in their FAC also make reference to the City's so-called "gun control regime," which is allegedly made up of its "laws, customs, practices and policies banning the carrying and transporting of handguns in public." (*E.g.* FAC ¶ 114.) Plaintiffs, however, do not point to any other *City* "laws, customs, practices and policies" besides the official written policy on issuing CCW licenses. Indeed, the State has chosen to preempt all laws related to public and private handgun possession. *Fiscal v. City and County of San Francisco*, 158 Cal.App.4th 895, 909-11 (2008). Thus, Plaintiffs' reference to the *City's* alleged "laws, customs, practices and policies banning the carrying and transporting of handguns in public," is actually a reference to *California* penal laws, like, for example, the laws Plaintiffs violated, Penal Code sections 25400(a)(1) and 25850(a). (*E.g.*, FAC ¶¶ 74-76 [acknowledging "general prohibition of California State law against carrying loaded or unloaded concealed weapons"].)

The second claim, which is only brought by Matthews, alleges that his arrest violated his right to travel under the Fourteenth Amendment's Privileges and Immunities Clause. (FAC ¶¶ 128-135.) Matthews alleges that the City's "refusal to issue CCWs to non-residents violate[s] the Fourteenth Amendment." (*Id*. ¶ 124(2).) According to Matthews, non-California residents are totally banned from carrying handguns in the City because they, unlike City residents, cannot obtain a CCW license. (*Id*. ¶ 129.) However, the inability of non-California residents to obtain CCW licenses is due to State statutory law (Pen. Code § 26155(a)(3)), not a City ordinance.

Plaintiffs seek unspecified compensatory and consequential damages for humiliation, emotional distress, general damages, and legal and bail expenses "result[ing] from being arrested."  (FAC ¶ 126 [Claim 1]; ¶ 134 [Claim 2].)  Plaintiffs also seek injunctive relief "in the form of sealing their arrest records and prosecution records and declaring their arrests legal nullities."  (FAC Prayer for Relief ¶ H.)

## III.   LEGAL STANDARD

### A.   Rule 12(b)(6) Motion to Dismiss.

"A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory." *Durham v. Prudential Ins. Co*., 236 F. Supp. 3d 1140, 1150 (C.D. Cal. 2017).  "A court may consider the allegations contained in the pleadings, exhibits attached to or referenced in the complaint, matters properly subject to judicial notice, and materials whose contents are alleged in the complaint, in ruling on a motion to dismiss." *Alfred v. Walt Disney Co*., 388 F. Supp. 3d 1174, 1180 (C.D. Cal. 2019).

District courts must engage in a two-step process when considering a Rule 12(b)(6) motion to dismiss.  *Houston v. Medtronic, Inc*., 957 F. Supp. 2d 1166, 1172 (C.D. Cal. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  ***First***, the court must "'begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id*. (quoting *Iqbal*, 566 U.S. at 679).  Those conclusory allegations are to be ignored when evaluating the sufficiency of a pleading.  *Id*.  ***Second***, the court must determine whether the remaining "well-pleaded facts, and reasonable inferences therefrom, give rise to a plausible claim for relief."  *Id*.  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face…. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678-79 (quotation marks omitted).

## IV.  PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW.[4]

Plaintiffs assert two causes of action (FAC ¶¶ 112-35) under Section 1983, which provides that every person who, under color of law, deprives another of rights protected by the Constitution shall be liable to that party.  42 U.S.C. § 1983.  Plaintiffs assert violations of the Second Amendment (Claim One); and the Fourteenth Amendment's Right to Travel (Claim Two).  Both claims fail as a matter of law.

### A.  Plaintiffs' Second Amendment[5] Claim (Claim One) is Subject to Dismissal.

Plaintiffs were arrested for violating *State statutes*, Penal Code sections 25400(a)(1) and 25850(a).  (Chapman Decl. Exhs. A-C.)  Plaintiffs allege that their *arrests* violate the Second Amendment.  (FAC ¶¶ 112-127.)  This claim is brought by all three plaintiffs.

Plaintiffs do not sue the police officers that arrested them.  Nor do Plaintiffs assert a claim under the Fourth Amendment.[6]  Rather, Plaintiffs assert a Second Amendment claim seeking to hold the City liable for damages for their *arrests* under *Monell*, which extends Section 1983 liability to municipalities.  "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove (1) that the plaintiff possessed

---

[4] As discussed below, Section V-A, infra, all of Matthews' claims are time-barred, including his Second Amendment claim.  However, for completeness, the City addresses the merits of Matthews' two claims.

[5] The Second Amendment provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.

