1  JOVAN BLACKNELL (SBN 237162)
2  Email: jovan@fight4justice.com
3  Attorney for Plaintiffs, Garry Matthews, Dominic Ross Hunn, and Jamar Hearns
4  LAW OFFICE OF J. BLACKNELL
5  200 Corporate Pointe, Suite 495
6  Culver City, CA 90230
7  Phone: (310) 469-9117; Fax: (310) 388-3765
8  Attorney for Plaintiffs
9
10  WILLIAM CLAIBORNE
11  Pro hac vice
12  Email: claibornelaw@gmail.com
13  Attorney for Plaintiffs, Garry Matthews, Dominic Ross Hunn, and Jamar Hearns
14  ClaiborneLaw
15  717 D Street N.W., Ste 300
16  Washington, DC 20004-2815
17  Phone: (202) 824-0700
18  Attorney for Plaintiffs

19                UNITED STATES DISTRICT COURT

20      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

21

| | |
|---|---|
| GARRY MATTHEWS, DOMINIC ROSS HUNN, and JAMAR HEARNS individually and as class representatives, | Case No.: 22-cv-02944-FLA-PD |
| | PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT |
| Plaintiffs, | |
| vs. | Date: December 2, 2022 |
| | Time: 1:30 P.M. |
| CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, AND LOS ANGELES BOARD OF POLICE COMMISSIONERS, | Ctrm: 6B-First Street Courthouse Judge: Hon. Fernando L. Aenlle-Rocha |
| Defendants. | Action Filed: 05/03/2022 |

1                       **MEMORANDUM OF LAW**

2        Defendants' Motion [ECF No. 40] to Dismiss Plaintiffs' Amended

3    Complaint [ECF No. 31] for failure to state a claim should be denied. On

4    a motion to dismiss under 12(b)(6), it is the defendant's burden to demonstrate that

5    plaintiff has failed to state a claim. *Shay v. Apple Inc.*, 512 F. Supp. 3d 1066, 1071

6    (S.D. Cal. 2021). But Defendants failed to carry their burden under F.R.C.P.

7    12(b)(6) of showing that Plaintiffs failed to state any claims in the Amended

8    Complaint that are plausible on their face.

9         **I.  Summary of Facts taken from Plaintiffs' Amended Complaint.**

10      Each of the Named Plaintiffs was arrested in the City of Los Angeles

11    (sometimes "the City ") by members of the Los Angeles Police Department

12    ("LAPD") for the constitutional conduct of carrying a handgun in public for the

13    general purpose of self-defense.

14      The allegations in the Amended Complaint expressly allege that each was a

15    law-abiding citizen with no prior criminal history prior to the arrests they complain

16    of in this case. Am. Compl. ¶ 30-73; (Hunn, ¶ 35, no prior arrests; Hearns, ¶ 42; no

17    prior arrests; Matthews, ¶ 68, no prior record).

18      Furthermore, each of the Named Plaintiffs was injured by Defendants'

19    enforcement of its unconstitutional gun control policies against them. Defendants

20    arrested and detained each Named Plaintiff, (Hunn, ¶ 34, 36; Hearns ¶¶ 41, 43;

1   Matthews, ¶¶ 48,51, 54, 64) caused each Named Plaintiff to be detained in the

2   county jail (Hunn, ¶¶ 37-38; Hearns, ¶ 44, 46; Matthews, ¶¶ 665-66), and

3   Defendants referred Mr. Hearns' and Mr. Matthews' arrests to the prosecuting

4   authority expecting that they would be prosecuted. (Hearns, ¶ 46; Matthews, ¶65).

5        Moreover, each Named Plaintiff incurred the expense of posting bail. (Hunn,

6   ¶ 39; Hearns, ¶ 46; Matthews, ¶ 67).

7        The prosecutor declined to prosecute Mr. Hearns. Am. Compl. ¶ 47. But the

8   prosecutor did in fact initiate a prosecution against Mr. Matthews. *Id.* at 69-72. He

9   had to incur the cost of legal representation. *Id.* at 73. Mr. Matthews entered into a

10   deferred sentencing agreement; he successfully completed the terms of the

11   agreement; and the Court allowed Mr. Matthews to withdraw his plea without

12   sentencing. *Id.* at 69-71. The docket sheet shows that his case was dismissed

13   12/16/2021, and the Court may take judicial notice of the date of dismissal.

14        The injury to Mr. Matthews caused by Defendants' policies continued from

15   the time of his arrest until the dismissal of the prosecution against him. *Id.* at 72.

16        **II. Plaintiffs' Claims.**

17        Plaintiffs' Amended Complaint pled two federal claims. All three Plaintiffs

18   pled a Second Amendment claim (Claim I, Am. Compl. ¶¶ 112-127) and this claim

19   is available to residents and non-residents alike. Technically, the Second

20   Amendment rights apply to the states through the Fourteenth Amendment but for

1   the sake of clarity and brevity Plaintiffs refer to the claim as a Second Amendment

2   claim. *McDonald v. City of Chi.*, 561 U.S. 742, 750, 130 S. Ct. 3020, 3026

3   (2010)(Second Amendment right is fully applicable to the States). Only Mr.

