1  MICHAEL N. FEUER, City Attorney (SBN 111529x)
2  SCOTT MARCUS, Senior Assistant City Attorney (SBN 184980)
   GABRIEL S. DERMER, Supervising City Attorney (SBN 229424)
3  BENJAMIN CHAPMAN, Deputy City Attorney (SBN 234436)
4  benjamin.chapman@lacity.org
   200 North Main Street, 6th Floor, City Hall East
5  Los Angeles, California 90012
6  Telephone Number:  213.978.7556
   Facsimile Number: 213.978.8214
7
8  Attorneys for Defendants,
9  CITY OF LOS ANGELES,
   LOS ANGELES POLICE DEPARTMENT, and
10 LOS ANGELES BOARD OF POLICE COMMISSIONERS
11
12            **UNITED STATES DISTRICT COURT**
13    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
14
15 GARRY MATTHEWS and DOMINIC        ) Case No.: 22-cv-02944-FLA-PD
   ROSS HUNN, individually and as class )
16 representatives,                   ) **THE CITY DEFENDANTS REPLY IN**
                                      ) **SUPPORT OF THEIR MOTION TO DISMISS**
17            Plaintiffs,             ) **THE FIRST AMENDED COMPLAINT**
                                      )
18 vs.                               )
                                      ) Date:      December 2, 2022
19 CITY OF LOS ANGELES, LOS          ) Time:      1:30 p.m.
20 ANGELES POLICE DEPARTMENT,        ) Ctrm:      6B-First Street Courthouse
   AND LOS ANGELES BOARD OF          ) Judge:     Hon. Fernando L. Aenlle-Rocha
21 POLICE COMMISSIONERS,             )
22                                   )
            Defendants.              ) Action Filed: 05/03/2022
23                                   )
24                                   )
                                      )
25                                   )
26 _____ )
27
28

# **TABLE OF CONTENTS**

I.   INTRODUCTION ....................................................................................... 1

II.  PLAINTIFFS' SECOND AMENDMENT CLAIM IS SUBJECT TO DISMISSAL ................. 2

    A.   Element 4:  The City's "Official Policy on issuing CCWs" was not the
        "Moving Force" for the Alleged Constitutional Violation (the Arrests). .. 3

    B.   Element 1:  The City's Enforcement of Penal Code sections 25400
        and 25850 did not Violate Plaintiffs' Constitutional Rights...................... 8

    C.   Matthews' Second Amendment Claim Fails because he was Ineligible
        to Obtain a CCW Under California State Law........................................ 10

III. MATTHEWS FOURTEENTH AMENDMENT RIGHT TO TRAVEL CLAIM FAILS AS
    A MATTER OF LAW ................................................................................. 11

    A.   Matthews' Right to Travel Claim is Time-Barred. ................................. 11

    B.   Matthews' Right to Travel Claim Fails as a Matter of Law. ................... 13

IV.  CONCLUSION ....................................................................................... 15

**REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmad Hamad Algosaibi & Brothers Co. v. Stewart*,
No. CV 11-02596 JGB (Ex), 2013 WL 12122305 (C.D. Cal. Apr. 30, 2013).......13

*Alexander v. Cal. Dep't of Motor Vehicles*,
No. 19-cv-03996-TSH, 2019 WL 4194128 (N.D. Cal. Sept. 4, 2019) .................13

*Anderson v. Baseball Club of Seattle*,
No. C09-0850RAJ, 2010 WL 5463828 (W.D. Wash. Dec. 28, 2010)...........2, 4, 10

*Brewster v. City of L.A.*,
No. EDCV 14-2257 ...............................................................................4, 6, 7

*Carmichael v. Ige*,
470 F. Supp. 3d 1133 (D. Haw. 2020)....................................................15

*City of Canton v. Harris*,
489 U.S. 378 (1989)..................................................................................7

*Dougherty v. City of Covina*,
654 F.3d 892 (9th Cir. 2011) ..................................................................2

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*,
713 F.3d 502 (9th Cir. 2013) ................................................................16

*Erdman v. Cochise County*,
926 F.2d 877 (9th Cir. 1991) ..................................................................9

*Ewing v. City of Stockton*,
588 F.3d 1218 (9th Cir. 2009) ..............................................................11

*Fiscal v. City and County of San Francisco*,
158 Cal.App.4th 895 (2008) ....................................................................3

*Flanagan v. Harris*,
No. LA CV16-06164 ...........................................................................9, 10

*Flowers v. Carville*,
310 F.3d 1118 (9th Cir. 2002) ..............................................................13

*Garcia v. Brockway*,
    526 F.3d 456 (9th Cir. 2008) .................................................................13

*Garmon v. County of L.A.*,
    828 F.3d 837 (9th Cir. 2016) ...................................................................7

*Grossman v. City of Portland*,
    33 F.3d 1200 (9th Cir. 1994) .......................................................4, 6, 10

*Johnson v. Dekalb County*,
    391 F. Supp. 3d 1224 (N.D. Ga. 2019)..................................................11

