JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRY MATTHEWS, et al.,<br><br>     Plaintiffs,<br><br>  v.<br><br>CITY OF LOS ANGELES, et al.,<br><br>     Defendants. | Case No. 2:22-cv-02944-FLA (PDx)<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION TO DISMISS [DKT. 40]** |

# RULING

Before the court is Defendants City of Los Angeles (the "City"), the Los Angeles Police Department (the "LAPD"), and the Los Angeles Board of Police Commissioners' (the "Board") (collectively "Defendants") Motion to Dismiss (the "Motion") Plaintiffs Garry Matthews ("Matthews"), Dominic Ross Hunn ("Hunn"), and Jamar Hearns's ("Hearns") (collectively "Plaintiffs") First Amended Complaint (the "FAC"). Dkt. 40 ("Mot."). Plaintiffs oppose the Motion. Dkt. 42 ("Opp'n").

On December 12, 2022, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for December 16, 2022. Dkt. 51; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15. For the reasons stated herein, the court GRANTS Defendants' Motion without leave to amend.

# BACKGROUND

California Penal Code § 25400(a)(1) and (a)(3) prohibit the carrying of a concealed firearm on one's person or in one's vehicle. California Penal Code § 25850(a) prohibits the carrying of a loaded firearm on one's person or in a vehicle while in a public place or on a public street. California's prohibitions against the carrying of concealed firearms do not apply to individuals issued licenses to carry concealed weapons ("CCW license") by a local chief of police. California Penal Code § 26155(a)(2) states that a person may obtain a CCW license from the county sheriff or police chief where the person resides upon proof of certain qualifications, including that "good cause exists for issuance of that license." The City previously followed a written policy on the issuance of CCW licenses that was conditioned on a finding of "good cause," which the Board defined as "a special need to defend against threats specific to themselves." FAC ¶ 18; Opp'n at 9.[1]

---

[1] The court cites documents by the page numbers added by the CM/ECF system rather than any page numbers listed on the documents natively.

1    Matthews, a resident of Tennessee, was arrested for the unlicensed carrying of a
2    firearm on September 27, 2019. FAC ¶ 48. Matthews had a license issued by the
3    state of Tennessee to carry a concealed handgun at the time of his arrest. *Id.* ¶¶ 50,
4    62. Matthews was arrested for possession of a concealed firearm and held in Los
5    Angeles County jail overnight. *Id.* ¶¶ 62, 64–65. He pleaded guilty to misdemeanor
6    firearm possession, entered into a deferred sentencing agreement, which he satisfied,
7    and thereafter withdrew his plea, and the case was dismissed. *Id.* ¶¶ 69–71.
8    Hunn was arrested by LAPD officers for carrying a handgun in his vehicle
9    without a CCW license on November 24, 2020. *Id.* ¶ 34. Hunn was held in the Los
10   Angeles County jail overnight. *Id.* ¶¶ 37–38.
11   Hearns was arrested by LAPD officers for carrying a handgun outside his home
12   without a CCW license on June 22, 2022. *Id.* ¶ 41. Hearns was held in jail overnight.
13   *Id.* ¶ 44. The prosecutor declined to prosecute Hearns for the crime for which he was
14   arrested. *Id.* ¶ 47.
15   Plaintiffs filed the FAC on September 7, 2022. FAC. The first cause of action,
16   brought by all Plaintiffs, alleges violation of the Second Amendment. *See id.* ¶¶ 112–
17   127. The second cause of action, brought by only Matthews, alleges violation of the
18   Fourteenth Amendment right to travel. *See id.* ¶¶ 128–135. Plaintiffs seek to
19   represent two putative classes of individuals who have been arrested for violations of
20   California's laws regarding the carrying of a firearm without a CCW license during
21   the class period. *Id.* ¶¶ 137–138. Plaintiffs allege Defendants employed
22   unconstitutional "no-issue" concealed weapons permit policies, subsequently causing
23   Plaintiffs to be arrested for crimes related to their carrying of firearms. *See id.* ¶ 94.
24   Defendants filed the instant Motion on October 7, 2022. Mot. Defendants
25   argue, *inter alia*, the FAC fails to establish Defendants are liable under *Monell v.*
26   *Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Mot. at
27   10–11.
28   / / /

# DISCUSSION

## I. Legal Standard

Under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), a party may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." The purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of the claims asserted in the complaint. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts "to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations and parentheticals omitted). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159. Legal conclusions "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Iqbal*, 556 U.S.

at 679. The court need not accept as true allegations that contradict matters properly subject to judicial notice or established by exhibits attached to the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on other grounds in* 275 F.3d 1187 (2001). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

A court must normally convert a Rule 12(b)(6) motion into a motion for summary judgment under Fed. R. Civ. P. 56 if it considers evidence outside the pleadings. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*

**II. Analysis**

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]" 42 U.S.C. § 1983.

