1    JOVAN BLACKNELL (SBN 237162)
2    Email: jovan@fight4justice.com
3    Attorney for Plaintiffs, Garry Matthews, Dominic Ross Hunn, and Jamar Hearns
4    LAW OFFICE OF J. BLACKNELL
5    200 Corporate Pointe, Suite 495
6    Culver City, CA 90230
7    Phone: (310) 469-9117; Fax: (310) 388-3765
8    Attorney for Plaintiffs
9
10   WILLIAM CLAIBORNE
11   *Pro hac vice*
12   Email: claibornelaw@gmail.com
13   Attorney for Plaintiffs, Garry Matthews, Dominic Ross Hunn, and Jamar Hearns
14   ClaiborneLaw
15   717 D Street N.W., Ste 300
16   Washington, DC 20004-2815
17   Phone: (202) 824-0700
18   Attorney for Plaintiffs
19

20           **UNITED STATES DISTRICT COURT**

21   **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

22

| | |
|---|---|
| GARRY MATTHEWS, DOMINIC ROSS HUNN, and JAMAR HEARNS individually and as class representatives, | Case No.: 22-cv-02944-FLA-PD |
| Plaintiffs, | **PLAINTIFFS' MOTION TO AMEND THE JUDGMENT FOR RECONSIDERATION** |
| vs. | |
| CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, AND LOS ANGELES BOARD OF POLICE COMMISSIONERS, | Action Filed: 05/03/2022 |
| Defendants. | |

1

1    Plaintiffs, by and through undersigned counsel and pursuant to Fed. R. Civ.

2    P. 59(d) and Fed. R. Civ. P. 60(b)(1) and (6), respectfully move this Court to amend

3    the Judgment to seek reconsideration of the Court's October 31, 2023 Order (the

4    "Order") [ECF No. 75]. This Court entered the Order on October 31, 2023,

5    granting Defendants' motion to dismiss, with prejudice and without leave to amend

6    which amounted to a final judgment.

7    This motion is made following the conference of counsel pursuant to L.R. 7-

8    3 which took place on November 8, 2023.

9    The predicate constitutional violation Plaintiffs alleged in the Amended

10   Complaint was that Defendants injured them and the putative class members by

11   arresting, detaining, and (in some cases) causing their prosecutions by arresting

12   them pursuant to Defendants' unconstitutional policy of: (1) refusing to issue

13   concealed weapons permits (or "CCWs") for the lawful Second Amendment

14   purpose of general self-defense; while (2) arresting, detaining, and/ or referring for

15   prosecution Named Plaintiffs and putative class members for carrying a handgun

16   outside the home without a CCW. Am. Compl. ¶ 1- 4; California Penal Code §

17   25400(a)(1) and (a)(3) (authorizes the carrying of a concealed firearm on one's

18   person or in one's vehicle provided one has a CCW issued by the Chief) and

19   California Penal Code § 25850(a) (authorizes the carrying of a loaded firearm on

1   one's person or in a vehicle while in a public place or on a public street provided

2   one has a CCW issued by the Chief).

3         This alleged predicate constitutional violation should have been evaluated

4   under the test announced in *Heller* and *Bruen* because, under the Court's

5   retroactivity jurisprudence, *Bruen* applies retroactively to this case because this

6   case was ongoing when the Supreme Court decided *Bruen*. *Harper v. Va. Dep't of*

7   *Taxation*, 509 U.S. 86, 96, 97 (1993)("a rule of federal law, once announced and

8   applied … must be given full retroactive effect by all courts adjudicating federal

9   law," especially to "cases still open on direct review."); *Lemus v. Lynch*, 842 F.3d

10  641, 647-648 (9th Cir. 2016).

11        The proper test was whether defendant's policy was consistent with "this

12  Nation's historical tradition of firearm regulation."  *Teter v. Lopez*, 76 F.4th 938,

13  948 (9th Cir. 2023).