[6] Typically in Section 1983 actions, a claim of false arrest is analyzed under the Fourth Amendment, which protects persons against "unreasonable searches and seizures."  *See*, *e.g*., *Patton v. Przybylski*, 822 F.2d 697, 699 (7th Cir. 1987) (where a § 1983 plaintiff "is charging constitutional false arrest[,] … the relevant standard is … that of the Fourth Amendment").  Nevertheless, Plaintiffs do not plead a Fourth Amendment claim; they plead a Second Amendment claim.  At least one court has held that this is improper.  *See*, *e.g*., *Yang v. Boudreaux*, No. 1:21-cv-00148-BAM, 2021 U.S. Dist. LEXIS 169395, at *14-17 (E.D. Cal. Sept. 7, 2021) (dismissing Second Amendment claim because the plaintiff's "challenge under the Second Amendment appears to be that he was **arrested** for possession of firearms purportedly legally within his possession…. The gist of this case is the purported unlawful arrest.  However, Plaintiff cannot challenge that arrest, i.e., the officers' actions, under the Second Amendment.  Plaintiff cannot turn a Fourth Amendment unlawful arrest into a Second Amendment challenge." (emphasis in original)).

a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty*, 654 F.3d at 900.  Here, Plaintiffs cannot establish the first and fourth elements of a *Monell* claim.

*First*, the City did not deny Plaintiffs a constitutional right.  Plaintiffs' arrests were pursuant to California penal statutes that were constitutional then, and remain constitutional today, even post-*Bruen*.  *Second*, even assuming arguendo there was a constitutional violation, the City's "official written policy on issuing CCWs" was simply not the "moving force" for the alleged constitutional violation (Plaintiffs' arrests).  Plaintiffs' Second Amendment claim should be dismissed for both reasons.

### 1.     The City's enforcement of Penal Code sections 25400(a)(1) and 25850(a) did not violate Plaintiffs' constitutional rights.

"In order to establish [Plaintiffs]' right to proceed to trial on [their] municipal liability claim, the court must first determine that a constitutional violation has occurred, i.e., that the [City] violated some constitutionally imposed duty to Plaintiffs" by arresting them for violating Penal Code sections 25400(a)(1) and 25850(a).  *Erdman v. Cochise County*, 926 F.2d 877, 882 (9th Cir. 1991).  No constitutional violation occurred here.

Plaintiffs allege they were unlawfully *arrested* in violation of the Second Amendment.  (FAC ¶¶ 118-19.)  Not so.  Plaintiffs were arrested for violating Penal Code section 25400(a)(1), which makes it a crime to "carry[] a concealed firearm … within any vehicle," and Penal Code section 25850, which makes it a crime to "carry[] a loaded firearm … in any public place or any public street."  (Chapman Decl. Exhs. A-C.)  But these State laws are constitutional, and Plaintiffs do not argue otherwise.[7]  Nor does *Bruen* make them unconstitutional.  To the contrary, the *Bruen* decision specifically "does not prohibit States from imposing licensing requirements for carrying a handgun for self-

---

[7] To the contrary, Plaintiffs have stated that they "do not challenge the constitutionality of any California state statute or ordinance."  (ECF No. 36 [Rule 26 Statement] at 1:15-16.)

defense." 142 S. Ct. at 2161 (Kavanaugh, J., concurring). Accordingly, *Bruen* does not hold that anyone can carry a concealed firearm at any time, nor does it hold that laws prohibiting the carrying of concealed firearms are unconstitutional.[8]

This was the holding of *Dykes v. Broomfield*, No. 11-cv-04454-SI, 2022 WL 4227241, 2022 U.S. Dist. LEXIS 165189 (N.D. Cal. Sept. 13, 2022), one of the few district courts to address *Bruen* since it was issued. There, the district court considered a habeas petitioner's claim that *Bruen* invalidated his death sentence because during the penalty phase of his state court murder trial, the prosecution introduced evidence that he had been previously arrested for carrying a loaded, concealed firearm. *Id*. at *9. The district court found this argument meritless because "*Bruen* does not prohibit a state from implementing a license requirement to carry a firearm *and it does not prohibit a state from criminalizing the concealed carry of a loaded firearm. Bruen* has simply required California discontinue application of its discretionary 'good cause' requirement in its licensing scheme." *Id*. at *12 (emphasis added) (citing *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring)). As the district court noted, "pursuant to Cal. Penal Code § 25400, it remains a crime to carry a concealed firearm in California." *Id*. at *13.