4   Matthews, an out of state resident at the time of his arrest, detention, and

5   prosecution, brings the "right to travel" claim under the Fourteenth Amendment

6   (Claim 2, Am. Compl. ¶¶ 128-135).

7      **A. Plaintiffs in Claim 1 plausibly pled both a predicate constitutional**
8         **violation and a *Monell* claim under the Second Amendment.**

9       Defendants' motion to dismiss Claim 1 should be denied because Plaintiffs

10   plausibly pled both: (1) a "predicate constitutional violation" under the Second

11   Amendment; and that (2) a "custom or policy of the municipality" was the

12   "moving force" behind the constitutional violation. *Dougherty v. City of Covina*,

13   654 F.3d 892, 900 (9th Cir. 2011).

14       Plaintiffs plausibly alleged that Defendants maintained their own policy of a

15   total ban on the carriage of handguns outside the home for the purpose of self-

16   defense, and that enforcing their own policy against Named Plaintiffs by arresting

17   and detaining them, causing them to be locked up in the county jail, and, in the

18   case of Mr. Hearns and Mr. Matthews, referring them to the prosecutor for

19   prosecution violated the Named Plaintiffs' Second Amendment rights applicable to

20   the State of California via the Fourteenth Amendment. Am. Compl. ¶ ¶ 1-4,

21   *passim. N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2122 (2022)(the

1    Second and Fourteenth Amendments protect an individual's right to carry a

2    handgun for self-defense outside the home); *see also Wrenn v. District of*

3    *Columbia*, 864 F.3d 650, 665 (2017)(under *Heller I* "complete prohibition[s]" of

4    Second Amendment rights are always invalid even when effected through

5    licensing regime); *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 24, 25-26

6    (D.D.C. 2019)(motion to dismiss) ("*Smith I*"); *Smith v. District of Columbia*, 568

7    F. Supp. 3d 55, 60 (D.D.C. 2021)(summary judgment) ("*Smith II*").

8          In *Smith II*, Judge Lamberth of the District of Columbia District Court

9    entered summary judgment for Plaintiffs on the same Second Amendment legal

10   theory Named Plaintiffs advance here: maintaining a total ban on the carriage of

11   handguns in public for self-defense through overly restrictive licensing policies

12   which deny licenses to people carriage of a handgun in public for self-defense

13   while at the same time enforcing its laws criminalizing carriage of a handgun in

14   public for self-defense against them violates their Second Amendment rights, and

15   subjects the entity to liability under § 1983. *Smith II*, 568 F. Supp. 3d at 62-64.

16   **1.  *In Claim 1 Plaintiffs state a plausible predicate constitutional violation***
17   ***under the Second Amendment.***

18         Plaintiffs' Amended Complaint alleged that Defendants implemented their

19   own municipal policy of imposing a total ban on the carriage of handguns outside

20   the home for purposes of general self-defense which made it unlawful for people to

1  carry a handgun in public for self-defense. *See e.g.*, Am. Compl. ¶ 18, 19, 94 *et*

2  *seq*.

3      Plaintiffs clearly pled how Defendants' policies combined to impose a total

4  ban on the carriage of handguns outside the home for purposes of general self-

5  defense.

6          The two key, undisputed facts in this case are that there were no
7          actions that the Plaintiffs or the other class members could have taken
8          during the relevant time period that would have allowed them to carry
9          a handgun for general self-defense in the City of Los Angeles
10         because: (1) the City's Police Chief refuses to issue CCWs for the
11         lawful Second Amendment purpose of general self-defense; and (2)
12         the City's Police Chief vigorously enforces laws criminalizing
13         carrying a handgun outside the home without a CCW.

14         By adopting and following a City policy of refusing to issue CCWs
15         for general self-defense and then by adopting and following a City
16         policy of adopting and strictly enforcing State laws prohibiting
17         carrying a handgun outside the home without a CCW, the City
18         violated their Second Amendment rights, and, in the case of Mr.
19         Matthews and the Nonresident Class, the City violated their
20         Fourteenth Amendment rights.

21  Am. Compl. ¶ 110; *see Smith II*, 568 F. Supp. 3d at 63.

22

23      Defendants' "no issue" policy of refusing to issue CCWs for general self-

24  defense combined with the state statutes criminalizing carriage of a handgun in

25  public for self-defense **without a CCW,** *e.g.*, Penal Code sections 25400(a)(1)

26  (carrying a concealed firearm in a vehicle) and 25850(a) (carrying a loaded firearm

27  on the person or in a vehicle while in any public place or any public street),

1   amounted to a total ban on the on the carriage of handguns in public for self-

2   defense by City residents and most others.

3        As a result of Defendants' policies, it was impossible for people in the City

4   to engage in the constitutionally protected conduct of carrying of a handgun in

5   public for self-defense without subjecting themselves to arrest, detention, and

6   referral for prosecution by the LAPD. Such a total ban on the carriage of a

7   handgun in public for self-defense – as applied against LA residents, because of

8   the Chief's refusal to issue CCWs for general self-defense – rendered the statutes

9   unconstitutional because they violated the Second Amendment right to carry a

10  handgun in public for self-defense. *Bruen*, 142 S. Ct. at 2122 (the Second and

11  Fourteenth Amendments protect an individual's right to carry a handgun for self-

12  defense outside the home); *Smith II*, 568 F. Supp. 3d at 63.