*Knox v. Davis*,
    260 F.3d 1009 (9th Cir. 2001) .........................................................12, 13

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002)...............................................................................13

*New York State Rifle Ass'n v. Bruen*,
    No. 20-843, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (June 23, 2022) ...........1

*Nichols v. Brown*,
    859 F. Supp. 2d 1118 (C.D. Cal. 2012) .......................................2, 4, 10

*People v. Rodriguez*,
    171 N.Y.S.3d 802 (Sup Ct. NY County 2022) ..................................9, 10

*RK Ventures, Inc. v. City of Seattle*,
    307 F.3d 1045 (9th Cir. 2002) .........................................................12, 13

*Romero-Manzan v. Carlton Nursery Co., LLC*,
    733 Fed. Appx. 912 (9th Cir. 2018)......................................................12

*Sanchez v. Young County, Texas*,
    956 F.3d 785 (5th Cir. 2020) .................................................................11

*Sandoval v. County of Sonoma*,
    912 F.3d 509 (9th Cir. 2018) .......................................................4, 8, 10

*Smith v. District of Columbia*,
    387 F. Supp. 3d (D.D.C. 2019) (*Smith I*)........................................ passim

*Smith v. District of Columbia*,
    568 F. Supp. 3d 55 (D.D.C. 2021) (*Smith II*) ......................... 1, 2, 5, 15

iii

*Touloudjian v. Cal. Dep't of Corrs. and Rehab.*,
 No. 2:20-cv-00520-FLA (KSx), 2021 WL 4812315, at *10 (C.D. Cal. May 24,
 2021) ................................................................................................................14

*Wilson v. Seiter*,
 501 U.S. 294 (1991) .........................................................................................11


**Statutes**

California Code of Civil Procedure 335.1 ...................................................................11

California Penal Code sections 25400 and 25850 ............................................. *passim*

California Vehicle Code section 14602.6 ...........................................................6, 7, 8

Pen. Code § 25605 ................................................................................................14

Pen. Code § 25610(a)............................................................................................14

Penal Code section 26155(a)(3) ...........................................................................11

**REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendants City of Los Angeles, the Los Angeles Police Department (LAPD), and the Los Angeles Board of Police Commissioners (the Board) (collectively, the "City") file this reply in support of their motion to dismiss Plaintiffs' First Amended Complaint (FAC) (ECF No. 40 (Motion)).

## I. INTRODUCTION

Plaintiffs were arrested by LAPD officers for violating California Penal Code sections 25400 and 25850. (FAC ¶¶ 34, 41, 51.) Based on these arrests,[1] Plaintiffs assert two causes of action under Section 1983 for violations of the Second Amendment (Claim One) and the Fourteenth Amendment's Right to Travel (Claim Two).

As explained in the Motion (*id*. at 9-17), the Second Amendment claim fails because Plaintiffs cannot establish the first and fourth elements of a *Monell* claim where: (1) the City did not deny Plaintiffs a constitutional right because they were arrested under California penal laws that were constitutional then, and remain constitutional today, even post the Supreme Court's decision in *New York State Rifle Ass'n v. Bruen*, No. 20-843, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (June 23, 2022); and (2) the City's "official written policy on issuing CCWs [Carry Concealed Weapons licenses]" was not the "moving force" for the alleged constitutional violation (Plaintiffs' arrests).

In response, Plaintiffs principally analogize this case to two decisions arising out of the same District of Columbia case, *Smith v. District of Columbia*, 387 F. Supp. 3d 8 (D.D.C. 2019) (*Smith I*), and *Smith v. District of Columbia*, 568 F. Supp. 3d 55 (D.D.C. 2021) (*Smith II*). But there are two huge differences between *Smith* and this case that are fatal to Plaintiffs' reliance on it here.

In *Smith*, the plaintiffs were arrested by District of Columbia (D.C) police officers for violating (1) *unconstitutional* (2) *D.C.* laws. *Smith I*, 387 F. Supp. 3d at 13-15, 26. The district court held this stated a *Monell* violation. *Id.* at 26 n.12 (Section 1983 claim arising out of arrests survived motion to dismiss "since these plaintiffs allege the criminal

---

[1] *See*, *e.g*., FAC ¶ 118 (Claim 1 alleges Plaintiffs' Second Amendment rights were violated when they were arrested and detained); *id*. ¶ 130 (Claim 2 alleges Matthews' right to travel was violated when he was arrested and detained).

laws undergirding their arrests and prosecutions are themselves constitutionally invalid"); *Smith II*, 568 F. Supp. 3d at 62 (*Monell* liability where "the action that is alleged to be unconstitutional implements or executes an ordinance officially adopted and promulgated by the body's officers" (quotation marks omitted)).

But here, Plaintiffs do *not* contend the criminal laws they were arrested under are "constitutionally invalid." Nor were they "officially adopted and promulgated by" the City; they are state laws. It is well established that "mere enforcement" of a constitutional state statute "is not a sufficient basis for imposing § 1983 municipal liability." *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1133 (C.D. Cal. 2012); *Anderson v. Baseball Club of Seattle*, No. C09-0850RAJ, 2010 WL 5463828, at *5 (W.D. Wash. Dec. 28, 2010) (no *Monell* liability against city where "it is unclear how it would be unconstitutional for police officers to enforce a presumptively constitutional law"). Plaintiffs do not cite a single case to the contrary.