A municipality may not be held liable under § 1983 unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. *Monell*, 436 U.S. at 694. To impose *Monell* liability under § 1983 for a violation of constitutional rights, a plaintiff must show that (1) the plaintiff possessed a constitutional right and was deprived of that right, (2) the municipality had a policy, (3) the policy amounted to deliberate indifference to the plaintiff's constitutional rights, and (4) the policy was the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Plumeau v. Sch. Dist. # 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

Defendants argue Plaintiffs fail to satisfy the first and fourth elements required for *Monell* liability. Mot. at 10–11. Plaintiffs counter they have alleged a predicate constitutional violation and that Defendants' policies were the "moving force" behind the violation of their rights, satisfying *Monell*. Opp'n at 5, 21. Because the court concludes Plaintiffs have failed to allege the deprivation of a constitutional right, it does not address the parties' arguments relating to the fourth element required for *Monell* liability.

### A. The Second Amendment Cause of Action

In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court held that the "Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 2122. New York's state law licensing regime for permitted carry required the applicant to demonstrate a "special need" for a permit beyond the "ordinary self-defense needs" of any "law-abiding citizen," and was therefore found unconstitutional. *Id.* The decision "does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense." *Id.* at 2161 (Kavanaugh, J., concurring).

*Bruen* also recognized that the right to carry publicly a firearm "has traditionally been subject to well-defined restrictions governing the intent for which one could carry arms, the manner of carry, or the exceptional circumstances under which one could not carry arms." *Id.* at 2138. The decision prohibits a state from utilizing a discretionary licensing regime that requires applicants to demonstrate "good cause" for obtaining a license beyond the ordinary need for self-defense. *Id.* at 2161–62 (Kavanaugh, J., concurring) ("[T]he 6 States including New York potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense so long as those States employ objective licensing requirements" such as "fingerprinting, a background check, a mental health records check, and training in

firearms handling and in laws regarding the use of force[.]").[2] *Bruen* does not prohibit a state from implementing a license requirement to carry a firearm or from criminalizing the unlicensed concealed carry of a loaded firearm. *See id.* at 2138 n. 9.[3]

Plaintiffs argue Defendants' "no issue" policy with respect to CCW licenses violates their Second Amendment rights by making it "impossible for people in the City to engage in the constitutionally protected conduct of carrying of a handgun in public for self-defense without subjecting themselves to arrest, detention, and referral for prosecution to the LAPD." Opp'n at 7; *see also id.* at 8 ("Only the lack of access to a CCW made their public carriage for self-defense a violation of California law.").

Even assuming *arguendo* the allegations in the FAC regarding Defendants' purported "no issue" policy are true, Plaintiffs do not properly frame the issue. *Bruen* did not create, and Plaintiffs cite no authority establishing, a constitutional right to carry publicly a concealed firearm without a license. *See* 142 S. Ct. at 2156 ("The Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public *subject to certain reasonable, well-defined restrictions*.") (citing *District of Columbia v. Heller*, 554 U.S 570, 581 (2010)) (emphasis added). *Bruen* precluded enforcement of licensing schemes which, like California Penal Code § 26155(a)(2), included a "good cause" requirement. *Id.* at 2161–62. *Bruen* did not forbid states from applying other, reasonable, well-defined restrictions to an individual's application for a CCW license. *See id.* at 2156.

---

[2] The California Attorney General recognizes the "good cause" requirements in California Penal Code §§ 26150(a)(2) and 26155(a)(2) are unconstitutional in light of *Bruen*. *See* Legal Alert No. OAG-2022-02, California Department of Justice, Office of the Attorney General (June 24, 2022).

[3] Indeed, the California Attorney General has said that the remaining portions of California's public-carry licensing regime are consistent with *Bruen*. *See* Legal Alert No. OAG-2022-03, California Department of Justice, Office of the Attorney General (Aug. 17, 2022).

Here, Plaintiffs do not allege they ever *applied* for a CCW license, which was impermissibly denied. *See generally* FAC. Instead, Plaintiffs allege California state law, as implemented by Defendants, created a "Catch 22" that infringed upon their Second Amendment rights. *Id.* ¶ 21. In essence, Plaintiffs argue that, because Defendants' application of the "good cause" requirement is now unconstitutional following *Bruen*, they were permitted to disregard California's licensing requirement completely. This is not what *Bruen* commands and Plaintiffs cite no authority to convince the court to read Supreme Court precedent so broadly.