14         With all due respect the Court committed legal error to the extent that it held

15  that "Defendants' application of the "good cause" requirement is *now*

16  unconstitutional following *Bruen*," Order at 8, without evaluating the predicate

17  constitutional violation under the *Bruen* test, because the Defendants' policy (not

18  just the good cause element in the statute) was unconstitutional under *Bruen* and

19  *Heller* during the entire class period. *Harper v. Va. Dep't of Taxation*, 509 U.S. at

20  96, 97. Reconsideration is necessary to correct manifest errors of law or fact, and,

1   independently, to prevent manifest injustice. *Johnson v. Idaho*, 2023 U.S. App.

2   LEXIS 18465, *2-3 (9th Cir. 2023).

3        The issues of whether Plaintiffs carried handguns contrary to the law and the

4   legal significance of whether Plaintiffs ever engaged in the futile act of applying

5   for CCWs the Chief was sure to deny are ancillary issues Plaintiffs addressed in

6   their Opposition [ECF No. 42] to Defendants' Motion [ECF No. 40] to Dismiss.

7        The government may not arrest or convict an otherwise law-abiding person

8   for violating an unconstitutional law, even a law with a licensing provision.

9   *Shuttlesworth v. Birmingham*, 394 U. S. 147, 151 (1969)(Court reversed the

10   petitioner minister's conviction for violation of the city ordinance, concluding that

11   the city authorities interpreted the statute as giving them the right to deny under

12   any circumstances the minister and his group a permit to demonstrate in the city

13   and that such denial was a deprivation of the constitutionally-protected right of

14   assembly).

15        In this case the Chief exercised the discretion given him to interpret the good

16   cause requirement and their discretion to issue or deny CCW applications so

17   narrowly that the Chief's no-issue CCW policy amounted to a total ban on carriage

18   of handguns in public for general self-defense even if the Chief had granted some

19   CCWs to a narrow class of applicants to which Plaintiffs and the putative class

20   members did not belong (judges and prosecutors), Am. Compl. ¶ 111, in violations

4

of Plaintiffs and the other putative class members' Second Amendment rights. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2122 (2022)(Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home); *see also Wrenn v. District of Columbia*, 864 F.3d 650, 665 (2017)(under *Heller I* "complete prohibition[s]" of Second Amendment rights are always invalid even when effected through licensing regime).

25400(a)(1) and (a)(3) California Penal Code § 25850(a) are regulatory offenses. The sections are "wobbler" offenses, and, for law-abiding persons such as Named Plaintiffs, they are misdemeanors prosecuted by the City Attorney and the maximum penalty for a violation is one year.

All Named Plaintiffs were law-abiding citizens and they had never been convicted for any criminal offense at the time of their arrests. Mr. Hunn and Mr. Hearns' case were dismissed without prosecution. Mr. Matthews received a deferred sentencing agreement that did not result in a conviction.

Additionally, as explained below, discovery in the case revealed that Defendants' no-issue policy was even more restrictive than Plaintiffs originally believed. During the period from February 2019 to June 2022 (when *Bruen* was decided), the Chief granted only four (4) CCWs out of about 300 applications. The four CCWs the Chief granted went to: (1) three persons who held federal "FFLs" (federal firearms licensees); and (2) one property master for a film and TV studio.

1  [1]Arguably these CCWs were not even granted under the Chief's no-issue

2  interpretation of "good cause" but under special exceptions.

3       Accordingly, Plaintiffs ask the Court to amend the judgment and to

4  reconsider the Order. Alternatively, Plaintiffs ask the Court to amend the judgment

5  and to reconsider the Order for the limited purpose of allowing Plaintiffs to amend

6  the operative complaint to restate the allegations in the complaint to accurately

7  state the Chief's practice on reviewing CCW applications as it existed during the

8  class period as disclosed during discovery.

9       Plaintiffs' proposed Second Amended Complaint is attached hereto as an

10  exhibit.

11  **BACKGROUND**

12       Plaintiffs Garry Matthews and Dominic Hunn filed their class action

13  complaint [ECF No. 1] individually and as class representatives on May 3, 2022

14  naming as defendants the City of Los Angeles (sometimes the "City" or the "LA")

15  and the Los Angeles Board of Police Commissioners (sometimes the "Board of

16  Police Commissioners" or the "Board") and the Los Angeles Police Department

17  (sometimes "LAPD" or the "Department") under 42 U.S.C.A. § 1983

---

[1] https://www.atf.gov/resource-center/types-federal-firearms-licenses-ffls ATF website explaining Types of Federal Firearms Licenses (FFLs).