This was also the holding of a New York trial court in *People v. Rodriguez*, 171 N.Y.S.3d 802 (Sup Ct. NY County 2022). There, the court rejected a criminal defendant's post-*Bruen* motion to dismiss charges for criminal possession of a weapon, noting that *Bruen* "held nothing more than that New York's previous permitting regime impermissibly burdened the right of law-abiding citizens to carry concealed firearms

---

[8] Indeed, a number of the 43 States with concealed carry license laws that were upheld in *Bruen* also have laws barring the carrying of a concealed weapon in a vehicle that are similar to Penal Code section 25400(a)(1). *See*, *e.g*., S.C. Code Ann. § 16-23-20(9) (illegal in South Carolina to carry a handgun in a vehicle unless "the handgun is secured in a closed glove compartment, closed console, closed trunk, or in a closed container secured by an integral fastener and transported in the luggage compartment of the vehicle."); Fla. Stat. § 790.25(5) (illegal in Florida to carry a concealed handgun in a vehicle unless it is "securely encased or is otherwise not readily accessible for immediate use"). Similarly, these same states also have laws barring the carrying of a loaded firearm in public that are similar to Penal Code section 25850(a). *See*, *e.g*., S.C. Code Ann. § 16-23-20(12) (illegal in South Carolina to carry a handgun without a concealed weapons permit); Fla. Stat. § 790.053 ("unlawful for any person to openly carry on or about his or her person any firearm.").

outside of their homes … because that regime forbade the granting of such licenses absent evidence of [proper cause]." *Id*. at 803.  Of particular relevance here, the court held:

> [D]efendant's quarrel lies not with the licensing scheme, but with the statutes criminalizing unlicensed possession.  In other words, he does not seek to demonstrate either that the licensing law was unconstitutional — we already know it was — or that it was unfairly applied to him — it wasn't applied to him at all — but that the Second Amendment itself, the right to bear arms, confers an absolute entitlement to possess concealed firearms in public, license be damned.  But contrary to defendant's contention, *Bruen*, … did not hold that the State is powerless to criminalize the unlicensed possession of firearms on city streets.

*Id*. at 805.

Like the criminal defendant in *Rodriguez*, Plaintiffs here seek to void (for lack of a better term) their *arrests* through a declaration that "their arrests [are] legal nullities." (FAC <u>Prayer for Relief</u>, ¶ H.)  Plaintiffs also want damages for their *arrests*.  (*Id*. ¶ 126.) Thus, Plaintiffs' lawsuit is not about the City's "good cause" CCW licensing requirement. Plaintiffs' lawsuit is about their *arrests*.  *See*, *e.g*., *Yang*, 2021 U.S. Dist. LEXIS 169395, at *16 (holding the plaintiff's "challenge under the Second Amendment appears to be that he was **arrested** for possession of firearms purportedly legally within his possession…. The gist of this case is the purported unlawful arrest." (emphasis in original)). But those arrests were made pursuant to State statutes that were valid at the time of the arrests, and remain constitutional post-*Bruen*.

In sum, this is a case where City police officers arrested Plaintiffs pursuant to *constitutional State* penal statutes.  There is no constitutional violation.  *See*, *e.g*., *Anderson v. Baseball Club of Seattle*, No. C09-0850RAJ, 2010 WL 5463828, 2010 U.S. Dist. LEXIS 138544, at *18 (W.D. Wash. Dec. 28, 2010) (no *Monell* liability against city where "it is unclear how it would be unconstitutional for police officers to enforce a presumptively constitutional law").  Accordingly, Plaintiffs' first cause of action must be dismissed.  *See*, *e.g*., *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir.

2008) (en banc) ("[A] municipality cannot be held liable [under *Monell*] when there is no underlying constitutional violation.").

> ### 2. *Second*, the City's alleged "official policy on issuing CCWs" was not the "moving force" for the alleged constitutional violation (the arrests).

"A government entity may not be held liable under 42 U.S.C. § 1983 unless a policy, practice, or custom of the entity can be shown to be a *moving force* behind a violation of constitutional rights." *Dougherty*, 654 F.3d at 900 (emphasis added) (citing Monell, 436 U.S. at 694). Thus, "[o]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a *direct causal link* between a municipal policy or custom and the alleged constitutional deprivation." *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009) (emphasis added; quotation marks omitted); *see also Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) ("There also must be a 'direct causal link' between the policy or custom and the injury."). In other words, where the plaintiff seeks to hold a municipality liable, the plaintiff must show that the constitutional violation was "caused" by the municipal policy. *Monell*, 436 U.S. at 691.