13       Defendants contend that the City's enforcement of Penal Code sections

14  25400(a)(1) (carrying a concealed firearm in a vehicle) and 25850(a) (carrying a

15  loaded firearm on the person or in a vehicle while in any public place or any public

16  street) did not violate Plaintiffs' constitutional rights because the statutes are

17  constitutional, state statutes. Defs' Mot. at ECF p. 18. But this presentation of

18  Plaintiffs' Second Amendment claim tells only half the story. Defendants did not

19  merely enforce a California State statute against Named Plaintiffs and the putative

1  class members. Rather, in effect, Defendants added a term to the statutes that made

2  them total bans on the carriage of a handgun in public for self-defense.

3      As Defendants concede, Defs' Mot, ECF p. 12, both these statutes

4  criminalizing carriage of a handgun in public for self-defense contain exceptions

5  for persons who hold CCWs. Penal Code § 25655 provides an exemption from

6  Penal Code § 25400(a)(1) (carrying a concealed firearm in a vehicle) for anyone

7  carrying a handgun with a CCW. Penal Code § 26010 provides an exemption from

8  Penal Code section 25850(a) (carrying a loaded firearm on the person or in a

9  vehicle while in any public place or any public street) for anyone carrying a

10  handgun pursuant to a CCW. ccc

11      If Named Plaintiffs had been able to get CCWs ("license to carry a

12  concealed weapon;" Penal Code § 26155) from the LAPD, they would have been

13  able – lawfully under California law – to carry handguns outside the home. Penal

14  Code sections 25400(a)(1) and 25850(a). Only the lack of access to a CCW made

15  their public carriage for self-defense a violation of California law.

16      But, the only way to get a CCW in the City during the class period was by

17  showing "good cause" under the licensing provision. Penal Code § 26155(a)

18  (police chief *may* issue a license upon showing of "good cause"). The definition of

19  "good cause" was committed solely to the discretion of the Chief. *Gifford v. City of*

20  *L.A.*, 88 Cal. App. 4th 801, 805, 106 Cal. Rptr. 2d 164, 167 (2001)(statute

1   "explicitly grants discretion to the issuing officer to issue or not issue a license to

2   applicants meeting the minimum statutory requirements."); *Raulinaitis v. Ventura*

3   *Cnty. Sheriffs Dep't*, 2014 U.S. Dist. LEXIS 140874, at \*35 (C.D. Cal. Sep. 30,

4   2014)(either the sheriff of a county or the chief of police of a city has the

5   discretionary authority to issue CCWPs if certain requirements are met).

6   Defendants defined good cause as a special need to defend against threats specific

7   to the applicant.

8       Until October 27, 2022, the Chief's definition of "good case" was[1]:

9       GOOD CAUSE: The policy LAPD has adopted is that good cause
10   exists if there is convincing evidence of a clear and present danger to
11   life or of great bodily injury to the applicant, his ( or her) spouse, or
12   dependent child, which cannot be adequately dealt with by existing
13   law enforcement resources, and which danger cannot be reasonably
14   avoided by alternative measures, and which danger would be
15   significantly mitigated by the applicant's carrying of a concealed
16   firearm.

17   Am. Compl. ¶ 107.[2] See also *Gifford v. City of L.A.*, 88 Cal. App. 4th 801, 803,

18   106 Cal. Rptr. 2d 164, 166 (2001)( under the new policy "good cause exists if there

19   is convincing evidence of a clear and present danger to life or of great bodily

20   [harm] to the applicant, his (or her) spouse, or dependent child, which cannot be

---

[1] https://www.lapdonline.org/ccw-carry-concealed-weapon-license/ Online update
to LAPD CCW policy. Last checked, 10/28/2022.
[2] The City's "good cause" policy, previously available online has been removed
from public view. *See*
*https://lapdonlinestrgeacc.blob.core.usgovcloudapi.net/lapdonlinemedia/2022/02/Updated-2021-CCW-*
*concealedweapons-Policy.pdf*

1   adequately dealt with by existing law enforcement resources, and which danger

2   cannot be reasonably avoided by alternative measures, and which danger would be

3   significantly mitigated by the applicant's carrying of a concealed firearm.")

4       The official policy of the City – as issued by the Board – is that the issuance

5   of a CCW is a "privilege" not a right. LA Municipal Code, § 55.02. The Code

6   provision reads in part, "The Board of Police Commissioners shall have power to

7   issue to any person, who in the judgment of said board, shall have such privilege, a

8   written permit to carry concealed any of the weapons specified in the preceding

9   section."

10      So, at the end of the day, the crucial portion of the statutes Plaintiffs were

11  arrested under – whether or not they were carrying a handgun pursuant to a CCW –

12  depended solely on the policy of Defendants.