The second claim is easily disposed of. As explained in the Motion (*id.* at 16-23), non-resident Matthews' right to travel claim is barred by the applicable statute of limitations, and also fails as a matter of law. Matthews addresses the statute of limitations argument in a single sentence. (Opp. at 19:13-16.) He addresses the merits of the claim in less than one page. (*Id.* at 24:25-25:13.) None of his arguments are persuasive.

## II.    PLAINTIFFS' SECOND AMENDMENT CLAIM IS SUBJECT TO DISMISSAL

"[T]o establish liability for governmental entities under *Monell*, a plaintiff must prove (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). As explained in the Motion, Plaintiffs cannot establish the first and fourth elements. (Mot. at 9-17.)

In response, Plaintiffs analogize this case to other cases finding *Monell* violations, principally, *Smith v. District of Columbia*. However, the cases cited by Plaintiffs are all

distinguishable.  The City addresses Plaintiffs' arguments regarding the first and fourth *Monell* elements in reverse order.

### A.   Element 4:  The City's "Official Policy on issuing CCWs" was not the "Moving Force" for the Alleged Constitutional Violation (the Arrests).

Plaintiffs cannot show as a matter of law that the City's CCW policy is the "moving force" behind the alleged constitutional violation (the arrests).  (Mot. at 13-16.)   In response, Plaintiffs:  (1) confuse the actual policy in this case; and (2) analogize this case to inapposite cases addressing different fact patterns.  Rather, the cases Plaintiffs cite actually demonstrate why Plaintiffs cannot establish the requisite "moving force" here.

***First***, the FAC identifies the challenged municipal policy as the "official written policy on issuing CCWs" that restricts licenses to applicants who can show a special need for self-defense based on the City's definition of the term "good cause."  (FAC ¶¶ 18, 106-07.)  Plaintiffs allege that the City used this policy to refuse to issue any CCWs (*e.g.*, *id.* ¶ 110), and that "the City's refusal to issue CCWs or licenses to openly carry based on the City and the Board and the LAPD's definition of 'good case' [sic] violate[s] the Second Amendment."  (*Id.* ¶ 144(1).)

But in their Opposition, Plaintiffs change their description of the policy so it is now the "'no issue' policy of refusing to issue CCWs for general self-defense *combined with* the state statutes criminalizing carriage of a handgun in public for self-defense." (Opp. at 5:23-25 (emphasis added).)  In other words, Plaintiffs now claim that the policy they challenge is the CCW policy *plus* constitutional state laws.[2]  But Plaintiffs do not, and cannot cite a single case in which a court has found that an alleged policy *plus* enforcement

---

[2] Later, Plaintiffs identify the policy as *excluding* the state statutes:  "Plaintiffs also clearly pled that they were basing their *Monell* claim on the policies of the Defendants and not on any California state statute." (Opp. at 21:8-9.)  However, to the extent Plaintiffs rely on other policies in addition to the CCW policy, such as so-called City ordinances "regulat[ing] the sale, possession and use and licensing of firearms and ammunition" (*id.* at 21:19-22), no such ordinances are identified in the FAC.  (*E.g.*, FAC ¶¶ 97-100 [identifying a single City ordinance related to discharging firearms].)  Nor do they exist; as explained in the Motion, California has chosen to preempt all laws related to licensing and possessing firearms. *Fiscal v. City and County of San Francisco*, 158 Cal.App.4th 895, 909-11 (2008).

of constitutional state laws constitutes a policy for purposes of *Monell*.

**Second**, Plaintiffs analogize this case to cases finding a *Monell* violation where the municipality:  (1) arrested the plaintiffs for violating an *unconstitutional* law that the *municipality* enacted;[3] (2) enforced an *unconstitutional state law*;[4] or (3) enforced a policy that was unconstitutional because it was *at odds with state law*.[5]  (Opp. at 20-24.)  But our case does not fall into any of these categories.  Rather, the City arrested Plaintiffs for violating *constitutional state* laws.  Plaintiffs do not cite a single case holding that this constitutes a *Monell* violation.  It does not.  *Nichols*, 859 F. Supp. 2d at 1133; *Anderson*, 2010 WL 5463828, at *5.

Plaintiffs cite *Smith I* for the proposition that the "moving force" requirement is satisfied where "'plaintiffs draw a straight line from an unconstitutional criminal law to their injuries.'" (Opp. at 20:14-15, quoting *Smith I*, 387 F. Supp. 3d at 26 n.12.)  But Plaintiffs cannot "draw a straight line from unconstitutional criminal law to their injuries" because Plaintiffs were arrested pursuant to constitutional criminal laws.