The court, thus, finds Plaintiffs have failed to allege a constitutional right of which they were deprived and, therefore, have failed to plead *Monell* liability.

### B. The Fourteenth Amendment Cause of Action

"For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling ... except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). California has a two-year statute of limitations for personal injury actions. Cal. Code Civ. Proc. § 335.1. "Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153–54 (9th Cir. 2000). Generally, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). When a motion to dismiss is based on the running of the statute of limitations, "it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

Here, Matthews was arrested in 2019 for violation of California Penal Code § 25400(a)(1). FAC ¶¶ 118, 130; Opp'n at 20. Matthews argues his claim is tolled by the continuing tort doctrine "because the criminal prosecution stemming from his arrest was not dismissed until 12/16/2021, which is within the two year period from

the time of his arrest, 9/27/2019, and so 'at least one act falls within the time period.'" Opp'n at 20 (citing *Romero-Manzano v. Carlton Nursery Co., LLC*, 733 F. App'x 912, 913 (9th Cir. 2018); *United States v. Blizzard*, 27 F.3d 100, 102 (4th Cir. 1994)).

The continuing tort doctrine may apply to § 1983 actions. *See Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997). Under the "continuing tort doctrine[,] [w]hen a tort involves continuing wrongful conduct, the statute of limitations [does not] begin to run until the conduct ends." *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002). However, the continuing tort doctrine applies only when "there is no single incident that can fairly or realistically be identified as the cause of significant harm." *Id.* A "mere continuing impact from past violations is not actionable." *Grimes v. City and County of San Francisco*, 961 F.2d 236, 238–39 (9th Cir. 1991) (quotation marks and citation omitted); *see also Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008) ("[A] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.").

In *Flowers*, 310 F.3d at 1126–27, the Ninth Circuit upheld the district court's dismissal on statute of limitations grounds of plaintiff's claims for defamation, disclosure of private information, and organizing break-ins. Plaintiff argued that all claims should be viewed as one continuing tort, but the Ninth Circuit concluded that "because disclosing private information and organizing break-ins are discrete wrongful acts, the continuing tort doctrine does not apply, and the district court properly dismissed the claims as untimely." *Id.* at 1126.

Similarly, in *Rodriguez v. County of Los Angeles*, Case No. 2:07-cv-02644-ABC (CTx), 2007 WL 7708555 (C.D. Cal. Dec. 11, 2017), plaintiff alleged an officer entered her home without a search warrant in violation of the Fourth and Fourteenth Amendments. *Id.* at *5. The court, finding that the "alleged constitutional violation accrued the moment [the officer] wrongfully entered the house, and was complete in itself", held that the continuing tort doctrine could not salvage plaintiff's claim. *Id.*

Matthews was or should have been aware of his injuries once he was allegedly

9

wrongfully arrested. Further, his claims spring from his arrest; in other words, his arrest is the manifestation of Defendants' alleged deprivation of his Second and Fourteenth Amendment rights. Matthews's arrest, therefore, serves as the "injury which is the basis" of his claims. *See Kimes*, 84 F.3d at 1128. Because the "single incident" of his arrest is fairly attributed as the cause of his harm, the continuing tort doctrine will not toll his claim. *See Flowers*, 310 F.3d at 1126. The mere "continuing impact" from his allegedly illegal arrest, subsequent prosecution, and eventual dismissal of the action, is insufficient to apply the continuing tort doctrine.

Matthews's cited cases are inapposite. *Romero-Manzano*, 733 F. App'x at 913, arose in the specific context of a hostile work environment claim and involved many "acts which ... are part of the same unlawful employment practice[.]" Further, *Blizzard*, 27 F.3d at 102, discusses the statute of limitations for the crimes of concealing and receiving stolen property. *Blizzard* has no application to civil statutes of limitations, as is made relevant by the claims here.

The court, therefore, concludes that the statute of limitations bars Matthews's Fourteenth Amendment claim.

/ / /

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, the court GRANTS Defendants' Motion to Dismiss (Dkt. 40) without leave to amend, as amendment would be futile, given that Plaintiffs' claims fail as a matter of law.[4]

IT IS SO ORDERED.

Dated: October 31, 2023

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge

---

[4] Additionally, Plaintiffs have previously been given the opportunity to amend their complaint. *See Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (a district court's "discretion to deny leave to amend is particularly broad when the plaintiff has previously amended its complaint.") (cleaned up).

11