1    for injuries they suffered for which the policies of the Defendants were the moving

2    force.

3          Plaintiffs alleged in the Amended Complaint that Defendants injured them

4    and the putative class members by arresting, detaining, and (in some cases) causing

5    their prosecutions by arresting them pursuant to Defendants' unconstitutional

6    policy of: (1) refusing to issue concealed weapons permits (or "CCWs") for the

7    lawful Second Amendment purpose of general self-defense; while (2) arresting,

8    detaining, and/ or referring for prosecution Named Plaintiffs and putative class

9    members for carrying a handgun outside the home without a CCW. Am. Compl. ¶

10   1- 4; California Penal Code § 25400(a)(1) and (a)(3) (authorizes the carrying of a

11   concealed firearm on one's person or in one's vehicle provided one has a CCW

12   issued by the Chief) and California Penal Code § 25850(a) (authorizes the carrying

13   of a loaded firearm on one's person or in a vehicle while in a public place or on a

14   public street provided one has a CCW issued by the Chief).

15         Defendants' no-issue CCW policy amounted to a total ban on carriage of

16   handguns in public for general self-defense even if the Chief had granted some

17   CCWs to a narrow class of applicants to which Plaintiffs and the putative class

18   members did not belong (judges and prosecutors), Am. Compl. ¶ 111, in violations

19   of Plaintiffs and the other putative class members' Second Amendment rights. *N.Y.*

20   *State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2122 (2022)(Second and

7

1    Fourteenth Amendments protect an individual's right to carry a handgun for self-

2    defense outside the home); *see also Wrenn v. District of Columbia*, 864 F.3d 650,

3    665 (2017)(under *Heller I* "complete prohibition[s]" of Second Amendment rights

4    are always invalid even when effected through licensing regime); *Smith v. District*

5    *of Columbia*, 387 F. Supp. 3d 8, 24, 25-26 6 (D.D.C. 2019)(motion to dismiss)

6    ("*Smith I*"); *Smith v. District of Columbia*, 568 7 F. Supp. 3d 55, 60 (D.D.C.

7    2021)(summary judgment) ("*Smith II*"). As explained below, discovery in the case

8    revealed that Defendants' no-issue policy was even more restrictive than Plaintiffs

9    originally believed.

10        Defendants' no-issue CCW policy was a municipal policy which was the

11   moving force of their injuries. *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 517 (9th

12   Cir. 2018)(impoundment of plaintiffs' vehicles was thus not caused by state law,

13   but by Defendants' policies of impounding vehicles when the driver had never been

14   issued a California driver's license); *see also Brewster v. City of L.A.*, 2019 U.S.

15   Dist. LEXIS 225770, at *16-17, *21 n.6 (C.D. Cal. July 29, 2019); *Birdt v. San*

16   *Bernardino Sheriff's Dep't*, 2014 U.S. Dist. LEXIS 80482 (C.D. Cal. 2014); *Birdt v.*

17   *San Bernardino Sheriff's Dep't*, 2014 U.S. Dist. LEXIS 81126 (C.D. Cal. 2014)

18   (Magistrate Judge's recommendations adopted by District Court Judge).

19        The Chief used their virtually unbridled and absolute power over the

20   issuance of CCWs to impose a "complete prohibition" on the carriage of handguns

1    in public for the purpose of self-defense, guided only by their own ideas of "public

2    welfare, peace, safety, health, decency, good order, morals or convenience," and

3    the Chief and the other Defendants used their police force to arrest, and detain, and

4    refer for prosecution, persons within the City for the constitutionally protected

5    conduct of carrying a handgun for self-defense. *Shuttlesworth v. Birmingham*, 394

6    U. S. at 151.

7                                    **LEGAL STANDARD**

8        Federal Rule of Civil Procedure ("F.R.C.P.") 59(e) allows a District Court to

9    alter or amend a judgment if the Court determines that its original judgment was

10   clearly erroneous.  *Kaufmann v. Kijakazi*, 32 F.4th 843, 846 (9th Cir. 2022). There

11   are four grounds upon which a Rule 59(e) motion may be granted: (1) the motion is

12   necessary to correct manifest errors of law or fact; (2) the moving party presents

13   newly discovered or previously unavailable evidence; (3) reconsideration is

14   necessary to prevent manifest injustice; or (4) there is an intervening change in

15   controlling law. *Johnson v. Idaho*, 2023 U.S. App. LEXIS 18465, *2-3 (9th Cir.