Here, Plaintiffs identify the alleged municipal policy at issue as the "official written policy on issuing CCWs that is … conditioned on a finding of 'good cause,' [which] the Board defines … as a special need to defend against threats specific to themselves." (FAC ¶ 18.) Plaintiffs identify the alleged constitutional deprivation as their arrests. (*See*, *e.g.*, *id*. ¶ 118 ["[T]he City enforced its unconstitutional gun control regime against the Second Amendment Named Plaintiffs … by arresting and detaining them."]; *see also id*. ¶ 137 [class defined as people who were "arrested by the City's police force"].)

It is easy to see that the City's policy—its "official written policy on issuing CCWs"—is not the *moving force* behind Plaintiffs' arrests.

For example, there is no "direct causal link" between the alleged policy and Plaintiffs' arrest. *Johnson v. Dekalb County*, 391 F. Supp. 3d 1224 (N.D. Ga. 2019) is

NOTICE OF MOTION AND MTD FAC; MEM. OF PS&AS ISO DEFENDANT'S MTD FAC

instructive.  There, the plaintiff was arrested for violating a Georgia state law criminalizing disorderly conduct.  *Id*. at 1235.  After the charges were dropped, he filed a Section 1983 *Monell* claim against DeKalb County, alleging the county's disorderly conduct ordinance (the official county policy), interfered with his constitutional rights.  *Id*. at 1257-58.  The county filed a motion for summary judgment, arguing that because the plaintiff "was arrested under the Georgia disorderly conduct ordinance, … the Dekalb County ordinance cannot be the 'moving force' behind [the plaintiff]'s purported constitutional violation."  *Id*. at 1258.  The district court agreed, dismissing the *Monell* claim because there was no "causal link" between the county's "policy" (the unconstitutional county ordinance), and the plaintiff's "injury" (his arrest) since the plaintiff was arrested for violating a Georgia state law, not the county ordinance.  *Id*. at 1258-59.  The district court held that "even absent the purported constitutional deficiencies in Dekalb County's disorderly conduct ordinance, [the plaintiff] still would have been arrested … under the Georgia statute."  *Id*.

Similarly, here, Plaintiffs were not arrested for violating a City ordinance.  Rather, they were arrested for violating California penal statutes.  So there is no direct causal link between the City's alleged policy related to issuing CCW licenses and Plaintiffs' injury (their arrests).  Additionally, even absent the purported constitutional deficiencies in the City's official written policy on issuing CCW licenses, Plaintiffs still would have been arrested under the California statutes, which remain constitutional post-*Bruen*.

Furthermore, other formulations of the "moving force" requirement are just as fatal to Plaintiffs.  For example, when Plaintiffs were arrested, the police officers were not acting *pursuant* to the City's "official written policy on issuing CCWs."  *See*, *e.g*., *Garmon v. County of L.A*., 828 F.3d 837, 845 (9th Cir. 2016) (holding that "plaintiffs who seek to impose liability on local governments under § 1983 must prove that action *pursuant* to official municipal policy caused their injury" (emphasis added; quotation marks omitted)).  Rather, they were acting pursuant to California's Penal Code.

Nor were the police officers "executing the alleged policy" when they arrested Plaintiffs.  *See*, *e.g*., *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("It is only when

*the execution of the government's policy* … inflicts the injury that the municipality may be held liable under § 1983." (emphasis added; quotation marks omitted)); *see also Waggy v. Spokane County Wash.*, 594 F.3d 707, 713 (9th Cir. 2010) (same).  Rather, the police officers were executing constitutional California Penal Code statutes.

At best, the alleged policy here is "tangentially related" to the alleged constitutional violation, Plaintiffs' arrests.  But this is simply not enough to state a *Monell* claim.  *See*, *e.g.*, *Shine v. Fuston*, No. 20cv2036-LAB-DEB, 2021 WL 4460885, 2021 U.S. Dist. LEXIS 187180, at *19-20 (S.D. Cal. Sep. 29, 2021) (dismissing *Monell* claim where city policy authorizing police officers to detain persons "isn't plausibly the moving force behind the unlawful arrest" because "th[e] policy is only tangentially related to the officers' alleged decision to arrest [the plaintiff].").