13      Defendants' "no issue" policy of issuing CCWs amounted to a total ban on

14  the carriage of handguns in public for self-defense even though Defendants did

15  issue some CCWs to a small number of persons able to show a special need to

16  defend against threats specific to themselves. *Wrenn v. District of Columbia*, 864

17  F.3d 650, 665 (2017).

18      Named Plaintiffs' Claim 1 squarely presents the question whether a

19  municipality can consistent with the Second Amendment implement a licensing

20  regime that operates as a total ban on the carriage of a handgun in public for self-

1    defense while at the same time criminalizing the carriage of a handgun in public

2    for self-defense, and enforcing the criminal provisions against the person to whom

3    it refuses to issue licenses.  *Smith v. Gov't of D.C.* presents the better reasoned

4    view of the link between a licensing regime that effects an unconstitutional total

5    ban on issuing licenses and the enforcement of criminal laws against the people for

6    engaging in the constitutionally protected conduct of carry a handgun in public for

7    self-defense without a license. *Smith v. District of Columbia*, 387 F. Supp. 3d 8,

8    24, 25-26 (D.D.C. 2019)(motion to dismiss)("*Smith I*"). In *Smith I*, several non-

9    D.C. resident Named Plaintiffs on behalf of a class, filed a claim under § 1983

10   alleging that the District violated their Second and Fourth Amendment rights by

11   refusing to allow people to register a handgun for carriage in public for self-

12   defense and refusing to issue licenses to carry a handgun in public for self-defense

13   while at the same time enforcing its criminal laws against carrying unregistered

14   handguns without a license against them.[3] *Smith I*, at 25-26.

15        Judge Lamberth held the non-D.C. resident Plaintiffs stated a claim under

16   the Second Amendment because enforcing the District's criminal statutes against

17   possessing an unregistered handgun and against carrying a handgun in public

18   without a license while refusing to register the guns or issue licenses to carry a

---

[3] Plaintiffs also brought claims under the Fifth Amendment based on the fact of their non-residency. *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 25-26 (D.D.C. 2019).

1    handgun in public for self-defense made it impossible for them to lawfully carry a

2    handgun for individual self-defense in the District. *Id.*

3        Plaintiffs subsequently amended their complaint to add resident as well as

4    non-resident Named Plaintiffs, *Smith II*, 568 F. Supp. 3d at 60. Judge Lamberth

5    entered summary judgment in favor of all Named Plaintiffs, both residents and

6    non-residents, on their Second Amendment claim on the same theory. *Id.* at 62-64.

7        The key fact Judge Lamberth relied on in determining that the District's gun

8    control regime violated Plaintiffs' Second Amendment rights were that when the

9    arrests and detentions of the Named Plaintiffs occurred, no person in the District of

10   Columbia, resident and non-resident alike, could lawfully carry either a handgun or

11   ammunition outside the home under the District's registration and licensing

12   laws.  *Smith II*, 568 F. Supp. 3d at 60. The District's licensing and registration

13   statutes in combination made it impossible for all persons, both non-residents and

14   residents, to lawfully carry a handgun for self-defense. *Smith II*, 568 F. Supp. 3d at

15   62. Thus, the combination of the statutes effected a total ban on the carriage of a

16   handgun in public for self-defense and so they were unconstitutional under the

17   Second Amendment. *Id.* Moreover, putting the people to a Hobson's choice of

18   forfeiting their Second Amendment rights or subjecting themselves to criminal

19   sanctions merely for engaging in the constitutionally protected conduct of carrying

1   a handgun in public for self-defense also violated their Second Amendment rights.

2   *Id.* at 60, 63-64.

3       Judge Lamberth expressly rejected at both the motion to dismiss stage and at

4   summary judgment the District's arguments – also raised in this case by

5   Defendants, Defs' Mot. ECF p. 18 -- that Plaintiffs' conduct in carrying a handgun

6   in public for self-defense was not protected because: (1) licensing regimes are

7   constitutional, and (2) Plaintiffs did not "attempt to fully familiarize themselves

8   with the District's firearms regulations" nor "attempt to obtain a [D.C.] registration

9   or license." *Smith II*, 568 F. Supp. 3d at 63.

10      In his motion to dismiss opinion, Judge Lamberth held that, "[t]he [City]

11  cannot shield those laws from constitutional challenge by blaming plaintiffs for

12  violating them." *Smith I*, 387 F. Supp. 3d at 21. To do so would "turn[] centuries of

13  civil rights jurisprudence on its head." *Id.*

14      In *Smith II*, granting summary judgment for Plaintiffs on their Second

15  Amendment claim, Judge Lamberth wrote:

16          Building off this point [that there is no constitutional right "to carry a
17          firearm without needing to acquire any permit whatsoever"], the
18          District argues that plaintiffs' conduct was not protected because they
19          did not "attempt to fully familiarize themselves with the District's
20          firearms regulations" nor "attempt to obtain a [D.C.] registration or
21          license." … Put simply, the District reasons that because there is a
22          counterfactual world where it had a *constitutional* gun control regime
23          in place during the arrests that could criminalize plaintiffs' conduct,
24          there was no constitutional violation. Again, the District misses the
25          mark. It cites no support for the proposition that constitutional

1   analysis implicates what plaintiffs would have done in a different
2   world under different laws. It fails to support the idea that for
3   plaintiffs' actions to be constitutionally protected they were required
4   to go through futile actions, like attempting to obtain a D.C. gun
5   registration... The District fails to address the key, undisputed fact in
6   this case. There were no actions that the plaintiffs could have taken
7   during the time period in question that would have allowed them to
8   carry a gun for self-defense in the District of Columbia.