*Smith I* highlights this important distinction.  There, in upholding the plaintiffs' Section 1983 claim, the district court distinguished cases holding that Section 1983 plaintiffs subjected to unconstitutional searches who were then subsequently "arrested and prosecuted for violating a constitutionally valid criminal law cannot recover injuries stemming from their arrest and prosecution, even if evidence obtained through an unconstitutional search incriminated them."  *Smith I*, 387 F. Supp. 3d at 26 n.12.

> But this case [*Smith I*] is obviously different, since these plaintiffs allege *the criminal laws undergirding their arrests and prosecutions are themselves constitutionally invalid*.  Unlike in *Corrigan* [*v. Glover*, 254 F. Supp. 3d 185 (D.D.C. 2017)], these plaintiffs do not claim some other constitutional infirmity infected their arrests and prosecutions; they claim their arrests and prosecutions were Patient Zero.  Put differently, these plaintiffs draw a straight line from an unconstitutional criminal law to their injuries, while

---

[3]  *Smith I* and *II*; *Grossman v. City of Portland*, 33 F.3d 1200 (9th Cir. 1994).

[4]  *Brewster v. City of L.A.*, No. EDCV 14-2257 JGB (SPx), 2019 WL 7707886 (C.D. Cal. July 29, 2019).

[5]  *Sandoval v. County of Sonoma*, 912 F.3d 509 (9th Cir. 2018).

the *Corrigan* plaintiffs meander first from an unconstitutional search to a constitutional law, and then from the constitutional law to their injuries. Because these plaintiffs take one step where the *Corrigan* plaintiffs took two, they may recover what the *Corrigan* plaintiffs couldn't.

*Id*. (emphasis added).

Here, Plaintiffs simply do not "allege the criminal laws undergirding their arrests and prosecutions"—Penal Code sections 25400 and 25850—"are themselves constitutionally invalid."[6] Rather, Plaintiffs are like the "*Corrigan* plaintiffs" who "claim some other constitutional infirmity infected their arrests and prosecutions"—the City's unconstitutional CCW policy. Thus, Plaintiffs "meander first" from an unconstitutional "official policy on issuing CCWs" to constitutional laws (Penal Code sections 25400 and 25850) and then from constitutional laws to their injuries (their arrests). Thus, unlike the plaintiffs in *Smith I*, Plaintiffs do not "draw a straight line from an unconstitutional criminal law to their injuries," as they concede they are required to do in order to establish the "moving force" requirement.

*Smith II* is also fatal to Plaintiffs' attempts to establish the "moving force" requirement. There, the plaintiffs were arrested for violating D.C. ordinances that were "part of the District of Columbia code." 568 F. Supp. 3d at 62. The district court held that the "moving force" requirement was satisfied because "the action that is alleged to be unconstitutional implements or executes an ordinance officially adopted and promulgated by the body's officers." *Id*. (quotation marks omitted)). Thus, where a municipality arrests someone (the unconstitutional action) pursuant to a municipal criminal law (i.e., a law passed by the municipality), the moving force requirement is established.

But here, Plaintiffs were not arrested under *City* ordinances. Rather, Plaintiffs were arrested under *State* penal laws. *Smith II* does not address these circumstances; thus, it does not help Plaintiffs establish the requisite "moving force."

Plaintiffs also argue "this case is … exactly like *Grossman v. City of Portland*,

---

[6] Plaintiffs have stated that they "do not challenge the constitutionality of any California state statute or ordinance." (ECF No. 36 [Rule 26 Statement] at 1:15-16.)

where the Ninth Circuit held that a municipality's enforcing an unconstitutional municipal ordinance … through its police officers against protestors violated their First Amendment rights without a permit."  (Opp. at 24:7-12, citing *Grossman*, 33 F.3d at 1209 n.18.)  But in *Grossman*, the plaintiff was arrested by a Portland police officer for violating an *unconstitutional municipal* ordinance, Portland City Code section 20.08.010.  33 F.3d at 1208 (finding *Monell* liability where the plaintiff was "arrested pursuant to an unconstitutional city ordinance").  In other words, Portland passed an unconstitutional law and then arrested the plaintiff for violating it.  This is the same factual scenario as in *Smith*.  However, it is not the factual scenario here.

Plaintiffs also contend that "municipal liability is established here because Defendants' CCW policy *combined with the statutes criminalizing carriage of a handgun in public* is generally applicable and the arrest, detention, and referral for prosecution of Plaintiffs was 'simply an implementation of that policy.'"  (Opp. at 23:1-5 (emphasis added) (quoting *Brewster*, 2019 WL 7707886, at *6).)  But Plaintiffs do not, and cannot cite a single case holding *Monell* liability in similar circumstances.  Rather, *Smith I* rejects such liability.  *See*, *e.g.*, 387 F. Supp. 3d at 26 n.12 (no *Monell* liability where a plaintiff "meander[s] first from an unconstitutional search to a constitutional law, and then from the constitutional law to their injuries").