16   2023); District courts have "considerable discretion" in deciding Rule 59(e)

17   motions. *Kaufmann v. Kijakazi*, 32 F.4th at 850.

18       A party seeking to amend a pleading after the date specified in the

19   scheduling order must first show "good cause" for amendment under F.R.C.P.

20   16(b). *Johnson v. Mammoth Recreations*, 975 F.2d 604, 608 (9th Cir. 1992). Then, if

9

1   "good cause" be shown, the party must demonstrate that amendment was proper

2   under Rule 15. *Id.* The touchstone for establishing good cause is diligence. *Id.* at

3   609.

4        Under Rule 15(a), leave to amend should be granted as a matter of course, at

5   least until the defendant files a responsive pleading. *Id.* at 607. After that point,

6   leave to amend should be granted unless amendment would cause prejudice to the

7   opposing party, is sought in bad faith, is futile, or creates undue delay. *Id.*

1       **ARGUMENT**

2       *Bruen* abrogated the two-step approach the Ninth Circuit had adopted

3   following *Heller* and *McDonald* to analyze Second Amendment challenges. *Teter*

4   *v. Lopez*, 76 F.4th 938, 947 (9th Cir. 2023).[2]

5           when the Second Amendment's plain text covers an individual's
6           conduct, the Constitution presumptively protects that conduct. To
7           justify its regulation, the government may not simply posit that the
8           regulation promotes an important interest. Rather, the government
9           must demonstrate that the regulation is consistent with this Nation's
10          historical tradition of firearm regulation. Only if a firearm regulation
11          is consistent with this Nation's historical tradition may a court
12          conclude that the individual's conduct falls outside the Second
13          Amendment's "unqualified command."

14  *Teter v. Lopez*, 76 F.4th 938, 948 (9th Cir. 2023).

15          Moreover, *Bruen* did not introduce a new substantive rule as to the Second

16  Amendment, it merely clarified the substantive rights regarding the right to keep

17  and bear arms it clarified in *Heller* and *McDonald*. Cases such as *Wrenn*

18  recognized the rule in *Heller* that a regulation that imposes a total ban or a

19  complete prohibition on the exercise of the Second Amendment right to keep and

20  bear arms violates the Second Amendment without regard to any layers of scrutiny

21  analysis. *Wrenn*, 864 F.3d at 665; see also panel decision in *Peruta v. County of*

---

[2] *Bruen* also addressed whether New York had met its burden in proving its "proper-cause requirement is consistent with this Nation's historical tradition of firearm regulation."  *Teter v. Lopez*, 76 F.4th 938, 948 (9th Cir. 2023).

1   *San Diego*, 742 F.3d 1144, 1170 (9th Cir. 2014)("*Heller* teaches that a near-total

2   prohibition on keeping arms (Heller) is hardly better than a near-total prohibition

3   on bearing them (this case), and vice versa. Both go too far."). Although the

4   opinion in Peruta was vacated by *the en banc* court, that decision was implicitly

5   abrogated in *Bruen*.[3]

6       At any rate, under the Court's retroactivity jurisprudence, *Bruen* applies

7   retroactively to this case because this case was ongoing when the Supreme Court

8   decided *Bruen*. *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 96, 97 (1993)("a rule

9   of federal law, once announced and applied … must be given full retroactive effect

10  by all courts adjudicating federal law," especially to "cases still open on direct

11  review."); *Lemus v. Lynch*, 842 F.3d 641, 647-648 (9th Cir. 2016).

12      Likewise, in *Teter v. Lopez* the Ninth Circuit applied to an ongoing civil case

13  seeking injunctive relief. *Teter v. Lopez*, 76 F.4th at 948.