To be clear, this isn't a case where *the City* enacted an *unconstitutional* law, and then arrested Plaintiffs for violating it.  *Cf. Grossman v. City of Portland*, 33 F.3d 1200, 1209 n.18 (9th Cir. 1994) ("Where, as here, a local police officer enforces an unconstitutional ordinance, relief lies against the city." (citing *Monell*, 436 U.S. at 694)).  Nor is this a case where City police officers arrested Plaintiffs pursuant to an *unconstitutional State* law.  *Cf. Cooper v. Dillon*, 403 F.3d 1208, 1222 (11th Cir. 2005) (municipality could be "liable for enforcing an *unconstitutional* state statute which the municipality did not promulgate or adopt" (emphasis added)).[9]

Rather, this is a case where City police officers arrested Plaintiffs pursuant to *constitutional State* laws.  However, it is well established that "mere enforcement" of a *constitutional State* statute "is not a sufficient basis for imposing § 1983 municipal liability." *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1133 (C.D. Cal. 2012); *see also id*. at 1133, 1136 ("The Complaint does not identify any specific City policy, as required by

_____

[9] It should be noted that other courts have held that municipalities *cannot* be held liable for enforcing an unconstitutional state statute under *Monell*.  *See*, *e.g.*, *Surplus Store & Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791-92 (7th Cir. 1991) (no *Monell* liability because "[i]t is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law.").

<u>Monell</u>, that caused Plaintiff's alleged injuries.  Plaintiff's argument that the [police department] ha[s] a 'policy' of enforcing state [gun] law[s] is an insufficient ground for municipal liability under section 1983.").

***

In sum, Plaintiffs are trying to fit a square peg into a round hole.  The square peg is the City's alleged "official written policy on issuing CCWs."  The round hole is Plaintiffs' arrests for violating Penal Code sections 25400(a)(1) and 25850(a).  But whatever way you slice it—be it direct causal link, or acting pursuant to the policy, or executing the policy—the City's "official written policy on issuing CCWs" is simply not the moving force behind Plaintiffs' arrests.  Thus, Plaintiffs cannot, as a matter of law, state a *Monell* claim against the City for a Second Amendment violation based on their arrests.

## V. MATTHEWS' FOURTEENTH AMENDMENT RIGHT TO TRAVEL CLAIM (THE SECOND CLAIM) IS BARRED AS A MATTER OF LAW.

The FAC's second claim, which is only asserted by Matthews as a non-California resident, is for a purported violation of the "Fourteenth Amendment Right to Travel." (FAC ¶¶ 128-135.)  Matthews' right to travel claim is barred by the applicable statute of limitations, and it also fails as a matter of law.

### A. Plaintiff Matthews' Right to Travel Claim is Time-Barred.

Claims brought under Section 1983 are subject to California's two-year statute of limitations applicable to personal injury claims.  *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 956 (9th Cir. 2011) (citing Cal. Code Civ. Proc. § 335.1).  Here, the injury which is the basis for both of Matthews' claims is his 2019 arrest for violating Penal Code section 25400(a)(1).  (*See*, *e.g.*, FAC ¶ 118 [Claim 1 alleges Matthews' Second Amendment rights were violated when he was arrested and detained]; *id.* ¶ 130 [Claim 2 alleges Matthews' right to travel was violated when he was arrested and detained].)  Furthermore, Matthews' alleged injuries for both of his claims—humiliation, emotional distress, general damages, legal and bail expenses—all "resulted from being arrested." (*Id.* ¶ 126 [Claim 1]; ¶ 134 [Claim 2].)

Matthews was arrested on September 27, 2019.  (FAC ¶ 48.)  Yet, he waited until more than two years after his arrest (May 3, 2022) to file his lawsuit.  Accordingly, both of Matthews' claims are time-barred, and should be dismissed without leave to amend.

**B.    Even Assuming Arguendo Plaintiff Matthews' Right to Travel Claim is not Time-Barred, it Fails as a Matter of Law.**

The right to travel is considered to be a right guaranteed by the Privileges and Immunities Clause of the Fourteenth Amendment,[10] which provides that "[n]o State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States."  U.S. Const. amend. XIV, § 1.[11]  The "right to travel" encompasses three aspects: (1) "the right of a citizen of one State to enter and leave another State" — that is, the ability of citizens "to cross state borders;" (2) the right to enjoy the privileges and immunities that the destination state confers on its own citizens; and (3) the right of newly-arrived citizens "to be treated equally in her new state of residence."  *Saenz v. Roe*, 526 U.S. 489, 500-05 (1999).  The right to travel is "not absolute."  *Id*. at 502 (quotation marks omitted).  Rather, the right to travel "bar[s] discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States."  *Id*. (quotation marks omitted).

Of the three types of right to travel claims, Matthews does not assert that he is prevented from entering or leaving California (the first type) or that he elected to become a permanent resident, yet was treated differently than other California citizens (the third type).  Thus, only the second component of the right to travel is at issue here, *i.e.*, the right to enjoy the privileges and immunities that the destination state confers on its own citizens when temporarily in California.

---

[10] *E.g.*, *Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 902 (1986).