9   *Smith II*, 568 F. Supp. 3d at 63 (cleaned up).

10   Judge Lamberth's response to the District's licensing and exhaustion

11   arguments in *Smith I* and Smith II also disposes of the similarly faulty reasoning in

12   the two cases Defendants cite, *Dykes v. Broomfield*, 2022 WL 4227241, 2022 U.S.

13   Dist. LEXIS 165189 (N.D. Cal. Sept. 13, 2022) and *People v. Rodriguez*, 171

14   N.Y.S.3d 802 (Sup Ct. NY County 2022). Defs' Mot. at ECF p. 19. These two case

15   simply ignore the legal implications of enacting statutes that criminalize the

16   constitutionally protected conduct of carrying a handgun in public for self-defense.

17   Moreover, in both cases it appears that the movants were disqualified by felony

18   convictions from carrying a handgun and that both were engaged at the time of

19   their arrests in criminal conduct rather then self-defense.

20   Defendants' argument that Plaintiffs Second Amendment claim is

21   "subsumed" within any claim available under the Fourth Amendment, Defs' Mot.,

22   at ECF p. 20, is contrary to Supreme Court and Ninth Circuit precedent. *Yang v.*

23   *Boudreaux* is wrongly decided to the extent that it holds that a plaintiff who was

24   "arrested for possession of firearms purportedly legally within his possession" has

1   no claim under the Second Amendment simply because they have a Fourth

2   Amendment claim. *Yang v. Boudreaux*, 2021 U.S. Dist. LEXIS 169395, at *16

3   (E.D. Cal. Sep. 7, 2021). The Court has rejected the view that the applicability of

4   one constitutional Amendment preempts the protections of another. *Soldal v. Cook*

5   *Cnty.*, 506 U.S. 56, 70 (1992). Certain wrongs affect more than a single right and,

6   accordingly, can implicate more than one of the Constitution's commands. *Id.* The

7   correct approach in such a situation where more than one constitutional provision

8   may apply is to examine each constitutional provision in turn under the elements of

9   that provision. *Id.* So, when the same conduct affects more than a single right, each

10   claim based on each right is independently actionable without satisfying all the

11   elements of the other claims based on the other rights. *Id.* Thus, the mere fact that a

12   plaintiff can state a Fourth Amendment claim does not mean that they cannot also

13   state a claim under another constitutional provision for the same conduct. *Id.* This

14   rule is especially strong where, as here, plaintiffs sue a municipality for injuries

15   flowing from an arrest caused by a municipal policy. *Lozman v. City of Riviera*

16   *Beach, Fla.*, 138 S. Ct. 1945, 1951, 1954-55 (2018).

17        The Supreme Court has explained that the merger or "subsume" theory

18   endorsed by *Yang*, 2021 U.S. Dist. LEXIS 169395, at *16, works only when one of

19   the constitutional rights is the non-textual right of substantive due process. *Soldal.*,

20   506 U.S. at 70.

1       The Ninth Circuit has followed this analysis in *Grossman*. *Grossman v. City*

2  *of Portland*, 33 F.3d 1200, 1203 (9th Cir. 1994)(Dr. Grossman's constitutional

3  claim does not stem from an absence of probable cause to arrest, but from the

4  alleged unconstitutionality of the ordinance justifying the arrest). In *Grossman*, a

5  municipality's police officers arrested a protestor for failing to obtain a permit

6  before protesting in a park as a municipal ordinance required. *Id. at* 1209 n.18. Dr.

7  Grossman subsequently sued the municipality and the primary arresting officer

8  under 42 U.S.C. § 1983, claiming that the arrest violated his First Amendment

9  right to free speech. *Id.* at 1200, 1203. The District Court granted summary

10  judgment to the municipality and the officer on the theory that since the officer had

11  probable cause to make the arrest, both the municipality and the officer were

12  "privileged" from suit. *Id.* at 1203.

13       The Ninth Circuit held that the officer was entitled to qualified immunity

14  because their reliance on a municipal ordinance was objectively reasonable. *Id.* at

15  1210. But the court remanded as to the municipality because "Dr. Grossman's

16  constitutional claim does not stem from an absence of probable cause to arrest, but

17  from the alleged unconstitutionality of the ordinance justifying the arrest." *Id.* at

18  1203.