Despite Plaintiffs cite to *Brewster*, it does not actually involve a policy *combined with* constitutional state laws.  There, the plaintiffs alleged the City violated their Fourth Amendment rights by impounding their vehicles for 30-days pursuant to an LAPD policy that incorporated California Vehicle Code section 14602.6, which provided that "[a] vehicle so impounded shall be impounded for 30 days."  2019 WL 7707886 at *1-2.  The Ninth Circuit held that section 14602.6's 30-day impound provision constituted a Fourth Amendment seizure.  *Id*. at *1.  On remand, the City conceded it had a policy to enforce section 14602.6's 30-day impound provision and that such impounds were Fourth Amendment violations.  *Id*. at *4.  Yet, the City argued it "is not liable under § 1983 because its only deliberate conduct was a policy to enforce state law, i.e., California

Vehicle Code 14602.6(a)(1)." *Id*. The district court disagreed, holding that a municipality could be liable for enforcing an unconstitutional state law under Section 1983 where an "officially promulgated policy of general applicability" incorporated the unconstitutional state law. *Id*. at *5-6. Thus, where the policy "directs officers to impound vehicles for 30 days," as provided for under state law, "the impoundment of Plaintiffs' vehicles was simply an implementation of that policy." *Id*. at *6.

*Brewster* is distinguishable because it involved a policy (impounding vehicles for 30 days) that *was* the unconstitutional state law. In other words, the police officers were enforcing the policy (and the unconstitutional state law) when they caused the constitutional deprivation—the impoundment of the vehicles for 30 days. So the policy *was* the moving force behind the constitutional violation (the 30-day impoundment).

But here, the City's police officers were clearly not enforcing *the CCW policy* when they caused the alleged constitutional deprivations—Plaintiffs' arrests. Stated differently, Plaintiffs were not arrested "pursuant to" the City's CCW policy. *See*, *e.g*., *Garmon v. County of L.A.*, 828 F.3d 837, 845 (9th Cir. 2016) (holding that "plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury" (quotation marks omitted)). Nor were the police officers "executing" the CCW policy when they arrested Plaintiffs. *See*, *e.g*., *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("It is only when the execution of the government's policy … inflicts the injury that the municipality may be held liable under § 1983." (quotation marks omitted)).

Thus, *Brewster* merely holds that a municipality can be liable where it adopts an unconstitutional state law as its own municipal policy, and then enforces that policy. Plaintiffs do not make this allegation here. *Brewster* is inapposite.

Finally, Plaintiffs cite to *Sandoval v. County of Sonoma*. (Opp. at 22:9-19.) In *Sandoval*, the Ninth Circuit considered California Vehicle Code section 14602.6(a)(1), which provides that a peace officer may impound a vehicle for 30 days if the driver has never been issued a license. 912 F.3d at 513. While section 14602.6 does not define the

term driver's license, the municipal defendants adopted a policy of enforcing section 14602.6 against a driver who had never been issued a *California* license, although the driver had a license from another jurisdiction. *Id.* The plaintiffs, two drivers with foreign licenses who had their vehicles impounded because they did not have a California license sued under Section 1983, alleging the impoundments violated the Fourth Amendment. The district court agreed, and the Ninth Circuit affirmed. *Id.* at 514-17.

On appeal, the municipal defendants argued there was no *Monell* liability because they could not be liable under Section 1983 for merely enforcing state law. *Id.* at 517. But as the Ninth Circuit noted, the California Vehicle Code defines "driver's license" as a "valid license … for which a person is licensed under this code or by a foreign jurisdiction." *Id.* (quoting Veh. Code § 310). "Accordingly, a driver who has been issued a driver's license in a foreign jurisdiction … has not driven that vehicle 'without ever having been issued a driver's license,' and section 14602.6 does not authorize impounding their vehicles. The impoundment of plaintiffs' vehicles was thus *not caused by state law*, but by the defendants' policies of impounding vehicles when the driver had never been issued a California driver's license." *Id.* at 517 (emphasis added).

Thus, in *Sandoval*, the municipal defendants were enforcing a policy that contradicted state law! Plaintiffs do not make this allegation here. *Sandoval* is inapposite.

In sum, the City's alleged "official policy on issuing CCWs" was not the "moving force" for the alleged constitutional violation—Plaintiffs' arrests. The cases cited by Plaintiffs in their Opposition make this clear.

## B.   Element 1:  The City's Enforcement of Penal Code sections 25400 and 25850 did not Violate Plaintiffs' Constitutional Rights.

To establish *Monell* liability, "the court must first determine that a constitutional violation has occurred, i.e., that the [City] violated some constitutionally imposed duty to Plaintiffs" by arresting them for violating Penal Code sections 25400 and 25850. *Erdman v. Cochise County*, 926 F.2d 877, 882 (9th Cir. 1991). Here, Plaintiffs were arrested for violating Penal Code sections 25400 and 25850. (ECF No. 40-1 (Chapman Decl.) Exhs.

A-C.)  But these State laws are constitutional, and Plaintiffs do not argue otherwise.  Thus, there is no constitutional violation.  (Mot. at 10:12-13:2.)

In response, Plaintiffs write a lot of words, but they fail to address the merits of the City's arguments.  (Opp. at 4:16-20:2.)