14      The majority in *Bruen* also relied on *Shuttlesworth v. Birmingham*, 394 U. S.

15  147, 151, 89 S. Ct. 935, 22 L. Ed. 2d 162 (1969) on the constitutional need for

16  "narrow, objective, and definite standards" to guide licensing officials. *N.Y. State*

17  *Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2138 n.9 (*quoting Shuttlesworth v.*

---

[3] *Vacated by, Rehearing, en banc, granted by Peruta v. County of San Diego*, 781 F.3d 1106, 2015 U.S. App. LEXIS 4941 (9th Cir., 2015) *Different results reached on rehearing at, En banc, Motion granted by Peruta v. Cnty. of San Diego*, 2016 U.S. App. LEXIS 10436 (9th Cir. Cal., June 9, 2016).

1   *Birmingham*, 394 U. S. 147, 151 (1969)(striking down Birmingham ordinance

2   which conferred upon the City Commission virtually unbridled and absolute power

3   to prohibit any "parade," "procession," or "demonstration" on the city's streets or

4   public ways because in deciding whether or not to withhold a permit, the members

5   of the Commission were to be guided only by their own ideas of "public welfare,

6   peace, safety, health, decency, good order, morals or convenience.").

7        In *Shuttlesworth v. Birmingham* the Court stated that "our decisions have

8   made clear that a person faced with such an unconstitutional licensing law may

9   ignore it and engage with impunity in the exercise of the right of free expression

10   for which the law purports to require a license." *N.Y. State Rifle & Pistol Ass'n v.*

11   *Bruen*, 142 S. Ct. at 2138 n.9 (*quoting Shuttlesworth v. Birmingham*, 394 U.S. 147,

12   151 (1969)). The Court's citation to *Shuttlesworth* makes clear that this First

13   Amendment principle is also applicable to Second Amendment cases. *See also*

14   *Grossman v. City of Portland*, 33 F.3d 1200, 1203 (9th Cir. 1994)(arresting

15   plaintiff for violating a local ordinance requiring permit that violated the First

16   Amendment violated the First Amendment rights of plaintiff even though plaintiff

17   did not apply for a permit); *United States v. Rahimi*, 59 F.4th 163 (5th Cir.

18   2023)(vacating conviction based on statute unconstitutional under *Bruen*), *cert.*

19   *granted*, 143 S. Ct. 2688 (June 30, 2023).

1    The "text, history, and tradition" test for governing violations of Second

2    Amendment rights clarified by the Supreme Court in *Bruen* was articulated as

3    early as *Heller*, and the Second Amendment right to carry handguns in public has

4    existed since the founding. The Chief's policy and practice on public carry

5    amounted to a "total ban" or a "complete prohibition" and even before *Bruen* it

6    was unconstitutional without regard to levels of scrutiny.

7    Although some courts have declined to apply *Buren* to postconviction

8    *collateral* attacks on judgments of conviction entered prior to *Bruen*, those cases

9    mainly turn on the procedural rules of collateral attacks on criminal judgments

10   under 28 U.S.C. § 2255, *see e.g., In re Alexander*, 2022 U.S. App. LEXIS 33592,

11   *3-4 (11th Cir. 2022); *United States v. Pruitt*, 2023 U.S. Dist. LEXIS 193174, *18

12   (D. Nev. 2023)(even if *Bruen* creates a substantive change in the law, it does not

13   create a substantive change in relation to § 922(g)(1) because it does not "alter[]

14   the range of conduct or the class of persons [§ 922(g)(1)] punishes," not on the

15   substantive rights under the Second Amendment that have existed since the

16   Founding.

17   For example, the Fifth Circuit, on rehearing *en banc*, applied the standard

18   announced in *Bruen* to the review of a conviction entered September 27, 2021,

19   pursuant to 18 USCS § 922(g)(8) for violation of an agreed civil protective order

1    entered February 5, 2020.[4] *United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023),

2    cert. granted, 143 S. Ct. 2688 (June 30, 2023). The *en banc* court vacated a prior

3    panel decision that had affirmed the conviction pre-*Bruen* under a levels of

4    scrutiny standard. *See United States v. Rahimi*, No. 21-11011, 2022 U.S. App.