[11] Although Matthews' right to travel claim also references equal protection (FAC ¶ 129), it is not clear that Matthews intends to assert a separate equal protection claim.  At any rate, in *Peruta v. County of San Diego*, 758 F. Supp. 2d 1106 (S.D. Cal. 2010), the district court analyzed equal protection and right to travel claims together.  *Id*. at 1119.  The City assumes that they rise or fall together here as well.

Matthews alleges that the City maintains an "unconstitutional gun control regime" in violation of his Fourteenth Amendment right to travel "because [the City] effected a total ban on carrying pistols in the City for non-residents because the gun control regime prevented registering their handguns and licensing them and the LAPD police Chief refused to register their handguns or issue them licenses."  (FAC ¶ 129.)  Matthews later alleges that his Fourteenth Amendment claim raises two issues:

- whether the City has or had a policy, custom, or practice of never allowing nonresidents to *register* pistols for carrying outside the home during the class period; and

- whether the City's refusal to issue CCWs to non-residents violated the Fourteenth Amendment.

(FAC ¶ 144(2)-(3).)  Both claims fail as a matter of law.

### 1. The City did not, and does not require anyone, resident or nonresident, to *register* their handguns, so there is no right to travel violation.

Matthews alleges the City has a "gun control regime" and policy that prevents nonresidents from registering and licensing their handguns.  (FAC ¶¶ 129, 144(3).)  Plaintiffs appear to be mistaken about California law, which does not require anyone—resident or non-resident—to register handguns.  https://oag.ca.gov/firearms/pubfaqs#26 ("There is no firearm registration requirement in California except for assault weapon owners and personal handgun importers."); *see also People v. Brown*, 2007 WL 1031676, 2007 Cal.App.Unpub. LEXIS 2805 at *608 (Cal. Ct. App. Apr. 6, 2007) ("There is no requirement under these statutes for an individual gun owner to register his or her handgun with the Department [of Justice].  More particularly, there is no general requirement that a person entering California register his or her handgun upon arrival in California.").  Matthews does not cite a City ordinance that requires residents or non-residents to register their handguns either; indeed, the City could not pass such an ordinance because handgun registration is completely preempted by State law.  (Cal. Govt. Code § 53071.)

Accordingly, residents and non-residents are treated alike, so there is no right to travel violation. *See*, *e.g.*, *Saenz*, 526 U.S. at 500-02 (right to travel implicates the right to enjoy the privileges and immunities that California confers on its own citizens when temporarily in California).

> **2.     There is no claim against the City for non-issuance of CCW licenses to non-residents because non-residents are ineligible to receive licenses under *State statutory law*, not City ordinances; however, even if the Court considers this claim, it still fails as a matter of law.**

Matthews alleges that the City's "refusal to issue CCWs to non-residents violate[s] the Fourteenth Amendment." (FAC ¶ 144(2).)  This is the gravamen of his "right to travel" claim—that non-residents are totally banned from carrying handguns in the City because they, unlike City residents, cannot obtain a CCW license.  (*Id.* ¶ 129.)[12]  This claim fails for two reasons:  (1) it should be directed at the State, not the City; and (2) *California's* CCW license residency requirement did not violate Matthews' right to travel / equal protection.

***First***, while only City residents can apply for CCW licenses, this is a *California statutory requirement*, not a City requirement.  (Pen. Code §§ 26155(a), (a)(3).)  Thus, Matthews' challenge to the City's alleged refusal to issue CCW licenses to non-residents is directed at the wrong entity; the State of California is the proper defendant.[13]  This claim

---

[12] The entire premise of the claim is not true; non-residents can carry guns in the City without a CCW license under State law.  For example non-residents can carry guns in vehicles. *See* Pen. Code § 25610(a).  Indeed, under this statute, Matthews would not have been arrested if he had the gun in a locked container, rather than the side pocket of the driver's side door.

[13] Having failed to sue the State of California, Matthews is required to file notice of the constitutional challenge to Penal Code section 26155(a)(3) with this Court pursuant to Federal Rule of Civil Procedure Rule 5.1, which states that where a party files a pleading "drawing into question the constitutionality of a … state statute," and the party "does not include the state," the party "must promptly file a notice of constitutional question stating the question."  Fed. R. Civ. P. 5.1(a)(1)-(2).  The district court is then required to "certify to the appropriate attorney general that a statute has been questioned."  *Id.* at 5.1(b).  The attorney general then has 60 days (or longer if set by the court) to intervene. *Id.* at 5.1(c).  The court cannot "enter a final judgment holding the statute unconstitutional" before "the time to intervene expires."  *Id.*

should be dismissed against the City on this basis alone.  *See*, *e.g.*, *Flanagan v. Harris*, No. LA CV16-06164 JAK (ASx), 2017 WL 729788, 2017 U.S. Dist. LEXIS 28503, at *8-13 (C.D. Cal. Feb. 23, 2017) (dismissing Second Amendment claims that were brought against a County Sheriff challenging State laws prohibiting the open carry of guns because the Sheriff "has no responsibility for the enactment of the restrictions on open carry, [so] it is not a proper party to this action.  Thus, if Plaintiffs prevail on their claim, there is no corresponding remedy that would be imposed on the [County Sheriff].").