19       Following *Soldal* and *Grossman*, Judge Lamberth in *Smith* separately

20  analyzed Plaintiffs' claims under the Second Amendment, the Fourth Amendment,

1   and the Fifth Amendment. *Smith I*, 387 F. Supp. 3d at 24, 25-26; *Smith II*, at 62-64

2   (Second Amendment claim); at 64-65 (Fifth Amendment claim). Judge Lamberth

3   held that although Plaintiffs stated claims under the Second Amendment and the

4   Fifth Amendment, *Smith I*, 387 F. Supp. 3d at 25-26, they did not state a claim

5   under the Fourth Amendment because the probable cause supplied by the arresting

6   officer's reliance on unconstitutional statutes to make arrests defeated the Fourth

7   Amendment claim but bot the Second Amendment claim. *Id.* at 24. Judge

8   Lamberth later entered summary judgment in favor of the Plaintiffs on both their

9   Second Amendment and, in the case of non-residents, their Fifth Amendment

10   claims as well. *Smit II*, 568 F. Supp. 3d at 62-64, 65.

11        Moreover, *Yang*'s analysis of determining which constitutional provision

12   applies has the analysis backwards. *Yang* looked at the closest common law

13   analogue – false arrest – and then decided that that the Fourth Amendment applied

14   to the defendant's conduct rather than the Second Amendment. But the analysis the

15   Supreme Court follows is the opposite. First, the Court determines which, if any,

16   Constitutional provisions the defendant's conduct violates. *Soldal*, at 70. Only

17   then, for purposes of fashioning a remedy only, because § 1983 does not provide

18   remedies for violations of constitutional provisions, the Court looks to the

19   "analogous common law cause of action," and the "common-law tort rules of

20   damages" for a remedy. *Carey v. Piphus*, 435 U.S. 247, 257-258 (1978).

1    And Defendants' failure to exhaust argument, Defs' Mot. ECF p. 14, also

2  referenced in *Dykes* and *Robinson*, is also a non-starter given the nature of Named

3  Plaintiffs' claim. *See Smith II*, *supra*. Named Plaintiffs' claim is that Defendants

4  put Named Plaintiffs into a Catch-22 by implementing a licensing regime to effect

5  a total ban on the carriage of a handgun in public for self-defense while at the same

6  time arresting, detaining, and referring them for prosecution merely for engaging in

7  the protected constitutional conduct of carriage of a handgun in public for self-

8  defense.

9    It would have been futile for Plaintiffs to apply for a CCW because they

10  obviously did not satisfy the definition of "good cause" established by the Chief.

11  The Ninth Circuit has stated that, "We have consistently held that standing does

12  not require exercises in futility." *Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir.

13  2002). Since Defendants' policy unambiguously rendered an application futile,

14  plaintiffs required to submit a formal application to establish standing. *Id.*

15    After the Ninth Circuit's *en banc* decision in *Peruta v. Cty. of San Diego*,

16  any attempt to challenge Defendants' definition of "good cause" in the District

17  Court was also an exercise in futility. *Peruta v. Cty. of San Diego*, 824 F.3d 919,

18  925 (9th Cir. 2016) (*en banc*). Nor was mandamus available from a state court.

19  *Gifford v. City of L.A.*, 88 Cal. App. 4th 801, 805, 106 Cal. Rptr. 2d 164, 168

1   (2001)(denying mandamus unless agency's action was arbitrary, capricious, or

2   entirely lacking in evidentiary support).

3        Moreover, although the exhaustion doctrine *may* apply to a challenge to a

4   denial of a CCW, Plaintiffs seek damages and relief in the form of a declaration

5   that their arrests were a legal nullity because Defendants violated their Second

6   Amendment right to carry a handgun in public for self-defense. They do not seek

7   in this lawsuit to compel the City to issue them a license.

8        Plaintiffs' Second Amendment claim is like any claim where a person seeks

9   damages because a municipality enforced an unconstitutional criminal statute

10  against them. *See e.g.*, *Grossman*, *supra; Sandoval, infra*. Plaintiffs have standing

11  for those claims because they suffered injury when Defendants enforced the

12  criminal statutes against them while refusing to issue licenses to carry a handgun in

13  public for self-defense, and because of their arrest records. *Pizzo v. City & Cnty. of*

14  *S.F.*, 2012 U.S. Dist. LEXIS 173370, at *32-33 (N.D. Cal. Dec. 5, 2012)(listing

15  standing requirements). Named Plaintiffs do not need to show that their

16  applications were denied to establish the actual injury-in-fact element of standing.

17  Enforcing the criminal laws against them merely for engaging in constitutionally

18  protected conduct satisfied standing.

19       Finally, there is no independent exhaustion requirement in the text of § 1983

20  outside of the prison litigation area. *Patsy v. Bd. of Regents*, 457 U.S. 496, 516,

1   102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Felipe v. Surgees*, 2009 U.S. Dist. LEXIS

2   12146, at *7 (E.D. Cal. Feb. 3, 2009).

3       Mr. Matthews states a claim because even though state law restricts CCWs

4   to residents of a jurisdiction, and he was not a resident of the City at the time of his

5   arrest, the state residency requirement is merely a red herring or, at best, a

6   concurrent cause. Restat 3d of Torts: Liability for Physical and Emotional Harm, §

7   27 (If multiple acts occur, each of which under § 26 alone would have been a

8   factual cause of the physical harm at the same time in the absence of the other

9   act(s), each act is regarded as a factual cause of the harm.); *In re Juul Labs, Inc.,*

10  *Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 665 (N.D. Cal.