*First*, Plaintiffs simply repeat some variation of the bald statement that the City "impose[d] a total ban on the carriage of handguns outside the home for purposes of general self-defense" through its "'no issue' policy of issuing CCWs."  (Opp. at 5:3-5; 9:13-15.)  But the City did not impose any ban on carrying handguns outside the home.  Like the trial court held in *People v. Rodriguez*, 171 N.Y.S.3d 802 (Sup Ct. NY County 2022), "defendant's quarrel lies not with the licensing scheme, but with the statutes criminalizing unlicensed possession."  *Id*. at 805.  But the "statutes criminalizing unlicensed possession" are State laws that Plaintiffs do not challenge here.[7]  Simply put, enforcing a constitutional state criminal law *does not* state a constitutional violation for purposes of *Monell*.  *Nichols*, 859 F. Supp. 2d at 1133; *Anderson*, 2010 WL 5463828, at *5.  Again, Plaintiffs do not cite a single case to the contrary.

Next, Plaintiffs again analogize this case to *Smith v. District of Columbia*.  (Opp. at 4-16.)  But as discussed above, there is a huge difference between *Smith* and this case.  There, the district court held that because the plaintiffs were arrested by D.C. police officers for violating allegedly *unconstitutional D.C. laws*, they stated a constitutional violation for purposes of *Monell*.  *See*, *e.g*., *Smith I*, 387 F. Supp. 3d. at 26 n.12 (Section 1983 claim arising out of arrests survived motion to dismiss "since these plaintiffs allege the criminal laws undergirding their arrests and prosecutions are themselves constitutionally invalid").  But here, Plaintiffs do *not* allege Penal Code sections 25400 and 25850 are "themselves constitutionally invalid."  Again, enforcing a constitutional state criminal law *does not* state a constitutional violation.  *Nichols*, 859 F. Supp. 2d at

---

[7] If Plaintiffs want to vindicate their right to carry a handgun in public, then they need to sue the State, not the City.  *Flanagan v. Harris*, No. LA CV16-06164 JAK (ASx), 2017 WL 729788, at *3-4 (C.D. Cal. Feb. 23, 2017).

1133; *Anderson*, 2010 WL 5463828, at *5.

For the same reason, Plaintiffs' argument that their "Second Amendment claim is like any claim where a person seeks damages because a municipality enforced an unconstitutional criminal statute against it" misses the mark. (Opp. at 18:8-20, citing *Grossman* and *Sandoval*.) Here, the City did not enforce an unconstitutional criminal statute against Plaintiffs. So *Grossman* is inapplicable.[8] Again, Plaintiffs do not, and cannot cite a single case holding that enforcing a *constitutional* law is a constitutional violation for purposes of *Monell*.

In sum, this case does not involve a situation where the City enacted unconstitutional laws, and then arrested Plaintiffs for violating them like *Smith* and *Grossman*. Here, Plaintiffs allege the City arrested them for violating *constitutional* State laws. (ECF No. 40-1 [Chapman Decl. Exhs. A-C].) Plaintiffs' arrests, thus, are not constitutional violations for purposes of *Monell*.

## C.   *Matthews'* Second Amendment Claim Fails because he was Ineligible to Obtain a CCW Under California State Law.

Under California law, only City "residents" are eligible to obtain a CCW from the City. (Pen. Code § 26155(a)(3).) At the time of his arrest, Matthews was not a City resident. (FAC ¶ 8.) Thus, even accepting the viability of Plaintiffs' *Monell* claim, which the City refutes, Matthews' Second Amendment claim is still barred because irrespective of the City's "good cause" CCW policy, Matthews could not obtain a CCW from the City.

Notwithstanding, Matthews argues that his Second Amendment claim is valid "because even though state law restricts CCWs to residents of a jurisdiction, and he was not a resident of the City at the time of his arrest, the state residency requirement is merely a red herring or, at best, a concurrent cause." (Opp. at 19:3-5.) Not so.

"Our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a *direct causal link* between a municipal policy or custom and

---

[8] As previously noted, *Sandoval* does not involve the enforcement of an unconstitutional criminal statute. Rather, it involves a municipality's failure to properly *apply* a valid state law. *Sandoval*, 912 F.3d at 517.

the alleged constitutional deprivation." *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009) (emphasis added; quotation marks omitted). Here, there is no "direct causal link" between the City's "good cause" CCW policy and Matthews' arrest because, as a non-resident, Matthews was not eligible to obtain a CCW from the City. In other words, "even absent the purported constitutional deficiencies in" the City's "good cause" CCW policy, Matthews "still would have been arrested under" Penal Code section 25400. *See*, *e.g.*, *Johnson v. Dekalb County*, 391 F. Supp. 3d 1224, 1258-59 (N.D. Ga. 2019) (no direct causal link between the county's policy and the plaintiff's injury (his arrest)).[9]

## III. THE FAC'S SECOND CLAIM—WHICH IS ONLY ASSERTED BY PLAINTIFF MATTHEWS—FOR VIOLATION OF THE FOURTEENTH AMENDMENT RIGHT TO TRAVEL CLAIM FAILS AS A MATTER OF LAW.