5    LEXIS 15799, 2022 WL 2070392 at *1 n.1 (5th Cir. June 8, 2022)(withdrawn).

6         This case simply presented the same case as *Heller* and *Wrenn* where the

7    government's licensing policies amount to a total ban or complete prohibition on

8    ownership or carriage of a handgun for general self-defense. One of the

9    consequences of Defendants' unconstitutional policy was that Defendants arrested

10   and detained Plaintiffs and the putative class members for violating California

11   Penal Code § 25400(a)(1) and (a)(3) (authorizes the carrying of a concealed

12   firearm on one's person or in one's vehicle provided one has a CCW issued by the

13   Chief) and California Penal Code § 25850(a) (authorizes the carrying of a loaded

14   firearm on one's person or in a vehicle while in a public place or on a public street

15   provided one has a CCW issued by the Chief).

16        Although the statute was a state statute – the Plaintiffs' inability to comply

17   with the CCW exception was caused by the Chief's no-issue CCW policy and

18   rendered the arrests and subsequent enforcement of the statutes by the LAPD and

---

[4] The Judgment of conviction in Zacky Rahimi's criminal case was entered September 27, 2021. Case 4:21-cr-00083-P.

1    any prosecution by at least the LA City Attorney unconstitutional, and so it was the

2    Chief's and the other Defendants' implementation of the State's laws that made the

3    Chief's policy unconstitutional. Had the Chief implemented a constitutional CCW

4    policy, then the LAPD's and the City's enforcement of the CCW statutes would

5    have been constitutional.

6        In this case, none of the Plaintiffs was ever convicted of any offense they

7    were arrested on. A review of the public Superior Court dockets indicates that

8    hundreds of cases of putative class members referred for prosecution resulted in

9    dismissal or acquittal or some disposition other than conviction on all charges.

10   Many putative class members' arrests – like Mr. Hunn and Mr. Hearns' - were

11   dismissed without a prosecution even being instituted.

12   **I.    The Court should reconsider its Order because *Bruen* is retroactive as**
13   **to this case, and the rule was previously established.**

14       The Court should reconsider its Order because *Bruen* is retroactive as to this

15   case, and Defendants' did not establish a distinctly similar historical analogue for

16   allowing an executive branch licensing official to exercise their discretion to

17   impose a complete ban on the carriage of handguns in public. *N.Y. State Rifle &*

18   *Pistol Ass'n v. Bruen*, 142 S. Ct. at 2131, 2138 n.9.

19       Under the Court's retroactivity jurisprudence, *Bruen* applies retroactively to

20   this case because this case was ongoing when the Supreme Court decided *Bruen*.

1    *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 96, 97 (1993)("a rule of federal law,

2    once announced and applied … must be given full retroactive effect by all courts

3    adjudicating federal law," especially to "cases still open on direct review."); *Lemus*

4    *v. Lynch*, 842 F.3d 641, 647-648 (9th Cir. 2016).

5        This Court committed clear error by not applying the text, tradition and

6    history test of *Bruen* or the "complete prohibition" test of *Heller* to defendants' no-

7    issue policy coupled with Defendants' policy and practice of arresting, detaining,

8    and (in some cases) causing Named Plaintiffs and the putative class members'

9    prosecutions by arresting them pursuant to Defendants' unconstitutional policy.

10    *Johnson v. Idaho*, 2023 U.S. App. LEXIS 18465, *2-3; *Sawicki v. Kijakazi*, 2023

11    U.S. Dist. LEXIS 58761 (C.D. Cal. 2023); *Teter v. Lopez*, 76 F.4th at 948. The

12    Court also committed error to the extent that it held that "Defendants' application

13    of the "good cause" requirement is now unconstitutional following *Bruen*," Order

14    at 8, because the Defendants' entire policy was unconstitutional under *Bruen* and

15    Heller during the class period. *Harper*; *Teter*, at 948; *Johnson v. Idaho*, 2023 U.S.

16    App. LEXIS 18465, *2-3; *Sawicki v. Kijakazi*, 2023 U.S. Dist. LEXIS 58761 (C.D.

17    Cal. 2023).

18        Plaintiffs' argument was that Defendants' no-issue CCW policy was

19    unconstitutional throughout and during the class period and that the

20    unconstitutional policy of using the Chief's discretion to impose a complete ban on

1    the carriage of handguns outside the home while directing its police force to arrest

2    them under statutes allowing carriage of handguns in public with a CCW presented

3    Plaintiffs and the putative class members with a Hobson's choice of obeying an

4    unconstitutional municipal policy or giving up their Second Amendment rights.