*Second*, even assuming arguendo Matthews' right to travel claim is viable against the City, it still fails as a matter of law.

The only difference in treatment between California residents and non-residents with respect to carrying handguns is the ability to obtain a CCW license.  California statutory law allows City residents to apply for a CCW license, but it does not allow non-City residents to apply.  (Pen. Code § 26155(a)(3).)  This is the basis for Matthews' right to travel claim.  (*See*, *e.g.*, FAC ¶ 144(2) ["[W]hether the City's refusal to issue CCWs to non-residents violated the Fourteenth Amendment."].)  Three different courts have considered, and rejected similar claims.

In *Bach v. Pataki*, 408 F.3d 75 (2d Cir. 2005), the Second Circuit considered a non-resident's claim that New York's prohibition on issuing gun licenses to non-residents violated his right to travel under the Privileges and Immunities Clause of Article IV of the United States Constitution.  *Id*. at 77.  The district court dismissed the claim, holding that there was a substantial connection between the residency requirement and the purposes of the licensing scheme so the disparate treatment of non-residents was justifiable.  *Id*.  The Second Circuit affirmed.  It applied a two-part test:  (1) does the privilege "come within the scope of the [Privileges and Immunities] Clause;" and (2) where a protective privilege is implicated, then the State "may defend its position by demonstrating:  (a) a substantial reason for the discrimination, and (b) a reasonable relationship between the degree of discrimination exacted and the danger sought to be averted by enactment of the

**NOTICE OF MOTION AND MTD FAC; MEM. OF PS&AS ISO DEFENDANT'S MTD FAC**

discriminatory statute." *Id*. at 88 (quotation marks omitted).[14]   Assuming, without deciding, that entitlement to a New York carry license was a privilege under the Clause, the Second Circuit held that New York had a substantial interest in monitoring gun licenses and that limiting licenses to residents was sufficiently related to that interest because New York has an interest in the entirety of a licensee's relevant behavior, and the state can only monitor activities that take place in the state. *Id*. at 91-94.

In *Peterson v. LaCabe*, 783 F. Supp. 2d 1167 (D. Colo. 2011), the district court considered a non-resident's claim that Colorado's requirement that an applicant for a CCW license be a Colorado resident violated his right to travel under the Privileges and Immunities Clause of Article IV of the United States Constitution. *Id*. at 1170.   Under Colorado law, a CCW license can only be issued to a legal resident of the state. *Id*. Colorado justified this distinction by arguing that "it has a greater ability to monitor residents for compliance with the requirements of the concealed handgun licensing scheme than non-residents." *Id*. at 1174.   The district court agreed, granting judgment in favor of the state. *Id*. at 1174-76.

The district court's decision was upheld in *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013).   There, the Tenth Circuit held that the plaintiff did not satisfy the first part of the Privileges and Immunities Clause test—that the right to carry a concealed weapon came within the scope of the Clause. *Id*. at 1215.   However, a separate concurring opinion went on to address the second part of the test, concluding that the residency requirement was substantially related to an important governmental objective. *See id*. at 1216-17 ("As part of its general public safety interest, Colorado has shown that ensuring [CCW] holders are qualified under state law is an important governmental objective.   The state also proffered unrefuted evidence demonstrating that much of the information necessary to determine whether an individual is qualified for a [CCW] is kept in locally

---

[14] The Ninth Circuit utilizes a similar "two-step inquiry" in deciding claims arising out of the Privileges and Immunities Clause.   First, the plaintiff bears the burden of showing the challenged law falls within the Clause.   If yes, then the burden shifts to the state to show that the challenged law is closely related to the advancement of a substantial state interest. *Marilley v. Bonham*, 844 F.3d 841, 846 (9th Cir. 2016).

maintained databases, and that Colorado sheriffs do not have access to such information with respect to non-resident applicants.").