11  2020)(RICO causation). Defendants still would not have granted him a CCW, even

12  if he were a resident, and so Defendants' policy was the moving force behind his

13  arrest and other injuries. *Id.* His claim is not time-barred because of the continuing

14  tort doctrine because the criminal prosecution stemming from his arrest was not

15  dismissed until 12/16/2021, which is within the two year period from the time of

16  his arrest, 9/27/2019, and so "at least one act falls within the time period." *See*

17  *Romero-Manzano v. Carlton Nursery Co.*, LLC, 733 F. App'x 912, 913 (9th Cir.

18  2018)(quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122

19  (2002)(hostile work environment)); *see e.g., United States v. Blizzard*, 27 F.3d 100,

20  102 (4th Cir. 1994)(certain crimes such as receiving or concealing stolen property

1    are continuing crimes, whose statutes of limitations do not commence until

2    wrongful possession or concealment ends).

3    **2.  *Defendants' own policy was the "moving force" behind the violation of***
4    ***Plaintiffs' Second Amendment rights.***

5        A government entity may not be held liable under 42 U.S.C. § 1983, unless a

6    policy, practice, or custom of the entity can be shown to be a moving force behind

7    a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of the City of New*

8    *York*, 436 U.S. 658, 694 (1978). Where, as here, a plaintiff claims that a municipal

9    action itself violates a constitutional provision, "the issues of fault and causation

10   are straightforward," *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S.

11   397, 404 (1997). In such situations, "proof that the municipality's decision was

12   unconstitutional would suffice to establish that the municipality itself was liable for

13   the plaintiff's constitutional injury." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239,

14   1247-48 (9th Cir. 2016); *Smith I*, 387 F. Supp. 3d at 26 n.12 ("these plaintiffs draw

15   a straight line from an unconstitutional criminal law to their injuries.").

16       Plaintiffs' Amended Complaint alleged that Defendants implemented their

17   own municipal policy of imposing a total ban on the carriage of handguns outside

18   the home for purposes of general self-defense by refusing to issue CCWs for

19   general self-defense. *See e.g.*, Am. Compl. ¶ 18, 19, 94 *et seq.*

20       If Named Plaintiffs had been able to get CCWs they would have been able –

21   lawfully under California law – to carry handguns outside the home Penal Code

1  sections 25400(a)(1) and 25850(a) because, as explained above, both provisions

2  exempt persons who carry a handgun in public for self-defense pursuant to a CCW.

3  Only the lack of access to a CCW made their public carriage for self-defense a

4  violation of California law. And Defendants held the keys to the kingdom of

5  CCWs – but they kept the doors locked. Plaintiffs clearly pled how Defendants'

6  policies combined to impose a total ban on the carriage of handguns outside the

7  home for purposes of general self-defense.  Am. Compl. ¶ 110.

8       Plaintiffs also clearly pled that they were basing their *Monell* claim on the

9  policies of Defendants and not on any California State statute.

10      The polices of the City, the Board and the LAPD establish the
11      meaning of "good cause" as a Catch 22 to totally ban carriage of
12      handguns outside the home and place of business: you are free to
13      carry a concealed handgun outside the home if you get a license from
14      us, but, we will not give you a license; and if you carry a handgun
15      outside the home or place of business without a license, we will arrest
16      you, charge you with a crime, and detain you.

17  Am. Compl. ¶ 110.
18
19      The text of the Amended Complaint also specifically identifies the sources

20  of Defendants' policies as: (1) "a comprehensive set of municipal ordinances

21  setting forth its own handgun policies that regulate the sale, possession and use and

22  licensing of firearms and ammunition within its boundaries that is much more

23  restrictive than the State statutory scheme requires," (2) the Board of Police

24  Commissioners' definition of "good cause," and (3) the "LAPD Carry Concealed

1    Weapon License Policy," promulgated by the Chief of Police of the Los Angeles

2    Police Department. Am. Compl. ¶ ¶ 15- 19.

3         And yet, inexplicably, Defendants frame Plaintiffs' Amended Complaint as

4    an "attack on Plaintiffs' arrests for violating two State penal code statutes."

5    Defendants' Mot., ECF p. 10 (citing Pen. Code §§ 25400, 25605), claiming

6    "Plaintiffs, however, do not point to any other City "laws, customs, practices and

7    policies" besides the official written policy on issuing CCW licenses." Defs' Mot.

8    ECF p. 15.

9         The same analysis the Ninth Circuit employed in *Sandoval v. Cnty. of*

10   *Sonoma* governs Plaintiffs' *Monell* claim. In *Sandoval v. Cnty. of Sonoma*, the

11   Ninth Circuit held that the County's implementation of its own construction of a

12   California state statute – construing never had a driver's license to mean never

13   having had a California state driver's license – pursuant to a County policy

14   amounted to its own policy, and not a policy of the State. *Sandoval v. Cnty. of*

15   *Sonoma*, 912 F.3d 509, 517 (9th Cir. 2018)(impoundment of plaintiffs' vehicles

16   was thus not caused by state law, but by Defendants' policies of impounding

17   vehicles when the driver had never been issued a California driver's license); *see*

18   *also Brewster v. City of L.A.*, 2019 U.S. Dist. LEXIS 225770, at *16-17, *21 n.6

19   (C.D. Cal. July 29, 2019).