### A. Matthews' Right to Travel Claim is Time-Barred.

As explained in the Motion, Matthews' claims are time-barred. (Mot. at 16:18-17:3.) In response, Matthews does not dispute that the two-year statute of limitations in California Code of Civil Procedure 335.1 applies, and he does not dispute that his constitutional claims accrued on September 27, 2019, the date of his arrest. (Opp. at 19:13-16.) Rather, he argues that his "claim is not time-barred because of the continuing tort doctrine because the criminal prosecution stemming from his arrest was not dismissed until 12/16/2021, which is within the two year period from the time of his arrest, 9/27/2019, and so 'at least one act falls within the time period.'" (*Id.*, quoting *Romero-Manzan v. Carlton Nursery Co., LLC*, 733 Fed. Appx. 912, 913 (9th Cir. 2018).)

To support his argument, Matthews selectively quotes *Romero-Manzan*. But Matthews omits the most important part of the quotation, the start of the sentence: "'A

---

[9] Plaintiffs cite two cases in a "notice" of additional authority (ECF No. 43) holding that courts may consider multiples policies or practices to determine causation in "conditions of confinement" cases. *See*, *e.g.*, *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (limited to when "conditions of confinement may establish an Eighth Amendment violation"); *Sanchez v. Young County, Texas*, 956 F.3d 785, 795 (5th Cir. 2020) (limited to when "confinement conditions may be constitutionally inadequate"). Our case is not a conditions of confinement case, so these cases are inapposite. Moreover, the residency requirement is not a City "policy" or "practice." It is a mandatory state law.

charge *alleging a hostile work environment claim ...* will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.'"  733 Fed. Appx. at 913 (emphasis added) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)).  On its face, *Romero-Manzan's* holding that a non-timely claim can be saved where "at least one act falls within the time period" *is limited* to claims alleging a hostile work environment.

The Ninth Circuit has confirmed this limitation:

> *Morgan* held that discrete discriminatory acts are not actionable if they are time barred, even when they are related to acts alleged in a timely fashion…. *With respect to hostile work environment claims, by contrast*, *Morgan* held that "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability" as long as one "act contributing to the claim occurs within the filing period."

*RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 2062 n.13 (9th Cir. 2002) (quoting *Morgan*, 536 U.S. at 117).  Thus, the "at least one act falls within the time period" rule relied on by Matthews here is limited to hostile work environment claims and has no application here.  Matthews' claims are time-barred.

The continuing tort doctrine is an exception to the rule of accrual, "allowing a plaintiff to seek relief for events outside of the limitations period."  *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001).  Under the "continuing tort doctrine[,] [w]hen a tort involves continuing wrongful conduct, the statute of limitations doesn't begin to run until the conduct ends."  *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002).  However, the continuing tort doctrine applies only when "there is *no single incident* that can fairly or realistically be identified as the cause of significant harm."  *Id.* (emphasis added).

Here, Matthews alleges a single incident in the FAC, his arrest, was the significant cause of harm for both of his constitutional claims against the City.  (FAC ¶ 118 [Claim 1 alleges Matthews' Second Amendment rights were violated when he was arrested and detained]; *id.* ¶ 130 [Claim 2 alleges Matthews' right to travel was violated when he was arrested and detained].)  Thus, Matthews cannot rely on the continuing tort doctrine. *See*,

*e.g.*, *Ahmad Hamad Algosaibi & Brothers Co. v. Stewart*, No. CV 11-02596 JGB (Ex), 2013 WL 12122305, at *6 (C.D. Cal. Apr. 30, 2013) (dismissing counterclaim as time-barred; continuing tort doctrine did not apply where "Defendant's Counterclaim relies on [the plaintiff]'s single act of filing its action in Bahrain" and because the counterclaim "explicitly identifies [the plaintiff]'s Bahrani complaint as the cause of the harm").

Further, "*Morgan* held that 'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" *RK Ventures*, 307 F.3d at 1061 (quoting *Morgan*, 536 U.S. at 113). Here, Matthews' arrest is a discrete act that is separate from his subsequent prosecution; thus, the continuing tort doctrine does not apply. *See*, *e.g.*, *Alexander v. Cal. Dep't of Motor Vehicles*, No. 19-cv-03996-TSH, 2019 WL 4194128, at *5 (N.D. Cal. Sept. 4, 2019) (claims related to the plaintiff's license suspension in 2013 were untimely because even if a 2018 traffic citation for failure to have a valid license was related to the 2013 license suspension, the continuing tort doctrine did not apply "because the statute of limitations runs separately from each discrete act").

Lastly, it is well established that the continuing tort doctrine does not apply if the harm alleged is a "mere continuing *impact* from past violations." *Knox*, 260 F.3d at 1013 (quotation marks omitted); *see also Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008) ("[A] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." (quotation marks omitted)). Here, Matthews' prosecution was not an unlawful act (e.g., Matthews does not assert a malicious prosecution claim). Rather, his prosecution was the "continuing impact" or the "continual ill effects" from his arrest, which Matthews alleges was the constitutional violation. (FAC ¶ 118 [Claim 1]; *id*. ¶ 130 [Claim 2].)