5         In *Shuttlesworth v. Birmingham* the Court stated that "our decisions have

6    made clear that a person faced with such an unconstitutional licensing law may

7    ignore it and engage with impunity in the exercise of the right of free expression

8    for which the law purports to require a license." *N.Y. State Rifle & Pistol Ass'n v.*

9    *Bruen*, 142 S. Ct. 2111, 2138 n.9 (*quoting Shuttlesworth v. Birmingham*, 394 U.S.

10   147, 151 (1969)). The Court's citation to Shuttlesworth makes clear that this First

11   Amendment principle is also applicable to Second Amendment cases.

12        The California penal codes at issue are regulatory offenses, and the

13   maximum penalty for a violation of these CCWs law by law-abiding persons such

14   as Named Plaintiffs is a misdemeanor prosecuted by the City Attorney.

15   **II.   Alternatively, the Court should reconsider its Order to allow Plaintiffs**

16   **to amend their complaint to correct the errors in the description of the**

17   **Chief's policy because Plaintiffs were diligent in conducting discovery**

18   **and the actual policy was discovered during discovery.**

19        As an alternative and independent basis for reconsideration, this Court

20   should reconsider the dismissal with prejudice without leave to amend to the

1  limited extent of allowing Plaintiffs to amend the allegations in the Amended

2  Complaint to accurately reflect facts discovered in discovery.

3       Doing so will correct errors of fact in the allegations and prevent the

4  manifest injustice of requiring Plaintiffs to appeal based on a complaint that does

5  not accurately reflect the Chief's policy. *Johnson v. Idaho*, 2023 U.S. App. LEXIS

6  18465, *2-3; *Sawicki v. Kijakazi*, 2023 U.S. Dist. LEXIS 58761 (C.D. Cal. 2023);

7  *Teter v. Lopez*, 76 F.4th at 948.

8       Plaintiffs have an ethical duty of candor with the tribunal and Plaintiffs must

9  comply with F.R.C.P. 11(b)(3).

10       This Court's Scheduling Order [ECF No. 39], entered October 3, 2022, set

11  the deadline for amending the complaint on January 13, 2023. As modified, the

12  discovery deadline was November 13, 2023.

13       This Court entered an order dated October 31, 2023, granting Defendants'

14  motion to dismiss, with prejudice and without leave to amend. [ECF No. 75].

15  **A. On October 4, 2023, Plaintiffs learnt in discovery that the Chief's actual**

16     **CCW policy and practice was different from the written good cause**

17     **requirement described in the Chief's online materials, and different from**

18     **the policy Plaintiffs had described in their Amended Complaint.**

19       On October 4, 2023, over a month before the end of the discovery period,

20  Plaintiffs deposed the officer in charge of processing CCW applications for the

21  Chief. The officer disclosed that the Chief's actual CCW policy and practice was

19

1    different from the written good cause requirement described in the Chief's online

2    materials.

3         The relevant statute granted the Chief discretion to issue CCWs "upon proof

4    of all of the following: (1) The applicant is of good moral character. (2) Good

5    cause exists for issuance of the license. (3) The applicant is a resident of that city.

6    (4) The applicant has completed a course of training as described in Section

7    26165."  Cal Pen Code § 26155. But the Chief interpreted the statute so that only

8    they considered only two of the elements: (1) Good cause (as interpreted by the

9    Chief) exists for issuance of the license; and (2) the applicant is a resident of Los

10   Angeles.

11        Under this policy the Chief exercised their discretion so that the Chief never

12   issued a CCW for general self-defense. During the period from February 2019 to

13   June 2022 (when Bruen was decided), the Chief granted only four (4) CCWs out of

14   about 200 applications. The four CCWs the Chief granted went to: (1) three

15   persons who held federal "FFLs" (federal firearms licensees); and (2) one property

16   master for a film and TV studio. [5]Arguably these CCWs were not even granted

17   under the Chief's no-issue interpretation of "good cause" but under special

18   exceptions.