Finally, in *Peruta v. County of San Diego*, 758 F. Supp. 2d 1106 (S.D. Cal. 2010), the plaintiffs challenged San Diego County's policies for obtaining a concealed carry permit. While the "heart" of the lawsuit was whether the plaintiffs had a right to carry a concealed handgun in public, one plaintiff also claimed that he was denied a CCW license due to his residency, and the County's policy defining residency violated his right to travel under the Privileges and Immunities Clause and Equal Protection Clause of the Fourteenth Amendment. *Id*. at 1109-10, 1119-20. The district court ruled in favor of the County, adopting the Second Circuit's analysis in *Bach* to hold that residency requirements for concealed weapon permits did not violate the right to travel under the Privileges and Immunities Clause of the Fourteenth Amendment. *Id*. at 1119-1120.

In light of these three decisions, Matthews' right to travel claim fails as a matter of law. Without addressing whether entitlement to a CCW license is a fundamental privilege or immunity protected by the Clause in light of *Bruen*, Matthews' right to travel claim fails the second part of the test because the State's CCW residency requirement is closely related to the advancement of a substantial State interest—ensuring that CCW license holders are qualified under State statutory law. California's CCW residency requirement enables local licensing officers to make informed decisions about the suitability of CCW license applicants. Indeed, this was one of the rationales for adding the residency requirement, as the district court recognized in *Raulinaitis v. Ventura County Sheriffs Dept*., No. CV 13-2605-MAN, 2014 U.S. Dist. LEXIS 140874 (C.D. Cal. Sep. 30, 2014). There, the district court analyzed the legislative history behind the Senate Bill adding the residency requirement for CCW licenses, finding that "[t]he addition of a residency requirement to the CCW licensing statute … was motivated by a desire to ensure that CCWs were issued only to persons who actually lived within the counties in which the permits were sought. The bill's proponents believed that an adequate assessment of the good moral character and good cause requirements, as well as the need for imposing any

restrictions, was possible only if an applicant resided within the county of application." *Id*. at *43.

This conclusion is buttressed by a 1979 California Attorney General Opinion, which opined that the residency requirement was rationally related to a legitimate state objective because it was "based upon the assumption that a local police agency would be best equipped to determine the good moral character of the applicant, the necessity for the license, and the restrictions, if any, that should be placed on it." 62 Ops. Cal. Atty. Gen 508, 1979 WL 29270, 1979 Cal. AG LEXIS 54, at *9 (Sep. 18, 1979). And of considerable note here, the California Attorney General further opined: "The Legislature apparently decided that the interest of a nonresident temporarily in the state who is not otherwise exempt from the concealed weapon prohibition … in carrying a concealed weapon is clearly outweighed by the burden imposed upon a local police agency in determining the good moral character of the applicant, the good cause for issuing the license, and the conditions and restrictions, if any, which should be placed on it." *Id*. at *9-10.

Here, while the "good cause" requirement can no longer be enforced, the good moral character requirement still exists. Good moral character includes issues that are uncovered in the required fingerprint check (*see* Pen. Code § 26185), like criminal convictions and warrants, as well as other issues like domestic violence restraining orders (or other protective orders), and mental health issues. Justice Kavanaugh's concurrence noted that these types of requirements remain valid post-*Bruen*. *Bruen*, 142 S. Ct. at 2162. But there is no 50-State national database for this information.

In sum, because local law enforcement officers are in the best position to assess the moral character of local applicants, California's CCW license residency requirement is closely related to California's interest in ensuring that CCW license holders are qualified under State statutory law.

## VI.   CONCLUSION

The Court's "discretion to deny … leave [to amend] is particularly broad where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co*., 713 F.3d 502, 520 (9th Cir. 2013) (quotation marks omitted).  Here, Plaintiffs previously amended the complaint once after reviewing the City's arguments.   Yet, Plaintiffs failed to plead any new material factual allegations in their FAC outside of the nine paragraphs related to the addition of the new plaintiff, Hearns.  (FAC ¶¶ 11, 40-47.) It stands to reason that Plaintiffs do not have additional facts to plead.

Moreover, as the Court has previously noted, leave to amend may be denied where "amendment would be futile given that Plaintiffs' claims and supporting legal theories fail as a matter of law."  *Best Auto Repair, Inc. v. Travelers Cas. Ins. Co*., No. 2:21-cv-02874-FLA (PDx), 2022 WL 2912090, 2022 U.S. Dist. LEXIS 133032, at *21 (C.D. Cal. July 21, 2022).  That is the case here.  Accordingly, additional amendment is futile, and the FAC should be dismissed with prejudice.

Dated:  October 7, 2022

OFFICE OF THE CITY ATTORNEY OF LOS ANGELES

By:
      */s/ Benjamin Chapman*
Benjamin Chapman

Attorneys for Defendant
CITY OF LOS ANGELES,
LOS ANGELES POLICE DEPARTMENT, and
LOS ANGELES BOARD OF POLICE COMMISSIONERS