1    Municipal liability is established here because Defendants' CCW policy

2    combined with the statutes criminalizing carriage of a handgun in public is

3    generally applicable and the arrest, detention, and referral for prosecution of

4    Plaintiffs was "simply an implementation of that policy." *Brewster*, 2019 U.S.

5    Dist. LEXIS 225770, at *16-17; *Smith II*, at 62-64. If Named Plaintiffs had been

6    able to get CCWs they would have been able – lawfully under California law – to

7    carry handguns outside the home Penal Code sections 25400(a)(1) and 25850(a).

8    Only the lack of access to a CCW made their public carriage for self-defense a

9    violation of California law.

10    Likewise, *Johnson v. DeKalb Cnty*. is distinguishable because here, "but for

11    the existence of this [City] policy [of refusing to issue ccs for carriage of a

12    handgun in public for self-defense], [their] injuries would not have occurred.

13    *Johnson v. DeKalb Cnty.*, 391 F. Supp. 3d 1224, 1258 (N.D. Ga. 2019)

14    As Judge Lamberth phrased it in *Smith I*, where the District's police force

15    arrested people for violating its unconstitutional gun laws, "these plaintiffs draw a

16    straight line from an unconstitutional criminal law to their injuries." *Smith I*, 387 F.

17    Supp. 3d at 26 n.12.

18    *Anderson v. Baseball Club of Seattle*, 2010 U.S. Dist. LEXIS 138544, at

19    *17-18 (W.D. Wash. Dec. 28, 2010) and *Villegas v. Gilroy Garlic Festival Ass'n*,

20    541 F.3d 950, 957 (9th Cir. 2008)*(en banc)* distinguishable because the laws

1    Plaintiffs were arrested under provided exemptions for carrying pursuant to a CCW

2    which Defendants refused to issue for carriage of a handgun in public for self-

3    defense.

4        Nor do Plaintiffs contend that Defendants acted *ultra vires* by their CCW

5    policy by legislating in an area the State had preempted. Defs' Mot., ECF p. 15,

6    lines 6-19. As the entities in *Sandoval* and *Brewster* did, they implemented a state

7    statute that they had effectively altered by their "no issue" CCW policy. On this

8    point this case is thus exactly *like Grossman v. City of Portland*, where the Ninth

9    Circuit held that a municipality's enforcing an unconstitutional municipal

10   ordinance (requiring protestors to obtain a license before protesting) through its

11   police officers against protestors violated their First Amendment rights without a

12   permit. *Grossman*, 33 F.3d at 1206, 1209 n.18.

13       Finally, California's "safe harbor" to transport a gun in a locked container or

14   in a vehicle's trunk is not a substitute for Mr. Matthews' Second Amendment right

15   to carry of a handgun in public for self-defense. Defs' Mot., ECF p. 11 n. 1.

16   **B. Mr. Matthews plausibly pled both a predicate constitutional violation**
17   **and a *Monell* claim under the Fourteenth Amendment "right to travel."**

18       Only Mr. Matthews, an out of state resident at the time of his arrest,

19   detention, and prosecution, brings the "right to travel" claim.

20       As in *Smith II*, "Neither party disputes that, at the time in question, non-

21   residents in the [City] could not possess a gun." *Smith II*, 568 F. Supp. 3d at 66.

1   The primary, if not only, cause, was Defendants no-issue CCW policy and its

2   general anti-gun gun control policies shown in its municipal code and the Board's

3   and the Chief's definition of "good cause." Am. Compl. ¶ ¶ 15- 19; ¶ 110. If

4   Defendants' gun laws and policies take away the fundamental right to have a

5   handgun for individual self-defense from non-City residents who enter the City,

6   this Court must apply strict scrutiny," and the burden is on Defendants to justify

7   the policies, which they cannot do at the motion to dismiss phase. *Smith*, 387 F.

8   Supp. 3d at 30; see also Smith II, 568 F. Supp. 3d at 66.

9        The Supreme Court – like the Ninth Circuit - has neither recognized nor

10  rejected the Fourteenth Amendment "right to travel." *Potter v. City of Lacey*, 46

11  F.4th 787, 800 n. 11 (9th Cir. 2022). Mr. Matthews' claim is not time barred for

12  the reasons discussed above in Paragraph A, 1. Plaintiffs also adopt here the

13  discussion of Defendants' *Monell* liability in Paragraph A, 2.

14                          CONCLUSION

15

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| */s/ William Claiborne*<br>WILLIAM CLAIBORNE<br>*Pro hac vice*<br>D.C. Bar # 446579<br><br>Counsel for named Plaintiffs and the putative classes | */s/ Jovan Blacknell*<br>JOVAN BLACKNELL<br>SBN 237162<br><br>Counsel for named Plaintiffs and the putative classes |