 For these reasons, the continuing tort doctrine does not apply. Matthews' claims are time-barred and should be dismissed with prejudice.

## B.    Matthews' Right to Travel Claim Fails as a Matter of Law.

Matthews alleges that the City maintains an "unconstitutional gun control regime" in violation of his Fourteenth Amendment right to travel "because [the City] effected a

total ban on carrying pistols in the City for non-residents because [1] the gun control regime prevented registering their handguns and licensing them and [2] the LAPD police Chief refused to register their handguns or issue them licenses." (FAC ¶ 129.) Both claims fail as a matter of law. (Mot. at 17-23.)

Matthews' Opposition does not respond to *any* of the City's arguments. As the Court has held, "failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." *Touloudjian v. Cal. Dep't of Corrs. and Rehab.*, No. 2:20-cv-00520-FLA (KSx), 2021 WL 4812315, at *10 (C.D. Cal. May 24, 2021) (citing *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011).

Rather than address the claims alleged in the FAC, or the City's arguments in its Motion, Matthews baldly argues that his right to travel claim survives because, "Defendants' gun laws and policies take away the fundamental right to have a handgun … from non-City residents who enter the City." (Opp. at 25:4-5.)[10] But this argument misapprehends the law underlying a right to travel claim.

The Supreme Court has held that the "right to travel" embraces three different components. Because Matthews alleges that at the time of his arrest he was a non-resident visiting the City (FAC ¶ 8), his right to travel claim implicates the second component—the right to enjoy the "privileges and immunities" that the municipality confers on its own citizens. (Mot. at 17:4-23, citing *Saenz*, 526 U.S. at 500-01.) But this component is only implicated where non-residents are treated differently than residents—"the right to travel concerns differentiation between residents and non-residents." *Carmichael v. Ige*, 470 F. Supp. 3d 1133, 1145 n.10 6 (D. Haw. 2020); *see also id.* at 1146 (travel quarantine applying to all persons entering Hawaii, residents and non-residents alike, did not violate right to travel "[b]ecause the non-resident Plaintiffs are not barred from entry into and out

---

[10] Matthews is simply wrong on the facts. Non-residents can possess guns in the City. *See* Pen. Code § 25605 (non-residents can possess guns in their homes (including a temporary residence like a hotel room) and businesses); Pen. Code § 25610(a) (non-residents can possess guns in their vehicles).

of Hawai'i nor are they treated differently than residents").

But here, Matthews makes clear in his Opposition that he *does not* allege he was treated differently than City residents.  Rather, Matthews alleges he was treated exactly *the same* as residents—both cannot possess guns in the City.  (*E.g.*, Opp. at 4:23-6:2.)  In sum, because Matthews does not argue any "differentiation between residents and non-residents" with respect to "Defendants no-issue CCW policy and its general anti-gun gun control polices shown in its municipal code and the Board's and the Chief's definition of 'good cause'" (Opp. at 25:1-3), Matthews does not state a right to travel claim.

Once again, Matthews mistakenly relies on *Smith*.  (Opp. at 25:7-8.)  In *Smith I*, the district court noted that when analyzing a right to travel claim, the "scrutinized distinction [is] newcomers versus established residents."  387 F. Supp. 3d at 29 (upholding right to travel claim because the challenged D.C. laws "penalize plaintiffs for traveling interstate by treating D.C.-resident gunowners differently from non-D.C.-resident gunowners.").  And in *Smith II*, the district court similarly recognized that "the right to travel analysis … scrutiniz[es] the distinction between newcomers and longstanding residents."  568 F. Supp. 3d at 66; *see also id.* at 65 (granting the plaintiff's partial motion for summary judgment since "non-residents were banned from possessing guns *at all*, while residents were banned only from carrying them in public.  Non-residents thus faced a unique injury—the inability to possess a gun *anywhere* in the District.").  Thus, *Smith I* and *II* confirm that disparate treatment of residents and non-residents is required to state a right to travel claim.

## IV.   CONCLUSION

The Court's "discretion to deny … leave [to amend] is particularly broad where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quotation marks omitted).  Here, Plaintiffs previously amended the complaint once after reviewing the City's arguments, yet, they failed to plead any new factual allegations in their FAC, outside of the nine paragraphs related to the additional of the new plaintiff Hearns.  (FAC ¶¶ 11, 40-47.)  Notably,

Plaintiffs, do not ask for leave to amend should the Court grant the City's Motion, nor do they argue that there are additional facts they could allege if given in the chance. Accordingly, amendment is futile, and the FAC should be dismissed with prejudice.

Dated:  November 14, 2022

OFFICE OF THE CITY ATTORNEY OF LOS ANGELES

By:
    */s/ Benjamin Chapman*
Benjamin Chapman

Attorneys for Defendant
CITY OF LOS ANGELES,
LOS ANGELES POLICE DEPARTMENT, and
LOS ANGELES BOARD OF POLICE
COMMISSIONERS