---

[5] https://www.atf.gov/resource-center/types-federal-firearms-licenses-ffls ATF website explaining Types of Federal
Firearms Licenses (FFLs).

1    Moreover, it was obviously common knowledge that the Chief never granted

2    CCWs except for general self-defense because during the relevant period only

3    about 300 people applied. Once *Bruen* was handed down, and the Attorney General

4    of the State of California disallowed enforcement of the good cause requirement,

5    applications jumped from just 300 in the approximately three-year period

6    preceding *Bruen* and the change of the good cause policy to over roughly 1,500 in

7    the period since *Bruen* and the change in the "good cause" policy.

8    **B. Plaintiffs were diligent in learning this information in discovery and so**

9    **"good cause" existed for Plaintiffs to move to modify the Scheduling Order**

10   **for leave to amend their complaint before the end of the discovery period**

11   **or shortly thereafter.**

12   Plaintiffs were diligent in learning this information in discovery and so

13   "good cause" existed for Plaintiffs to move to modify the Scheduling Order for

14   leave to amend their complaint before the end of the discovery period or shortly

15   thereafter.

16   Courts routinely allow parties to amend their pleadings after new

17   information comes to light during discovery where, as here, the moving party has

18   been diligent. *A.V.E.L.A., Inc. v. Cent. Mills, Inc.*, 2016 U.S. Dist. LEXIS 187820,

19   *11 (C.D. Cal. 2016).

20   By waiting until after they received the discovery which apparently

21   confirmed the additional factual allegations, Plaintiffs complied with Federal Rule

1   of Civil Procedure 11(b)(3) by ensuring that 'the factual contentions have

2   evidentiary support or, if specifically, so identified, will likely have evidentiary

3   support after a reasonable opportunity for further investigation or discovery.'").  *Id.*

4   at *10-11.

5   **C. Courts routinely grant Plaintiffs leave to amend a complaint to correct**

6      **factual allegations in the complaint.**

7      A District Court should grant leave to amend unless there the opposing party

8   establishes a justification for denying motion such as undue delay, bad faith, or

9   dilatory motive on part of movant, undue prejudice to opposing party, and futility

10   of amendment). *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

11      Courts routinely grant Plaintiffs leave to amend a complaint to correct

12   factual allegations in the complaint. *See e.g., A.V.E.L.A., Inc. v. Cent. Mills, Inc.*,

13   2016 U.S. Dist. LEXIS 187820, *11.

14   **D. Plaintiffs do not ask the Court to reconsider the ruling as to Mr. Matthews'**

15      **claims.**

16      Plaintiffs do not ask the Court to reconsider the ruling as to Mr. Matthews'

17   claims. Plaintiffs leave the allegations in the proposed Second Amended Complaint

18   solely for purposes of appeal in case the Court grants Plaintiffs motion to

19   reconsider solely for the purpose of correcting allegations in the proposed Second

20   Amended Complaint.

1   Respectfully submitted,

2   /s/ Jovan Blacknell
3   JOVAN BLACKNELL (SBN 237162)
4   Email: jovan@fight4justice.com
5   Attorney for Plaintiffs, Garry Matthews, Dominic Ross Hunn, and Jamar Hearns
6   LAW OFFICE OF J. BLACKNELL
7   200 Corporate Pointe, Suite 495
8   Culver City, CA 90230
9   Phone: (310) 469-9117; Fax: (310) 388-3765
10  Attorney for Plaintiffs, Garry Matthews, Dominic Ross Hunn, and Jamar Hearns
11
12
13
14  /s/ William Claiborne
15  WILLIAM CLAIBORNE
16  *Pro hac vice*
17  ClaiborneLaw
18  Email: claibornelaw@gmail.com
19  717 D Street N.W., Ste 300
20  Washington, DC 20004-2815
21  Phone: (202) 824-0700
22  Attorney for Plaintiffs, Garry Matthews, Dominic Ross Hunn, and Jamar Hearns
23
24

25